**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| L.I.S.T., INC., On Behalf of Itself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | No.: 7:05-CV-02189 (CM) |
| v. | ) ) ) | |
| VEECO INSTRUMENTS, INC., EDWARD H. BRAUN, and JOHN F. REIN, JR., | ) ) ) | |
| Defendants. | ) ) | |
| ROY P. KERSHAW, Individually and on Behalf behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No.: 7:05-CV-02929 (CM) |
| VEECO INSTRUMENTS, INC., EDWARD H. BRAUN, and JOHN F. REIN, JR | ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF CATHERINE A. TORELL IN SUPPORT OF**
**MOTION OF JOEL MANDEL TO (1) BE APPOINTED LEAD PLAINTIFF;**
**(2) APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL;**
**AND (3) CONSOLIDATE ALL RELATED ACTIONS**

Pursuant to 28 U.S.C. § 1746, I, Catherine A. Torell, declare as follows:

1.      I am a member in good standing of the New York bar and admitted to practice in this District. I submit this declaration in support of the motion filed by Joel Mandel ("Mandel" or "Movant") to: (1) appoint Movant as Lead Plaintiff; (2) approve Movant's selection of counsel for the class; and (3) consolidate all related actions.

1.      Attached as exhibits are true and correct copies of the following:

Exhibit A:  Notice dated February 15, 2005 of filing of a complaint against Veeco, *et al.*;

Exhibit B: A certification and loss calculation worksheet for Joel Mandel; and,

Exhibit C:  Firm Biography of Cohen, Milstein, Hausfeld & Toll, P.L.LC.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

DATED: April 18, 2005        _____/s/_____
                            Catherine A. Torell

# Exhibit A

24 of 25 DOCUMENTS

Copyright 2005 PrimeZone Media Network, Inc.
PrimeZone Media Network

February 15, 2005 Tuesday 1:06 PM EST

**SECTION:** LAW & LEGAL ISSUES

**LENGTH:** 564 words

**HEADLINE:** Shareholders Seek to Recover Damages Against Veeco Instruments, Inc. -- VECO

**BODY:**

NEW YORK, Feb. 15, 2005 (PRIMEZONE) -- Goodkind Labaton Rudoff & Sucharow LLP filed a class action lawsuit on February 15, 2005 in the United States District Court for the Southern District of New York, on behalf of persons who purchased or otherwise acquired publicly traded securities of Veeco Instruments Inc. ("Veeco" or the "Company") (Nasdaq:VECO) between November 3, 2003 and February 10, 2005, inclusive, (the "Class Period"). The lawsuit was filed against Veeco, Edward H. Braun and John F. Rein Jr. ("Defendants").

If you are a member of this class you can view a copy of the complaint and join this class action online at http://www.glrslaw.com/get/?case=Veeco.

The complaint alleges that Defendants violated Section 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Specifically the complaint alleges that Defendants materially misled the investing public by issuing false and misleading statements regarding the business and financial results of Veeco. More specifically, the complaint alleges that the Company's statements were false and misleading because Defendants knowingly or recklessly failed to disclose that it had improperly valued the inventory and accounts payable at its TurboDisc division in order to make the acquisition look more attractive to the market, that it falsely recognized revenue at TurboDisc during the class period, and that it improperly overvalued its deferred tax assets.

On February 11, 2005, Veeco announced that it was postponing the results of its financial results for the fourth quarter and full year 2004 pending completion of an internal investigation of improper accounting transactions at its TurboDisc division. The Company further expects that the investigation will lead to adjustments of the financial statements previously issued for the quarterly periods and nine-months ended September 2004. Shares of Veeco reacted negatively to the news, falling $1.83 per share, or approximately 10%, to $16.96 per share.

Plaintiffs are represented by the law firm of Goodkind Labaton Rudoff & Sucharow LLP. Goodkind Labaton is one of the country's premier national law firms that represent individual and institutional investors in class action, complex securities and corporate governance litigation. The firm has been a champion of investor rights for over 40 years and has been recognized for its reputation for excellence by the courts. Goodkind Labaton was recently ranked fourth in total recoveries in 2003 among the top 50 plaintiffs' law firms by Institutional Shareholder Services (ISS), the world's leading provider of proxy and corporate governance services. Notably, Goodkind Labaton recovered over half a billion dollars for its clients in the last two years.

If you bought Veeco securities between November 3, 2003 and February 10, 2005, inclusive, you may qualify to serve as Lead Plaintiff. Lead Plaintiff papers must be filed with the court no later than sixty days from today. If you would like to consider serving as lead plaintiff or have any questions about the lawsuit, please contact one of our representatives or Christopher Keller, Esq. at 800-321-0476.

More information on this and other class actions can be found on the Class Action Newsline at www.primezone.com/ca

PrimeZone Media Network February 15, 2005 Tuesday

CONTACT:
   Goodkind Labaton Rudoff & Sucharow LLP
            Christopher Keller, Esq.
            800-321-0476

**LOAD-DATE:** February 16, 2005

# Exhibit B

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, _____Joel Mandel_____, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the class action complaint asserting securities claims against Veeco Instruments Inc. and wish to join as a plaintiff retaining Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as my counsel.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      My transactions in VECO during the Class Period of (November 3, 2003 through February 10, 2005) were as follows:

| DATE | TRANSACTION (buy/sell) | NO. OF SHARES | PRICE PER SHARE |
|------|------------------------|---------------|-----------------|
| _____ | _____ | _____ | _____ |
| _____ | See enclosed | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions under the federal securities laws except as follows:

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this __10th__ Day of __March__, 2005.

_____Joel H. Mandel_____

*Joel Mandel*

) Waterhouse --My Account: eServices

Log Out / Switch Account    Open Account    Customer Service    Search

# **TD Waterhouse**

**Home    My Account    Trading    Quotes    News & Research    Planning    Products    Banking**

Balance    Order Status    Holdings    History    Cost Basis    eServices    Cash Management Services    My Info

## My Account: eServices

Trade Confirmations | Monthly Statements | Tax/Year-End Docs

**Trade Confirmations**    Search Results    1-20 of 21 confirmations    ● eServices Tips

| Symbol | Description | | Quantity | Price | T/Date |
|--------|-------------|--|----------|-------|--------|
| VECO | VEECO INSTRUMENTS I... | Bought | 4,627 | 17.29000 | 02/02/05 |
| VECO | VEECO INSTRUMENTS I... | Bought | 373 | 17.29000 | 02/02/05 |
| VECO | VEECO INSTRUMENTS I... | Sold | 10.000 | 20 | 11/19/04 |
| VECO | VEECO INSTRUMENTS I... | Bought | 5,919 | 18.15000 | 10/18/04 |
| VECO | VEECO INSTRUMENTS I... | Bought | 4,081 | 17.95000 | 10/18/04 |
| VECO | VEECO INSTRUMENTS I... | Sold | 5,000 | 25.62000 | 06/30/04 |
| VECO | VEECO INSTRUMENTS I... | Bought | 5,000 | 24.85000 | 06/10/04 |
| VECO | VEECO INSTRUMENTS I... | Sold | 5,000 | 25.90000 | 06/07/04 |
| VECO | VEECO INSTRUMENTS I... | Bought | 4,200 | 25.80000 | 06/02/04 |
| VECO | VEECO INSTRUMENTS I... | Bought | 800 | 25.60000 | 06/01/04 |
| VECO | VEECO INSTRUMENTS I... | Bought | 5,000 | 24.48000 | 05/11/04 |
| VECO | VEECO INSTRUMENTS I... | Bought | 5,000 | 24.47000 | 05/07/04 |
| VECO | VEECO INSTRUMENTS I... | Sold | 5,000 | 27.90000 | 03/25/04 |
| VECO | VEECO INSTRUMENTS I... | Sold | 5,000 | 26 | 03/25/04 |
| VECO | VEECO INSTRUMENTS I... | Sold | 5,000 | 25.31000 | 03/22/04 |
| VECO | VEECO INSTRUMENTS I... | Bought | 5,000 | 29.50000 | 03/03/04 |
| VECO | VEECO INSTRUMENTS I... | Sold | 3.800 | 30.75000 | 03/02/04 |
| VECO | VEECO INSTRUMENTS I... | Sold | 1,200 | 30.81000 | 03/02/04 |
| VECO | VEECO INSTRUMENTS I... | Bought | 5,000 | 29.22000 | 02/27/04 |
| VECO | VEECO INSTRUMENTS I... | Bought | 5,000 | 30.18000 | 02/27/04 |

**eServices Tips**
- FAQ
- Optimal Print Settings
- Optimal Viewing Tips
- Terms and Definitions

**Search Trade Confirms**
- Last 20 trades
- Last 30 trades
- Last 40 trades

Date from  11/03/03 (mm/dd/yy)
to  02/10/05
Symbol  VECO
Type  All Trades
● Search

*Bought 5000 27⁷⁵ 02/4/04*

*VECO*

Joel Mandel
Financial Interest Calculation

Collins v. Veeco Instruments, Inc. Case No. 05-1277 (LDW) (ETB)

| Name | Shares Bought | | | Shares Sold | | | 90 Day Loss Price | Total/Gain Loss |
|---|---|---|---|---|---|---|---|---|
| | # of Shares | Date | $ Per Share | # of Shares | Date | $ Per Share | | |
| Joel Mandel | 5,000 | 2/4/2004 | 27.7800 | 1,200 | 3/2/2004 | 30.8100 | | |
| | 5,000 | 2/27/2004 | 30.1800 | 3,800 | 3/2/2004 | 30.7500 | $14.910 | ($116,392.06) |
| | 5,000 | 2/27/2004 | 29.2200 | 5,000 | 3/22/2004 | 25.3100 | | |
| | 5,000 | 3/3/2004 | 29.5000 | 5,000 | 3/25/2004 | 26.0000 | | |
| | 5,000 | 5/7/2004 | 24.4700 | 5,000 | 3/25/2004 | 27.9000 | | |
| | 5,000 | 5/11/2004 | 24.4800 | 5,000 | 6/7/2004 | 25.9000 | | |
| | 800 | 6/1/2004 | 25.6000 | 5,000 | 6/30/2004 | 25.6200 | | |
| | 4,200 | 6/2/2004 | 25.6000 | 10,000 | 11/19/2004 | 20.0000 | | |
| | 5,000 | 6/10/2004 | 24.8500 | | | | | |
| | 4,081 | 10/18/2004 | 17.9500 | | | | | |
| | 5,919 | 10/18/2004 | 18.1500 | | | | | |
| | 373 | 2/2/2005 | 17.2900 | | | | | |
| | 4,627 | 2/2/2005 | 17.2900 | | | | | |
| Totals | 55,000 | | | 40,000 | | | | ($116,392.06) |

# Exhibit C

# CMH&T
## ■■■ COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

**WASHINGTON • NEW YORK • PHILADELPHIA • CHICAGO**

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C. has represented, and now represents, individuals, small businesses, institutional investors, and employees in many of the major class action cases litigated in the United States for violations of the antitrust, securities, environmental, consumer protection, civil rights/discrimination, ERISA and human rights laws. The firm also is at the forefront of numerous innovative legal actions that are expanding the quality and availability of legal recourse for aggrieved individuals and businesses. Over its history, Cohen, Milstein has obtained many landmark judgments and settlements for individuals and businesses in the United States and abroad.

The firm's most significant past cases include:

- In re StarLink Corn Products, Liability Litigation, MDL No. 1403. CMHT successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds. StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes, but never approved for human consumption. Nevertheless, StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply. CMHT, as co-lead counsel, achieved a final settlement providing more than $110 million for U.S. corn farmers, which was approved by a federal district court in April 2003. This settlement was the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

- In re Diet Drug Litigation (Fen-Phen), MDL No. 1203 (E.D. Pa.). As a member of the Plaintiffs' Management Committee and Sub-Class Counsel, Cohen, Milstein played a major part in the success of the Fen-Phen diet drug litigation and settlement (In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation, MDL 1203). CMHT and other plaintiffs' counsel achieved the largest settlement ever obtained in a mass tort case - $3.75 billion - on behalf of millions of U.S. consumers who used Pondimin (fenfluramine) or Redux (dexfenfluramine) alone or in combination with phentermine, diet drugs that were found to be associated with heart valve damage.

1100 New York Avenue, N.W. • Suite 500, West Tower • Washington, D.C. 20005
Phone (202) 408-4600 • Fax (202) 408-4699 • www.cmht.com

AFFILIATED OFFICES: UNITED KINGDOM • ITALY • SOUTH AFRICA • PANAMA • AUSTRALIA

- <u>Snyder v. Nationwide Mutual Insurance Company</u>, No. 97/0633 (Sup. Ct. N.Y. Onondaga Cty.). Cohen, Milstein served as one of plaintiffs' principal counsel in this case on behalf of persons who held life insurance policies issued by Nationwide through its captive agency force. The action alleged consumer fraud and misrepresentations. Plaintiffs obtained a settlement valued at more than $85 million. The <u>Snyder</u> court praised the efforts of Cohen, Milstein and its co-counsel for having done "a very, very good job for all the people." He complimented "not only the manner" in which the result was arrived at, but also the "time … in which it was done."

- <u>Dukes v. Wal-Mart Stores, Inc.</u>, (N.D. Cal. No. C-01-2252). Cohen Milstein is one of the co-lead counsel in this discrimination case. On June 22, 2004, U.S. District Court Judge Martin Jenkins ruled that six current and former Wal-Mart employees from California may represent all female employees of Wal-Mart who worked at its U.S. stores anytime since December 26, 1998 in a nationwide sex discrimination class action lawsuit. In certifying the case as the largest civil rights class action ever certified against a private employer, the Judge described the case as "historic in nature, dwarfing other employment discrimination cases that came before it." The action charges that Wal-Mart discriminates against its female retail employees in pay and promotions. The class in this case includes more than 1.6 million current and former female employees of Wal-Mart retail stores in America, including Wal-Mart discount stores, super centers, neighborhood stores, and Sam's Clubs.

- <u>In re Lucent Technologies Securities Litigation</u>, Civ. Action No. 00-621 (JAP) (D.N.J.). A proposed settlement in this massive securities fraud class action was reached in late March 2003. The class portion of the settlement amounts to over $500 million in cash, stock and warrants and ranks as the second largest securities class action settlement ever. Cohen, Milstein represented one of the co-lead plaintiffs in this action, a private mutual fund.

- <u>In re Vitamins Antitrust Litigation</u>, MDL No. 1285 (D.D.C.). Cohen, Milstein served as co-lead counsel for two certified classes of businesses who directly purchased bulk vitamins and were overcharged as a result of a ten year global price-fixing and market allocation conspiracy. Chief Judge Hogan approved four major settlements between certain vitamin defendants and Class Plaintiffs, including a landmark partial settlement of $1.1 billion. In a recent trial before Chief Judge Hogan of four of Class Plaintiffs' remaining unsettled Vitamin B4 (choline chloride) claims, a federal jury in Washington unanimously found Japan's second largest trading company, Mitsui & Co., Ltd., its wholly-owned U.S. subsidiary Mitsui & Co. (U.S.A.), Inc., DuCoa, LP, a choline chloride manufacturer based in Highland, Illinois, and DuCoa's general partner, DCV, Inc. liable for participating in the conspiracy and ordered them to pay $49,539,234, which is trebled to $148,617,702 under the federal antitrust laws. The case was subsequently settled against those defendants.

- <u>Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al.</u>, Civil Action No. 00-015 (Knox County Superior Court, Me.). In this case, where Cohen, Milstein was a co-lead counsel, a 2004 Maine state court jury found three blueberry processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy that artificially lowered the prices defendants paid to approximately 800 growers for wild blueberries. The jury ordered defendants Cherryfield

Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy. After a mandatory trebling of this damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million.

- Kruman v. Christie's International PLC, et al., Docket No. 01-7309. A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was approved in this action. CMHT served as one of three leading counsel on behalf of foreign plaintiffs. The Court noted that approval of the settlement was particularly appropriate, given the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation. The settlement marked the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have been resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

- In re Infant Formula Consumer Antitrust Litigation (multiple state courts). Cohen, Milstein instituted price-fixing cases on behalf of indirect-purchasers in 17 states under state antitrust laws against three companies who conspired to drive up the price of infant formula. The cases resulted in settlements of $64 million for purchasers of infant formula.

- In re The Exxon Valdez Litigation, No. A89-095 Civ. (D. Alaska). The firm was selected from dozens of law firms around the country by federal and state judges in Alaska to serve as co-lead counsel for plaintiffs in the largest environmental case in United States history that resulted in a jury verdict of more than $5 billion (reversed and remanded for revised punitive damages award; further proceedings pending).

- Holocaust Litigation. In the historic Swiss Banks litigation, CMHT served, *pro bono*, as co-lead counsel for Holocaust survivors against the Swiss banks that collaborated with the Nazi regime during World War II by laundering stolen funds, jewelry and art treasures. CMHT obtained a $1.25 billion settlement, leading the presiding judge to call the firm's work "indispensable." *See In re Holocaust Victim Assets Litig.*, Case No. CV 96-4849 (ERK) (MDG) (Memorandum of Chief Judge Korman dated July 26, 2002). CMHT was also a lead counsel in litigation by survivors of World War II-era forced and slave labor in litigation against the German companies that profited from using the labor of concentration camp inmates. This litigation, which resulted in an unprecedented settlement of $5.2 billion, was resolved by multinational negotiations involving the defendants, plaintiffs' counsel, and the governments of several countries for approximately two million claimants.

CMHT has contributed over 37,000 hours of time to human rights and *pro bono* cases since 1996. As an example, the Firm represented eight survivors and/or families of the victims of the September 11, 2001 attack on the Pentagon before the Federal compensation fund. Cohen Milstein has obtained a substantial recovery for each, including the highest recovery to date, $6.8 million, for an injured individual.

•    Roberts v. Texaco, Inc., 94-Civ. 2015 (S.D.N.Y.).  Cohen, Milstein represented a class of African-American employees in this landmark litigation that resulted in the then-largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief). The Court hailed the work of class counsel for, *inter alia*, "framing an imaginative settlement, that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole ...".

•    Conanan v. Tanoue, No. 00-CV-3091 (ESH).  Cohen, Milstein represented African-American employees at the Federal Deposit Insurance Corporation (FDIC) in a race discrimination suit, which settled for $14 million.  The settlement provides the largest payment made in an employment discrimination class action based on race against a federal agency.

•    Trotter v. Perdue Farms, Inc., Case No. 99-893 (RRM) (JJF) (MPT), D. Del.  This suit on behalf of hourly workers at Perdue's chicken processing facilities -- which employ approximately 15,000 people -- forced Perdue to pay employees for time spent "donning and doffing," that is, obtaining, putting on, sanitizing and removing protective equipment that they must use both for their own safety and to comply with USDA regulations for the safety of the food supply.  The suit alleged that Perdue's practice of not counting donning and doffing time as hours worked violated the Fair Labor Standards Act and state law.  In a separate settlement with the Department of Labor, Perdue agreed to change its pay practices.  In addition, Perdue is required to issue retroactive credit under one of its retirement plans for "donning and doffing" work if the credit would improve employees' or former employees' eligibility for pension benefits.  CMHT was co-lead counsel.

In addition, Cohen, Milstein is an innovator in new areas of the law.  The firm was in the forefront of filing antitrust claims on behalf of indirect purchasers in 1993 and 1994, when it filed state-court actions in 18 states on behalf of indirect purchasers of infant formula.  This was the first effort to systematically and simultaneously pursue treble damages claims on behalf of indirect-purchasing consumers in all states in which their antitrust laws permitted such claims.  This approach, and variations of it, have since become the accepted model for pursuing antitrust damages on behalf of indirect-purchasing consumers.  The firm also has been in the forefront of the development of international antitrust theory and litigation of claims.  As the global economy has produced worldwide conglomerates, so, too, has the nature of antitrust violations changed.  Thus, for example, in *Kruman v. Christie's International PLC, et al.* Docket No. 01-7309 and *In re Bulk Vitamins Antitrust Litigation*, MDL 1285 (D.D.C.), both the parties and the anticompetitive actions

were played out on a world, rather than domestic, stage. The firm also represents and won Lead Plaintiff status for domestic and foreign investors in a foreign company's bonds, in a PSLRA litigation being pursued in the United States. *In re Parmalat Securities Litigation*, Master Docket 04 Civ 0030 (LAK) (S.D.N.Y.)

Cohen, Milstein was established in March 1986 and has satellite offices in New York, Philadelphia and Chicago. From 1969 until its formation in 1986, the firm was the Washington, D.C. office of the Philadelphia law firm currently known as Kohn, Swift & Graf, P.C..

Cohen, Milstein has had one of the most varied and extensive plaintiffs' practices in the United States, and it has played a prominent role in major litigations since 1969. These cases include:

In re North Atlantic Air Travel Antitrust Litigation, Civ. Action No. 84-1103 (D.D.C.); the firm, as co-lead counsel, obtained a class settlement of $30 million in coupons for air travelers between the United States and England.

In re Screws Antitrust Litigation, MDL No. 443 (D. Mass); the firm, as co-lead counsel, obtained a class settlement of approximately $50 million.

Ocean Shipping Antitrust Litigation, MDL No. 395 (S.D.N.Y); the firm, as co-lead counsel, obtained a class settlement of approximately $50 million.

In re Corrugated Container Antitrust Litigation, MDL No. 310 (S.D. Tex.); the firm was one of a handful of firms involved in the successful trial of this massive antitrust case which was eventually settled for approximately $366 million.

Murphy, Derivatively On Behalf of Nominal Defendant National Health Laboratories Incorporated v. Perelman, Case No. 659511 (Cal. Sup. San Diego Cty.); as one of co-lead counsel in the derivative action, the firm and others obtained a global settlement of class and derivative litigation for $65 million.

Masonite Hardboard Siding Litigation, (State Court, Alabama); the firm, as one of the lead counsel, obtained a settlement valued at hundreds of millions of dollars.

Polybutylene Pipe Litigation, (State Court, Texas); the firm helped obtain a settlement valued at $900 million.

Biben v. Card, No. 84-0844-CV-W-6 (W.D. Mo.); the firm, as one of two co-lead counsel, negotiated settlements for $11.9 million, which was 93% of class members' damages.

5

In re Newbridge Networks Securities Litigation, Civ. Action No. 90-1061 (D.D.C.); the firm, as co-counsel handling this case, obtained a cash and stock class settlement valued at approximately $20 million.

Jiffy Lube Securities Litigation, Civ. Action No. Y-89-1939 (D. Md.); the firm, as co-lead counsel, obtained class settlements for a total of $12 million.

In re Saxon Securities Litigation, Civ. Action No. 82 Civ. 3103 (S.D.N.Y.); the firm, as co-lead counsel, obtained a class settlement of approximately $20 million.

Grossman v. Waste Management, Civ. Action No. 83 Civ. 2167 (N.D. Ill.); the firm, as co-lead counsel, obtained a class settlement of approximately $13 million.

In re Warner Communications Securities Litigation, 618 F. Supp. 735 (S.D.N.Y. 1986); the firm was one of plaintiffs' counsel in this case where a class settlement of $18.4 million was obtained.

In re Tandon Securities Litigation, No. CV86-4566 (C.D. Cal.); the firm played a major role in this class action where settlement was valued at approximately $16 million.

Immunex Securities Litigation, No. C92-548WD (W.D. Wash.); the firm was one of lead counsel where the largest securities class action settlement in Seattle -- $14 million -- was recovered.

In re Caremark Securities Litigation, Case No. 94 C 4751 (N.D. Ill.); the firm, as co-lead counsel, obtained a class settlement of $25 million.

In re Commercial Explosives Antitrust Litigation, Consolidated Case No. 2:96md 1093S (D. Utah); the firm, as co-lead counsel, obtained a settlement of $77 million.

Cohen, Milstein has also served as lead or co-lead counsel, or on Plaintiffs' Executive Committee(s), in many dozens of antitrust, securities, consumer protection or product liability, civil rights, and human rights class cases.

Biographical sketches of the firm's partners follow:

### HERBERT E. MILSTEIN

For the past 37 years, Herbert E. Milstein has focused on complex securities and business litigation and on class actions. He has been and continues to be lead counsel in numerous federal court actions across the country and is an expert in both class and securities actions.

He formerly served on the staff of the Securities and Exchange Commission for five and one-half years, and last held the position of Chief Enforcement Attorney, Division of Corporate Regulation. From

6

1976-1980, Mr. Milstein served as Equity Receiver for National American Life Insurance Company, appointed by Judge Charles R. Richey, in *SEC v. National Pacific Corp.* Mr. Milstein and his firm served "with distinction," in the words of the Chairman of the SEC.

An adjunct Professor of Law at Georgetown University Law Center from 1980-1987, where he taught complex litigation, Mr. Milstein continues, as he has done for the past 30 years, to lecture on securities litigation and class actions at law schools and seminars throughout the United States. In 1985, he was awarded a Silver Gavel by the American Bar Association as a distinguished example of public service. Mr. Milstein is the author of articles on topics involving class actions litigation and the Federal securities laws.

Formerly President of the National Association of Securities and Commercial Law Attorneys (NASCAT), he also served as treasurer of that organization for six years. He is a member of the American Law Institute and is a member and a former Chairman of the Executive Council of the Securities Law Committee of the Federal Bar Association.

Mr. Milstein graduated from Harvard College (B.A., *cum laude*, 1958) and Columbia University School of Law (LL.B. 1961). Mr. Milstein has been admitted to practice in Washington, D.C. and Massachusetts.

### MICHAEL D. HAUSFELD

Michael D. Hausfeld is one of the country's top civil litigators, specializing in antitrust, human rights, employment discrimination, environmental and consumer rights cases.

Mr. Hausfeld was recently recognized by the National Law Journal as one of the "Top 100 Influential Lawyers in America." In a recent opinion by Chief Judge Edward Korman of the Eastern District of New York, Mr. Hausfeld was characterized as one of the two "leading class action lawyers in the United States." He has been described by one of the country's leading civil rights columnists, Nat Hentoff,

as an "extremely penetrating lawyer," and by a colleague in the <u>Washington Post</u>, as a lawyer who "has a very inventive mind when it comes to litigation. He thinks of things most lawyers don't because they have originality pounded out of them in law school." The <u>New York Times</u> refers to Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers." The <u>Washingtonian</u> has listed Mr. Hausfeld for the past several years as one of Washington's 75 best lawyers, saying he "consistently brings in the biggest judgments in the history of law" and that he is "a Washington lawyer determined to change the world and succeeding."

The <u>Wall Street Journal</u>, in a profile of Mr. Hausfeld, noted that he has added an ever-broadening portfolio of social reform cases to his successful practice. Mr. Hausfeld was among the first lawyers in the U.S. to assert that sexual harassment was a form of discrimination prohibited by Title VII and successfully tried the first case establishing that principle. Since then, his practice has included successful representations of Native Alaskans affected by the 1989 Exxon Valdez oil spill. In 1996, focusing the attention of the nation on racism in corporate America, he negotiated a historical $176 million racial bias settlement from Texaco, Inc. In *Friedman v. Union Bank of Switzerland, et al.*, Mr. Hausfeld represented a class of victims of the Holocaust whose assets were wrongfully retained by private Swiss banks during or after World War II. The case raised novel issues of international banking law and international human rights law. He has successfully represented the Republic of Poland, the Czech Republic, the Republic of Belarus, the Republic of Ukraine and the Russian Federation, on issues of slave and forced labor for both Jewish and non-Jewish victims of Nazi persecution during World War II. Mr. Hausfeld currently represents Jubilee 2000, Khulamini, and other NGOs in litigation involving abuses under apartheid law in South Africa.

Mr. Hausfeld has had an extremely varied antitrust litigation practice. He has a long record of successful litigation, both on behalf of individuals and classes, in cases involving monopolization, tie-ins,

8

exclusive dealings and price-fixing. Over his career, his aggregate multi-billion dollar recoveries have been against oil companies, telecommunication companies, paper manufacturers, pharmaceutical companies, auto manufacturers, and electronic manufacturers. He is actively involved in ongoing investigations into antitrust cases abroad, and was the only private lawyer permitted to attend and represent the interests of consumers worldwide in the 2003 closed hearings by the EU Commission in the Microsoft case.

Recent awards include the 2002 B'Nai Brith "Humanitarian of the Year" award; the Simon Wiesenthal Center Award for Distinguished Service; and the U.S. Department of Energy's Human Spirit Award, presented "in tribute to a person who understands the obligation to seek truth and act on it is not the burden of some, but of all; it is universal."

Education: Brooklyn College (A.B., *cum laude*, 1966); the National Law Center, George Washington University (J.D., *with honors*, 1969). Order of the Coif. Member, Board of Editors, George Washington Law Review, 1968-69. Adjunct Professor of Complex Litigation, Georgetown University Law Center, 1980-87. Adjunct Professor, George Washington University, 1996-98. Board of Directors, George Washington University Law School, 1998 to present.

### STEVEN J. TOLL

Profiled in the February 1996 <u>Washington Business Journal</u> as one of five attorneys that stand out as the "cream of the crop" in the Washington D.C. legal community, Steven J. Toll has been lead or principal counsel in some of the best known stock fraud cases over the past 20 years. He opened the firm's Seattle office in October 1996. By 1999 he was selected by his peers as one of the top lawyers in the State of Washington, as reported in <u>Washington Law and Politics Magazine</u>.

Some of Mr. Toll's more notable cases include those against Caremark, Inc. ($25 million recovery for shareholders), which pled guilty to Medicare fraud and paid the U.S. Government a fine of approximately $160 million; National Health Labs, which paid $65 million to settle shareholder and

derivative cases; *In re Saxon Securities Litigation*, fraud involving fictitious photocopier sales (recovery of

$20 million); *In re Immunex Securities Litigation*, biotech company accused of concealing significant

business problems (largest securities class action settlement in Seattle - $14 million); *Grossman v. Waste*

*Management*, defendant accused of withholding information concerning violations of the environmental

laws and failure to comply with federal and state regulatory standards (recovery of over $13 million); *In re*

*Jiffy Lube Securities Litigation*, company accused of deceptive accounting practices to hide its true

financial condition (recovery of $12 million); and Itron Securities Litigation, defendants accused of

concealing flaws in its technology (recovery of $12 million).

      Mr. Toll also served as co-lead counsel in one of the most publicized frauds of the 1990s -- Cascade

International, where the mastermind of the fraud, Victor Incendy, is still a fugitive from justice. The case

settled on the eve of trial against Raymond James Inc. for $9 million -- the only securities class action ever

successfully litigated against a brokerage firm for its role as a research analyst.

      Mr. Toll's vast experience in suing companies for defrauding their shareholders has involved him in

uncovering all kinds of fraudulent and misleading business practices, including those where a company

cooked its books through fraudulent accounting entries, shipped boxes of bricks instead of computer

products, lied about supply problems, inventory problems, management concerns, revenue recognition

practices, healthcare fraud, false advertisement of products, fraudulent banking practices and setting of

reserves. Cases in which Mr. Toll has been principally involved have led to settlements which have

returned to investors hundreds of million of dollars.

      Mr. Toll has also been involved with some of the largest product liability class action cases ever.

For example, *Cox v. Shell Oil* resulted in a $950 million settlement for defective polybutylene piping. In

addition, Mr. Toll has been involved in litigating against Masonite, Louisiana Pacific and Weyerhaeuser for

defective hardboard siding, which have resulted in recoveries of hundreds of millions of dollars for

homeowners. He is also involved in litigating the firm's employment discrimination cases pending against Boeing Corp. (for female and Asian-American employees) and Microsoft Corp. (for female and African-American employees).

Mr. Toll is an honors graduate of the Wharton School of the University of Pennsylvania (B.S., *cum laude*, 1972). He graduated from Georgetown University Law Center (J.D. 1975) where he was Special Project Editor of the Tax Lawyer.

### LISA M. MEZZETTI

Lisa Mezzetti joined Cohen, Milstein in 1984, and since then has worked exclusively on consumer litigations and securities regulation actions (in class actions, private litigations and arbitrations).

In consumer cases, Ms. Mezzetti is or was one of the Lead Counsel in *In re Lupron Marketing and Sales Practices Litigation* and related cases (D. Mass.) (cases brought by consumers and private insurers and other drug payers against pharmaceutical companies concerning their pricing practices for certain drugs); *Howard v. Ford Motor Co.* (Sup. Ct. Cal.) (one of trial counsel in consumer case for millions of car owners alleging fraud; order of the Court on equitable count required prospective recall of 1.7 million cars; action settled immediately before scheduled second jury trial); *Fischl v. Direct Merchants Credit Card Bank* (Minn. Dist. Ct.) (brought by credit card consumers, alleging improper charges and payment processes); *Ford v. General Motors Acceptance Corp.* (E.D. Ark.) (alleging fraudulent charging of dealer reserves on automobile financing); *Ferguson v. Columbia/HCA Healthcare Corp.* (Cir. Ct. Tenn.) (a consumer class action alleging hospital billing overcharges); and *In re Synthroid Marketing Litigation* (N.D. Ill.) (a series of consumer and antitrust class actions). She has litigated class actions under the ERISA laws; she also brought one of the first class actions filed under the federal Family and Medical Leave Act.

In her securities work, Ms. Mezzetti represented the corporate plaintiff in a private litigation

alleging damages of more than $40 million from the purchase of a healthcare technology company, and represented 1,900 plaintiffs in a series of 25 federal court suits concerning municipal bonds. Her shareholder class actions include *Murphy, Derivatively On Behalf of Nominal Defendant National Health Laboratories Inc. v. Perelman* (Cal. Sup. Ct.) (global settlement of class and derivative litigations for total of $65 million); *Flecker v. Hollywood Entertainment Corp.* (D. Or.) ($15 million settlement, reached day before trial was to begin); and *Biben v. Card*, (W.D. Mo.) (93% of class members' damages recovered in settlement). She also has represented parties in securities arbitrations (both as claimant's counsel or defense counsel for the broker) and defended clients in investigations and enforcement actions of the Securities and Exchange Commission. She is a public arbitrator for the National Association of Securities Dealers, hearing disputes between customers and brokers.

Ms. Mezzetti graduated from the Columbus School of Law, Catholic University of America in 1980, where she served as a Vice-Chancellor of the Moot Court Board. In 1986, she received a Master of Laws degree, with a specialty in Securities Regulation, from Georgetown University Law Center. Her bachelor's degree was awarded from Stonehill College in Massachusetts; she graduated with a B.A. in English, *magna cum laude*, in 1977.

She has been a panelist at several legal education seminars and conventions and was a guest panelist on a D.C. cable television show concerning hiring and working with stock brokers and financial advisors.

Ms. Mezzetti serves as a Vice-President and a Member of the Board of Directors of The International Alliance for Women, a worldwide, non-profit organization that supports and promotes women entrepreneurs and professional and executive women in the business, government and not-for-profit sectors. She also is a member of the Board of Directors of The Financial Women's Association of New York, and the Washington, D.C. advisory board of The Joffrey Ballet of Chicago.

12

## ANDREW N. FRIEDMAN

Andrew N. Friedman concentrates on complex litigation involving the federal securities laws, consumer fraud and product liability cases.

Among other securities cases, Mr. Friedman served as one of co-lead or principal counsel in: *Norman Frank, et al. v. David L. Paul* (recovery of over $18 million for purchasers of CenTrust Bank securities); *In re Jiffy Lube Securities Litigation* (recovery of over $12 million); and *In re Immunex Securities Litigation* (recovery of $14 million -- the largest securities class action settlement in Seattle).

Mr. Friedman was one of the firm's attorneys selected by the County of Cuyahoga, Ohio to prosecute a lawsuit which sought to recover losses from the County's Secured Assets Fund Earnings Program (S.A.F.E.). The lawsuit alleged that broker/dealers and a financial institution assisted the County in engaging in unsuitable and inappropriate investments and trading activity. In November and December of 1997, the firm was able to secure a very favorable settlement from all defendants totaling $9.5 million.

In the consumer fraud and products liability area, Mr. Friedman has been instrumental in securing significant recoveries on behalf of thousands of consumers. For example, Mr. Friedman was one of the principal counsel in *Snyder v. Nationwide Mutual Insurance Company*, Index No. 97/0633 (Sup. Ct. of New York, Cty. of Onondaga), a class action which resulted in a settlement valued at between $85 million and $103 million. The settlement provides relief for those persons or entities who have or had an ownership interest in one or more life insurance policies issued by Nationwide through its captive agency force during the Class Period. Similarly in *Duckworth v. Country Life Insurance Co.*, No. 98 CH 1046 (Cook Cty. Ill. Cir. Ct.), Mr. Friedman was one of the principal counsel in securing more than $44 million in benefits on behalf of a class of Country Life insurance policies, whose premiums would purportedly "vanish," but did not.

13

As one of two co-lead counsel in a class action against Thomson Consumer Electronics, Inc., Mr. Friedman was able to reach a court-approved agreement with Thomson that, among other things, made up to an aggregate of $100 million available for those persons with unreimbursed repairs to their RCA ProScan and GE televisions. A similar settlement was reached on behalf of certain Panasonic and JVC DVD purchasers which provided up to $100 per person of unreimbursed repair costs.

Mr. Friedman graduated from Tufts University in 1980 (B.A., *magna cum laude,* Phi Beta Kappa) and is a 1983 graduate of the George Washington University National Law Center. Prior to joining Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Mr. Friedman served as an attorney with the U.S. Patent and Trademark Office. He has been a speaker on numerous panels and legal education seminars on various topics, including securities class actions and accounting fraud. Mr. Friedman was featured in a November 15, 1997 Washington Post article about securities class actions and profiled in the April 14, 2000 edition of the Washington Business Journal. Mr. Friedman is currently serving as the firm's hiring partner.

### RICHARD S. LEWIS

Mr. Lewis graduated from Tufts University (B.A., *cum laude,* 1976), and earned his master's in Public Health degree from the University of Michigan (1981), and his law degree from the University of Pennsylvania (J.D., *cum laude,* 1986). He was Comments Editor for the University of Pennsylvania Law Review (1985-86) and authored the Comment, *O.C.A.W. v. American Cyanamid: The Shrinking of the Occupational Safety and Health Act,* U. Pa. L. Rev. (July 1985). After law school, he was a law clerk for the Honorable Stanley S. Brotman, U.S. District Court for the District of New Jersey.

Mr. Lewis concentrates on toxic torts and antitrust litigation. He has been appointed to serve as co-lead counsel in mass tort and class action cases including *In re StarLink,* MDL No. 1403 (co-lead counsel) (claims by farmers regarding StarLink corn), and *In re PPA,* MDL No. 1407 (claims by users of unsafe medicines). In addition, he has served as lead counsel in numerous suits to obtain medical monitoring relief

14

for communities exposed to toxic chemicals from hazardous waste disposal practices or unsafe drugs, including *In re Diet Drug Litigation (Fen-Phen)*, MDL No. 1203; *Yslava v. Hughes* (TCE contaminated drinking water in Tucson, AZ); *Bocook v. Ashland* (air pollution from oil refinery in W. Va.); and *Harman v. Lipari* (Superfund site in New Jersey). He has also litigated both individual and class childhood lead poisoning cases, including *Arevalo v. Neubauer* (lead paint poisoned child in D.C.); *Hunter v. Pneumo Abex* (children lead poisoned by foundry in Norfolk, VA neighborhood); and *Wagner v. Anzon* (children lead poisoned by foundry in Philadelphia, PA neighborhood); and he is presently developing cases against the lead pigment industry on behalf of cities and states and also represents the City of Milwaukee, *City of Milwaukee v. NL Industries Inc.*

Mr. Lewis has also litigated major antitrust actions, including *Sample v. Monsanto* (genetically modified corn and soy seeds) and *In re Airline Ticket Commissions Litigation* (Travel Agents).

### DANIEL S. SOMMERS

Daniel S. Sommers specializes in federal securities class action lawsuits. He has litigated numerous cases which resulted in multi-million dollar recoveries for investors including *In re TrustCorp Securities Litigation* (recovery of $5.6 million); *In re Y&A Group Securities Litigation* (recovery of $2.5 million); *Steiner v. Southmark Corporation* (recovery of over $70 million); *In re Cascade International Securities Litigation* (recovery of over $9.8 million); *In re PictureTel Inc. Securities Litigation* (recovery of $12 million); and *In re Nextel Communications Securities Litigation* (recovery of up to $27 million). He also represented a privately held corporation in a complex multi-party action alleging fraud in a corporate acquisition. *See TBG Inc. v. Bendis*, 36 F.3d 916 (10th Cir. 1994). Several of Mr. Sommers' cases resulted in important published district and appellate court decisions.

In addition, Mr. Sommers was a guest panelist on "Its Your Business," a nationally syndicated television program, where he spoke on investor lawsuits. He has been quoted in <u>Investor Relations</u>

magazine on the impact of the Private Securities Litigation Reform Act of 1995 and has been a featured panelist at the George Washington University Law School, where he spoke on the practice of law from the plaintiff's perspective.

He is a 1983 graduate of Union College (B.A., *magna cum laude*) and a 1986 graduate of the George Washington University Law School. Mr. Sommers is a member of the American Bar Association Section of Litigation Committee on Securities Litigation.

### DANIEL A. SMALL

Daniel A. Small is a 1981 graduate of Colgate University (B.A., *cum laude*); he graduated from Washington College of Law in 1986. He joined Cohen, Milstein, Hausfeld & Toll, P.L.L.C. after serving as law clerk to the Honorable Roger Vinson, U.S. District Judge for the Northern District of Florida (1986 to 1988). He specializes in antitrust litigation and has represented plaintiffs and plaintiff classes in numerous antitrust actions.

Mr. Small has served as lead counsel for the plaintiffs in multiple antitrust class actions. The court appointed Mr. Small lead counsel in *Paper Systems Inc., et al. v. Mitsubishi Corp., et al.*, No. 96-C-0959 (E.D. Wisc.), involving an international conspiracy to fix prices of jumbo roll thermal facsimile paper. The defendants settled for over $20 million, substantially in excess of the $14 million in damages estimated by the plaintiffs' expert. Mr. Small was co-lead counsel for the end-user plaintiffs in *In re Buspirone Antitrust Litig.*, MDL No. 1413 (S.D.N.Y.). The case, which presented monopolization and market allocation claims against a brand name drug manufacturer for delaying generic entry, settled for $90 million. Mr. Small is lead counsel for the plaintiffs in *Pease, et al. v. Jasper Wyman & Son, et al.*, No. CV-00-015 (Super. Ct., Knox Cty., Me.), a price-fixing class action on behalf of Maine wild blueberry growers. The case was tried in November 2003. The jury returned a verdict for the plaintiff class in the amount of $18.68 million, which after trebling and the addition of attorney fees and other costs, resulted in a judgment of

approximately $60 million.

Mr. Small has substantial appellate experience, including briefing and arguing *Free v. Abbott Laboratories*, No. 99-391, in the United States Supreme Court. The case presented the issue of whether a supplemental jurisdiction statute overruled *Zahn v. International Paper Co*. The Court split 4-4, with Justice O'Connor recusing herself. Mr. Small successfully briefed and argued appeals before the Seventh Circuit Court of Appeals in *In re Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599 (7th Cir. 1997), on the issue of whether the district court had subject matter jurisdiction, and in *Paper Systems, Inc. v. Nippon Paper Industries Co., Ltd.*, 281 F. 3d 629 (7th Cir. 2002), holding that the federal direct purchaser rule does not immunize a defendant from liability for the direct sales of its co-conspirators. Mr. Small briefed and argued the appeal in *Mack v. Bristol-Myers Squibb Co.*, 1996-1 Trade Cas. (CCH) 71,401 (Fla. 1st DCA 1996), the first opinion construing the Florida Deceptive and Unfair Trade Practices Act to permit indirect purchasers to sue for damages for antitrust violations.

Among the additional antitrust cases on which Mr. Small has worked or is working are: *In re Infant Formula Antitrust Litig.*, MDL No. 878 (N.D. Fla.) (as well as 18 state-court actions on behalf of indirect purchasers of infant formula); *Drill Bits Antitrust Litig.*, No. H-91-627 (S.D. Tex.); *In re Lease Oil Antitrust Litigation*, MDL No. 1206; *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290 (D.D.C.); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317 (S.D. Fla.); *In re Microsoft Antitrust Litig.*, MDL No. 1332 (D. Md.) (in which he is serving as chair of the experts' committee); *Ferko v. NASCAR*, No. 4:02-CV-50 (E.D. Tex.) (asserting monopolization and group boycott claims regarding the allocation of Winston Cup race dates); and *Rasmussen v. General Motors*, No. 03-CV-1828 (Cir. Ct., Milwaukee Cty., Wisc.), (and related cases in eight other states) (state-wide class actions alleging conspiracy among auto manufacturers and distributors to maintain dual price system between United States and Canada).

## JOSEPH M. SELLERS

Recognized as one of the top 75 lawyers in Washington by the <u>Washingtonian Magazine</u> in 2002 and as one of the top dozen employment lawyers in Washington by <u>The Legal Times</u>, Joseph M. Sellers has been practicing civil rights law for more than 25 years. He heads the firm's Civil Rights and Employment practice and previously, for more than 15 years, served as head of the Employment Discrimination Project of the Washington Lawyers' Committee for Civil Rights and Urban Affairs.

Mr. Sellers has represented victims of discrimination individually and through class actions as well as represented employees unlawfully denied overtime wages. He has tried civil rights class actions to judgment before juries and argued more than 25 appeals in the federal and state appellate courts, including the United States Supreme Court. He has served as class counsel, and typically lead counsel, in more than 30 civil rights and employment class actions, including the largest civil rights class action in the history of the United States. Those cases have included:

- <u>Beck, et al. v. Boeing Company</u> (W.D. Wash.) (class of more than 28,000 women employees at Boeing facilities in Washington state – sex discrimination in pay and overtime decisions)

- <u>Conway, et al. v. Deutsch</u> (E.D. Va.) (class of all female undercover case officers at the CIA – sex discrimination in promotions and job assignments)

- <u>Dukes, et al. v. Wal-Mart Stores, Inc.</u> (N.D. Cal.) (class of more than 1.6 million women employees at Wal-Mart stores in the U.S.-- sex discrimination in promotions and pay decisions)

- <u>Johnson, et al. v. Freeh</u> (D.D.C.) (class of African American special agents of the FBI -- racial discrimination in promotion and job assignment decisions)

- <u>Keepseagle, et al. v. Venaman</u> (D.D.C.) (class of Native American farmers and ranchers denied credit opportunities by USDA – racial discrimination in equal access to credit)

- <u>Kernan, et al. v. Holiday Universal</u> (D. Md.) (class of African American patrons denied membership at health club chain – racial discrimination in access to place of public accommodation)

18

- <u>Neal, et al. v. Director, D.C. Dept. of Corrections</u> (D.D.C.) (first sexual harassment class action tried to a jury; class of women correctional employees and women and men subject to retaliation at the D.C. Dept. of Corrections)

- <u>Trotter, et al. v. Perdue Farms</u> (D. Del.) (collective action comprised of chicken processing workers – denial of overtime pay for donning and doffing safety and protective equipment)

Mr. Sellers has also been active in legislative matters. He has testified more than 20 times before committees of the United States Senate and the House of Representatives on various civil rights and employment matters. He also worked on the passage of the Civil Rights Act of 1991 and the Americans with Disabilities Act of 1990.

Mr. Sellers has trained lawyers at the U.S. Equal Employment Opportunity Commission and the U.S. Department of Justice on the trial of civil rights cases and lectured extensively throughout the country on various civil rights and employment topics. He has served as an Adjunct Professor at the Washington College of Law at American University, where he taught a course on Employment Discrimination law, and at the Georgetown University Law Center, where he taught a course on Professional Responsibility.

He served on the Clinton/Gore Transition Team in 1992 and 1993 where he headed the teams reviewing the operations of the EEOC, the Office of the Assistant Attorney General for Civil Rights and various sections of the Civil Rights Division of the Department of Justice. Appointed by the judges of the D.C. Circuit Court of Appeals and the U.S. District Court for the District of Columbia, Mr. Sellers served as a Co-Chair of the Task Force of the D.C. Circuit on Gender, Race and Ethnic Bias.

Mr. Sellers is a professionally-trained mediator and has served as the President of the Washington Council of Lawyers, a bar association in the District of Columbia.

Mr. Sellers received a J.D. from the Case Western Reserve School of Law, where he served as Research Editor of the law review, and a B.A. from Brown University

19

## MARK S. WILLIS

Mark Willis concentrates on complex litigation involving violations of the federal securities laws.

Mr. Willis obtained a Master's in International Law from Georgetown University in 1993. In February, 1998, he authored Chapter 60 of Securities Law Techniques, titled *Admission of Securities to Official Listing on Stock Exchanges Within the European Union and the Subsequent Disclosure Obligations*. He published a related article in the Fall, 1997 issue of the International Law News, titled *A Brief Overview of the European Union's Efforts to Harmonize the Requirements for Listing Securities*. In February, 1998, Mr. Willis also authored Chapter 196 of Business Organizations with Tax Planning, titled *Company Laws of the European Union*. Mr. Willis graduated from Pepperdine University School of Law in 1989, where he also co-authored a comment entitled *Corporation Code Sections 309 and 1203: California Redefines Directors' Duties Towards Shareholders*, Pepperdine Law Review, Volume 16, No.4(1989). He received his B.A. from Brigham Young University in 1986. Mr. Willis is also listed in The National Registry of Who's Who.

Mr. Willis joined Cohen, Milstein in 1989 and has worked primarily on complex litigation involving the federal securities laws, representing both large institutional investors and small shareholders. Among other notable cases, Mr. Willis has litigated against Caremark International (which was accused of federal medicare fraud and subsequently pled guilty and paid the U.S. Government a fine of approximately $160 million) resulting in a $25 million settlement; National Health Labs, which resulted in a $65 million settlement; and Nextel Communications which, along with Motorola, recently settled securities fraud claims for $27 million. Mr. Willis has been admitted to practice in the District of Columbia and the Commonwealth of Massachusetts.

### STEPHEN D. ANNAND

Mr. Annand has experience in civil litigation in state and federal courts, primarily in Virginia and West Virginia, in the areas of healthcare, product liability, commercial disputes, insurance coverage and bad faith, personal injury and environmental law, among other substantive legal fields. He has served as lead trial counsel in over 50 significant jury trials during his career, and also has tried many cases to the court. He has argued cases before the highest courts of several states, as well as the United States Court of Appeals for the Fourth Circuit. Mr. Annand is a 1972 graduate, *cum laude*, of the Washington and Lee University School of Law, where he was an Editor of the Law Review and a member of the National Moot Court team. He also received an LL.M. degree in 1975 in Environmental Law from the George Washington University National Law Center. He has been a speaker and panel member on numerous occasions on a variety of issues, including HMO practices, medical negligence, environmental law, insurance liability, evidence and trial practice, as well as lectures in brief writing and appellate advocacy in the Lawyers' Role course at the Washington and Lee University School of Law.

Mr. Annand has concentrated for the past 15 years in litigation involving physician medical negligence, hospitals and other healthcare providers, traditional health insurance companies and, more recently, Health Maintenance Organizations. Many of the cases in which Mr. Annand has been involved have proceeded to trial after extensive discovery in technical medical and healthcare issues, including depositions of experts throughout the United States and in England on the substantive legal issues involved in the litigation, as well as extensive document discovery and complex case management.

### MARC I. MACHIZ

Marc Machiz received his law degree from the University of California at Berkeley (Boalt Hall) in 1978. He joined the Plan Benefits Security Division ("PBS") of the Office of the Solicitor of Labor as a

21

trial attorney in 1978, and was appointed Assistant Counsel for Fiduciary Litigation in 1982. At the start of 1984, he joined Beins, Axelrod and Osborne, P.C. as an associate practicing general labor and Employee Retirement Income Security Act ("ERISA") law on behalf of unions and multi employer plans. In 1986 he returned to the Department of Labor as Counsel for General Litigation at PBS, and from 1988 to 2000 held the position of Associate Solicitor, heading the Division. As Associate Solicitor, Mr. Machiz was the Department of Labor's chief ERISA lawyer with responsibility for all enforcement litigation brought by the Secretary of Labor under the statute, which governs the vast majority of privately sponsored health, welfare and pension plans. He was also responsible for all legal advice under the statute provided to the Pension & Welfare Benefits Administration which administers Title I of ERISA.

Mr. Machiz is well-known for instituting the Department's innovative amicus program which aggressively advocated the Department's views throughout the judicial system on a wide range of ERISA issues ranging from the need to limit ERISA preemption of state worker and consumer protection laws, to the need to strengthen participants' rights and remedies under the Act.

Since joining Cohen, Milstein in March of 2000, Mr. Machiz has been litigating ERISA class actions involving subject matter including inappropriate pension plan investments, the inappropriate investment in company stock by 401(k) plans and illegal plan terminations. *E.g., Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002); *Mehling, et al. v. New York Life Insurance Co., et al.*, No. 99-CV-5417 (E.D. Pa.) (alleging inappropriate pension and 401k plan investments); *In re Williams Company ERISA Litigation* No. 02-CV-153-H (N.D. Okla.) (alleging breach of fiduciary duty regarding 401k plan investment in company stock); *Constance K. Schied v. Dynegy, Inc.*, No. H-02-3076 (S.D. Tex.) (alleging breach of fiduciary duty regarding 401(k) plan investment in company stock).

Mr. Machiz's expertise in ERISA has been recognized by his colleagues in the ERISA bar who made him Charter Fellow of the American College of Employee Benefits Counsel. He is a frequent

22

speaker on ERISA issues for, among others, the ABA, ALI-ABA, Glasser Legal Works, Mealy's and PLI, and has served as plaintiffs' co-chair of subcommittees of the Employees Benefits Committee of the ABA's Labor Section.

PAUL T. GALLAGHER

Paul Gallagher's practice concentrates on complex litigation involving antitrust violations, international commercial violations, and human rights abuses. In the antitrust area, his cases have involved the successful prosecution of litigation against manufacturers of explosives for price-fixing, which resulted in a $70 million settlement; the ongoing prosecution of litigation against Archer Daniels Midland and other manufacturers of high fructose corn syrup for alleged price-fixing; abuse of monopoly claims against United States Tobacco Company and price-fixing claims against Mercedes-Benz and 24 New York region dealers.

In the last several years, Mr. Gallagher has developed an expertise in issues involving international antitrust litigation. He played a major part in the International Auction Houses price-fixing litigation, which recently settled for $40 million. The International Auction Houses Litigation is the first time that a class, comprised solely of non-U.S. citizens, has ever obtained compensation under the U.S. antitrust laws. He also argued and obtained a favorable D.C. Circuit Court of Appeals decision in the International Vitamins Litigation, which has had a significant impact on antitrust jurisprudence and was characterized by one prominent academician as "one of the most expansive antitrust decisions of the last 30 years."
In the human rights area, Mr. Gallagher played a prominent role in the historic litigation against the major Swiss banks for withholding assets deposited by persecutees fleeing the Nazis prior to and during the Second World War, which was settled for $1.25 billion. He also played an active role in the litigation and resolution of claims against the German government and German industry for, among other claims, the use

23

of persecuted persons to perform slave labor during the War. That case resulted in a settlement of over $5.2 billion. Mr. Gallagher was honored by the Government of Poland for his significant contributions to this historic effort. He also successfully prosecuted human rights litigation against the French banks for their collaborative role with the Nazi Regime, which resulted in multi-million dollar settlements.

Mr. Gallagher graduated from the Marshall-Wythe School of Law of the College of William & Mary in 1992. He was a member of the William & Mary Law Review, as well as the Law Review of the University of Cincinnati School of Law, where he attended the first year of law school, ranked first in his class, and received several American Jurisprudence Awards for academic excellence.

### LINDA P. NUSSBAUM

Linda P. Nussbaum joined Cohen Milstein as the resident partner of the New York City office in March, 2001, and is a member of the Antitrust Practice Group. She has had extensive experience practicing in the areas of complex litigation and class actions, with an emphasis in antitrust, securities and employment litigation.

Ms. Nussbaum received her undergraduate degree *magna cum laude* from Brooklyn College of the City University of New York in 1974, where she was a member of Phi Beta Kappa. She received her law degree from the National Law Center, George Washington University, where she graduated *with honors* in 1977. She received an LL.M. degree in Taxation from the New York University School of Law in 1984. Ms. Nussbaum is a member of the American Law Institute.

Ms. Nussbaum is presently lead or co-lead counsel in a number of significant class actions pending throughout the U.S., including *In re Remeron Direct Purchaser Antitrust Litigation*, Master No. 03-CV-0085 (FSH) (D.N.J.); *In re Relafen Antitrust Litigation*, No. 01-12239 (WGY) (D. Mass.); *In re Microcrystalline Cellulose Antitrust Litigation*, MDL Docket No. 1402; and *In re K-Dur Antitrust*

24

Litigation, MDL Docket No. 1419.

She has recently served as a co-lead counsel in a number of antitrust class actions that have resolved very favorably for the plaintiff class including *In re Lorazepam and Clorazepate Antitrust Litigation*, MDL No. 1290 (D.D.C.), where in approving the settlement Chief Judge Hogan said, "Obviously, the skill of the attorneys, and I'm not going to spend the time reviewing it, I'm familiar with counsel, and they, as I said, are among the best antitrust litigators in the country."; *In re Methionine Antitrust Litigation*, MDL No. 1311 (N.D. Cal.); and on the executive committee of *In re Sorbates Direct Purchaser Antitrust Litigation*, No. C98-4886 (N.D. Cal.).

## STEWART M. WELTMAN

Stewart M. Weltman joined Cohen, Milstein in December 2002. Prior to that, he had extensive experience as a complex litigator in Chicago, Illinois, first as a partner with Much, Shelist, Freed, et al., and over the last decade as the managing partner and owner of Stewart M. Weltman P.C. During his years of practicing as a complex litigator, Mr. Weltman has had the opportunity to represent both individual plaintiffs, plaintiff classes and defendants in antitrust, securities fraud, consumer fraud, and accounting malpractice.

Prior to joining CMHT, Mr. Weltman was class counsel in a number of antitrust matters: *Industrial Gas Antitrust Litigation*, the *Records and Tapes Antitrust Litigation*, and the *Glass Containers Antitrust Litigation*. He is currently acting as co-lead counsel in: *In re Carbon Black Antitrust Litigation* (MDL Docket No. 1543); *In re EPDM Antitrust Litigation* (MDL Docket No. 1542); and *In re Pressure Sensitive Labelstock Antitrust Litigation* (MDL Docket No. 1556). He is also currently litigating *S&M Farm Supply v. Pharmacia, et al.* (E.D. Mo.), an antitrust class action involving price-fixing and market allocation in the non-selective herbicide market, including glyphosate. Mr. Weltman also participated in the Choline Chloride price-fixing trial in *In re Vitamins Antitrust Litigation*, MDL No. 1285 (D.D.C.).

25

In the area of securities fraud, Mr. Weltman has served as co-lead counsel in a class action that resulted in an aggregate recovery of approximately $26.5 million from two defendants -- a large Kansas City law firm and one of the big five accounting firms. He served as Derivative Plaintiffs' Lead Counsel in a securities fraud and derivative/breach of fiduciary duty case in which a $33 million settlement was reached with the former directors and officers of the Public Service Company of New Mexico. Mr. Weltman served as co-lead counsel in *Benfield v. Steindler, et al. and General Electric Co.*, (C-1-92-729) (S.D. Ohio), a derivative action in which a settlement of $21 million was reached on behalf of the plaintiffs. He has represented Pacific Life Insurance Company as an individual plaintiff in a securities fraud action arising out of the Republic Bank failure. While at CMHT, he continues to represent Pacific Life Insurance Company as an individual plaintiff investor in the WorldCom securities fraud litigation and is co-lead counsel in *Dloogatch v. Mercury Finance, et al.*, 97 CH 8790 (Circuit Court of Cook County, Chancery Division).

Mr. Weltman also has served as co-lead counsel in several consumer fraud class action suits, including *Riverol, et al. v. Disney, et al.* (Florida State Court, Miami), a class action that involved homeowners whose homes were defectively constructed and that resulted in a settlement of $10.5 million, and *Shifris v. Novartis Corporation*, 97 CH 3331 (Circuit Court of Cook County, Chancery Division), a nationwide false advertising/marketing class action that settled in excess of $4 million using fluid recovery. He has successfully tried or prosecuted to settlement numerous accounting malpractice cases on behalf of individual clients.

Mr. Weltman graduated from The John Marshall Law School (J.D., *High Distinction*, 1978) where he was a member of the Law Review. Since graduating from The John Marshall Law School, he has returned as an adjunct instructor, and as a lecturer and panel member for numerous FDIC and RTC investigator training seminars. In addition, he has been a lecturer and panel member for AICPA Litigation

Support Section seminars where he has lectured on accountants' liability issues and has demonstrated the utilization of expert witnesses. Mr. Weltman has also been a lecturer for the Illinois Institute for Continuing Legal Education on securities fraud litigation and accountants' malpractice and has co-authored an article for the ABA Antitrust magazine analyzing the Chicago School's influence on the Seventh Circuit's antitrust jurisprudence as of 1989.

### CHRISTINE E. WEBBER

Christine E. Webber graduated from Harvard University (A.B., *magna cum laude,* 1988) and the University of Michigan Law School (J.D., *magna cum laude*, 1991, Order of the Coif). Following law school, Ms. Webber clerked for the Honorable Hubert L. Will, United States District Judge for the Northern District of Illinois.

Prior to joining Cohen, Milstein in 1997, Ms. Webber received a Women's Law and Public Policy fellowship and worked for four years at the Washington Lawyers' Committee for Civil Rights and Urban Affairs in their Equal Employment Opportunity Project. While there she worked on a variety of employment discrimination cases, and focused in particular on the sexual harassment class action *Neal, et al. v. Director, D.C. Department of Corrections, et al.* Ms. Webber participated in the trial of this groundbreaking sexual harassment class action in 1995. Ms. Webber also tried the race discrimination case *Cooper v. Paychex* (E.D. Va.), and successfully defended the plaintiffs' verdict before the Fourth Circuit.

Ms. Webber works in the firm's Civil Rights Practice Group where she represents plaintiffs in class action employment discrimination and Fair Labor Standards Act cases. She is currently representing plaintiffs in *Beck v. The Boeing Co.*, a class action alleging sex discrimination in compensation and promotions, and *Nouri v. The Boeing Co.*, a class action alleging race and national origin discrimination against a group of Asian-Americans, both pending in the Western District of Washington. She was counsel in *Trotter v. Perdue* (D. Del.), representing plaintiffs who were wrongly denied payment of overtime

27

wages, and obtaining a $10 million settlement. She is also representing workers in a similar case against *Tyson Foods, Inc.* Ms. Webber's most recently filed cases are *Hnot v. Willis* (S.D.N.Y.), representing a proposed class of women at the vice-president level and above challenging sex discrimination in compensation and promotions and *Jenkins v. BellSouth* (N.D. Ala.), representing a proposed class of African-American employees challenging race discrimination in promotions and compensation.

Ms. Webber is a member of the National Employment Lawyers' Association (NELA) and co-chair of their Class Action Committee, and is a member of the Board of Advisors for the Annual Review of Gender and Sexuality Law of the Georgetown Journal of Gender and Law.

### RICHARD A. KOFFMAN

Richard A. Koffman joined Cohen, Milstein, Hausfeld & Toll, P.L.L.C. in April, 2003 and is a member of the antitrust practice group. He has extensive experience in complex litigation and class actions, with an emphasis in antitrust and civil rights litigation.

Mr. Koffman came to Cohen Milstein after four years as a senior trial attorney with the Antitrust and Civil Rights Divisions of the United States Department of Justice. Prior to joining the Department of Justice, he spent seven years in private practice: first with Fine, Kaplan and Black in Philadelphia, Pennsylvania, working primarily on antitrust class actions and other complex commercial litigation, and then with Bernabei & Katz in Washington, D.C., handling employment discrimination cases. Mr. Koffman was actively involved in litigating several successful antitrust class actions on behalf of plaintiffs, including *In re Nasdaq Market-Makers Antitrust Litigation*, M.D.L. No. 1023 (S.D.N.Y.); *In re Polypropylene Carpet Antitrust Litigation*, M.D.L. No. 1075 (N.D. Ga.); *In re Commercial Explosives Antitrust Litigation*, M.D.L. No. 1093 (D. Utah); and *In re Drill Bits Antitrust Litigation*, C.A. No. H-91-627 (S.D. Tex.).

28

Mr. Koffman is a graduate of Yale Law School (J.D., 1990), where he was a Senior Editor of the *Yale Law Journal*, and Wesleyan University (B.A., 1986). After law school, he served as a judicial clerk for U.S. District Judge James B. McMillan of the Western District of North Carolina, and for U.S. Circuit Judge Anthony J. Scirica of the U.S. Court of Appeals for the Third Circuit. Mr. Koffman is a member of the bars of the District of Columbia, the United States Supreme Court, the U.S. Court of Appeals for the Third Circuit, the U.S. Court of Appeals for the Eighth Circuit, and the U.S. District Court for the Eastern District of Pennsylvania.