UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
L.I.S.T., INC., Individually and On Behalf of Itself
and All Others Similarly Situated,

                    Plaintiff,

  - v. -

VEECO INSTRUMENTS, INC., EDWARD H.
BRAUN and JOHN F. REIN, JR.,

                    Defendants.
---------------------------------------------------------------x

Civil Action No.:05-CV-2189 (CM)

Judge Colleen McMahon

*(Additional caption on following page)*

**MEMORANDUM OF LAW IN FURTHER SUPPORT RATAN LALCHANDANI'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF PROPOSED LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO ALL OTHER MOTIONS**

```
-----------------------------------------------------------------x
ROY P. KERSHAW, Individually and On Behalf of    :
All Others Similarly Situated,                    :   Civil Action No.: 05-CV-2929 (CM)
                                                  :
                                                  :   Judge Colleen McMahon
                          Plaintiff,              :
                                                  :
     - v. -                                       :
                                                  :
VEECO INSTRUMENTS, INC., EDWARD H.                :
BRAUN and JOHN F. REIN, JR.,                      :
                                                  :
                          Defendants.             :
-----------------------------------------------------------------x
```

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ....................................................................................... 1

II.  ARGUMENT .................................................................................................................... 2

    A.   Ratan LalChandani is the Presumptive Lead Plaintiff in this Case ........................ 2

        1.   The Trust Does Not Have the Largest Financial Interest ........................... 2

            a.   Use of the Longest Class Period is Appropriate at this Stage......... 3

        2.   The Trust is an Improper Lead Plaintiff ...................................................... 7

            a.   The Trust Has a Net Gain in Veeco Stock during
                the Longest Class Period................................................................. 7

            b.   No Matter What Class Period is Used, the Trust is an
                Inadequate Lead Plaintiff and has Interests that Conflict
                with Other Class Members Class…………………………………… 9

            c.   The Trust is Inadequate as a Result of its Failure to
                Set Forth All its Transactions in Veeco Securities ......................... 9

        3.   Ratan LalChandani Has the Largest Financial Interest............................. 10

        4.   Ratan LalChandani Meets the Rule 23 Requirements .............................. 11

III. CONCLUSION................................................................................................................ 12

## **TABLE OF AUTHORITIES**

### **CASES**

*In re Cable & Wireless, PLC Sec. Litig.*,
  217 F.R.D. 372 (E.D. Va. 2003) ...................................................................................8

*In re Cardinal Health, Inc. Sec. Litig.*,
  226 F.R.D. 298 (S.D. Oh.  2005) ..................................................................................8

*In re Comdisco Sec. Litig.*,
  150 F. Supp. 2d 943 (N.D. Ill. 2001) ............................................................................8

*Griffin v. GK Intelligent Systems, Inc.*,
  196 F.R.D. 298 (S.D. Tex. 2000) .................................................................................8

*Lax v. First Merchants Acceptance Corp.*,
  No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ................................4, 10

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998)..............................................................................2

*In re Party City Sec. Litig.*,
  189 F.R.D. 91 (D.N.J. 1999)..................................................................................4, 10

*In re Peregrine Systems, Inc. Sec. Litig.*,
  No. Civ. 02 CV 870-J, 2003 WL 23955714 (S.D. Cal. Jan. 30, 2003)......................10

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
  No. 03 Civ. 8264 RWS, 2004 WL 1179311 (S.D.N.Y. May 27, 2004) ...................11

*Sofran v. LaBranche & Co.*,
  220 F.R.D. 398 (S.D.N.Y. 2004) ..........................................................................2, 11

*In re Star Gas Sec. Litig.*,
  No. 3:04cv1766, 2005 WL 818617 (D. Conn. Apr. 8, 2005) ...............................4, 10

### **STATUTES/RULES**

15 U.S.C. § 78u-4(a)(1) ........................................................................................................2

15 U.S.C. § 78u-4(a)(2)(A)(iv) ..........................................................................................10

15 U.S.C. § 78u-4(a)(3) ........................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ..................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)...................................................................................8

ii

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...................................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) ...........................................................................................8

15 U.S.C. § 78u-4(1)(3) ...................................................................................................................5

Federal Rule of Civil Procedure 23 ................................................................................1, 2, 8, 11

Federal Rule of Civil Procedure 23(3) .......................................................................................8, 9

Federal Rule of Civil Procedure 23(4) .......................................................................................8, 9

**I.     PRELIMINARY STATEMENT**

Before the Court are five competing motions for appointment as lead plaintiff and approval of selection of lead counsel in the above-captioned securities class actions.[1] Movant Ratan LalChandani respectfully submits this memorandum of law in opposition to all competing motions.

Although a cursory review of the movants' claimed losses makes it appear as though the Steelworkers Pension Trust (the "Trust") has the largest financial interest in this case, <u>it does not</u>. In fact, the Trust has a <u>net gain</u> of $315,530 during the class period on its shares of Veeco Instruments, Inc. ("Veeco" or the "Company").  By using the shortest class period in its papers, and thereby excluding a significant class-period sale, the Trust has manipulated and artificially inflated its reported losses so as to appear to be the movant with the largest financial interest in the case.  But by failing to disclose to the Court all of its transactions in Veeco shares during the longest class period (which is the class period asserted in the first-filed case), the Trust has failed to comply with a fundamental requirement of the Private Securities Litigation Reform Act ("PSLRA") that movants set forth <u>all</u> of their transactions in the subject stock.  In doing so, the Trust and its counsel have compromised their integrity as potential lead plaintiff and counsel for the class.

Movant Ratan LalChandani is actually the movant with the largest financial interest in this case, with undisputed losses of approximately $300,000 on Veeco shares purchased during the class period.  Having set forth his typicality and adequacy under Federal Rule of Civil Procedure 23 ("Rule 23"), Mr. LalChandani is therefore the <u>presumptive</u> lead plaintiff in this case.

---

[1]  The motions are also for consolidation; however, since all movants agree on that issue, it is not addressed herein.  Currently, in addition to the above-captioned cases, there are eight related cases pending in the Eastern District of New York.  The movants have filed lead plaintiff papers in both districts.

## II.   ARGUMENT

### A.   Ratan LalChandani is the Presumptive Lead Plaintiff in this Case

#### 1.   The Trust Does Not Have the Largest Financial Interest

As referenced in all the moving papers, the PSLRA governs this Court's selection of lead plaintiff in this matter. 15 U.S.C. § 78u-4(a)(1). Under the PSLRA, the Court must afford the movant with the "largest financial interest" that otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23 ("Rule 23") the presumptive status of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see also Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (Sweet, J.). That presumption can only be rebutted with proof that the movant will not fairly and adequately protect the class or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Sofran*, 220 F.R.D. at 403.

In determining the "largest financial interest," courts have held that the following four factors are relevant: (1) total shares purchased during the class period, (2) net shares purchased during the class period, (3) net funds expended during the class period, and (4) losses. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998). As the below chart shows, Ratan LalChandani purchased the largest number of shares and net shares during the class period, expended the most net funds during the class period, and suffered larger losses than any other movant in this case:

2

| Movant | # Shares Bought | Net # Shares Bought | Net Funds Expended | Claimed Loss | Actual (Loss)/Gain |
|---|---|---|---|---|---|
| **Ratan LalChandani** | **89,143** | **49,943** | **$ 1,043,097.00** | **$ (299,695.45)** | **$ (299,695.45)** |
| **Steelworkers[2]** | 40,000 | 0 | $ (315,530.25) | $ (345,878.94) | $ 315,530.25 |
| **Joel Mandel** | 55,000 | 15,000 | $ 340,951.80 | $ (116,392.06) | $ (116,392.06) |
| **NECA-IBEW** | 9,671 | 0 | $ 40,707.43 | $ (40,707.43) | $ (40,707.43) |
| **Capitanio Group** | 2,343 | 2,343 | $ 51,442.45 | $ (16,566.36) | $ (16,566.36) |

Mr. LalChandani prevails on the first three of the four factors, and prevails on the fourth factor (loss) when the Trust's previously undisclosed sale is included, as explained below.

### a.   Use of the Longest Class Period is Appropriate at this Stage

As in many securities cases, more than one class period was used by plaintiffs filing the above-captioned complaints against Veeco.[3] And as is customary, each of the four largest movants in this case, except the Trust, used the longest class period when calculating their PSLRA losses.[4] The Trust used the shortest period, which artificially and improperly inflated the

---

[2]   This data is based on the Trust's transactions during the first-filed and longest class period, not the shortest class period suggested in the Trust's papers, which excludes a major sale, as explained *infra*. The supplemental data was obtained by the undersigned counsel on contacting counsel for the Trust to inquire about the missing information. Even when using the shortest class period and the data the Trust submitted to the Court in its moving papers, the Trust still purchased fewer total and net shares during the class period than Mr. LalChandani and expended fewer funds than Mr. LalChandani during the class period. Specifically, using the shortest period, the Trust's total shares purchased during shortest period were 40,000 compared to Mr. LalChandani's of 89,143; net shares purchased during shortest period were 40,000 compared to Mr. LalChandani's of 49,943; and net funds expended during shortest period were $941,269.70 compared to Mr. LalChandani's of $1,043,097.00.

[3]   The three class periods used were (1) November 3, 2003 – February 10, 2005, (2) February 6, 2004 – February 10, 2005; and (3) April 26, 2004 – February 10, 2005. The first-filed case used the November 3, 2003 – February 10, 2005 class period; therefore, that is the class period that appeared on the first notice to class members as required by 15 U.S.C. § 78u-4(a)(3).

[4]   Movant Joel Mandel refers to the shortest class period in his moving papers, but his losses were calculated using the longest class period. *See* Exhibit B to the Declaration of Catherine A. Torell in Support of Motion of Joel Mandel to (1) Be Appointed Lead Plaintiff; (2) Approve Proposed Lead Plaintiff's Choice of Counsel; and (3) Consolidate all Related Actions, submitted with the moving papers of movant Joel Mandel, and dated April 18, 2005. The movant with the smallest losses, the Capitanio Group (9 individuals with total losses of $16,566) also used the shortest period.

3

Trust's claimed losses by hiding a significant sale of Veeco securities during the relevant period. Specifically, the Trust excluded a profitable sale of 40,000 shares the Trust made on January 6, 2004, for proceeds of $1,256,800![5]

In order to support its artificially inflated loss calculation, counsel for the Trust will likely argue that the shortest class period is the appropriate class period in this case.[6] As an initial matter, courts have noted that, in cases where multiple class periods have been asserted in complaints with the same substantive misrepresentations, the longest and most broad class period is the more appropriate one to use for purposes of selecting a lead plaintiff. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) (using largest class period for the purposes of determining which movant had the largest financial interest); *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997) (same). Indeed, in a recent case, where a lead plaintiff movant similarly advocated the use of a shorter class period, the court rejected the argument and used the longest period, stating:

> …it would be premature to limit the plaintiff class in this way at such an early stage of the litigation. The appointed lead plaintiffs can decide how to frame their amended complaint in terms of an appropriate class period in their best judgment. The ruling on a motion for class certification will determine whether in fact the claims of [the defendant company] purchasers in the various class periods have require [sic] subclasses, or whether each lead plaintiff is representative of the class based on the dates of stock purchases.

*In re Star Gas Sec. Litig.*, No. 3:04cv1766, 2005 WL 818617, at * 7 (D. Conn. Apr. 8, 2005). The logic behind using the longest class period at the lead plaintiff stage is to avoid litigating the merits of the case before a lead plaintiff is appointed.

---

[5] Because counsel for the Trust did not include this sale on the Trust's certification, the undersigned counsel only learned of the hidden sale on contacting counsel for the Trust and requesting the Trust's complete transactions. *See* Exhibit A to the Declaration of Peter E. Seidman in Support of Motion by the Steelworkers Pension Trust for Consolidation, for its Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel, filed, dated April 18, 2005 (the "Seidman Decl.").

[6] On February 11, 2005, Veeco announced it would restate its financials for the first three quarters of 2004. On this basis, the shortest class period begins on the date Veeco announced its first-quarter 2004 results.

4

In addition to the fact that it is customary and logical to use the longest class period at the lead plaintiff stage, in this case, the longest class period is the correct period for three other reasons. First, the first-filed case in this matter asserted the longest class period; therefore, it appeared on the notice to the class that was disseminated on February 15, 2005 – notice which triggered the PSLRA's notice and lead-plaintiff provisions under 15 U.S.C. § 78u-4(a)(3).[7]

Second, the claims in this case are based, in large part, on Veeco's improper valuation of inventory and other items at its TurboDisc subsidiary.[8] As alleged in the complaints with the longest class period, Veeco first touted its acquisition of TurboDisc on November 3, 2003, the first day of the longest class period.[9] Then, on February 6, 2004, also inside the longest class period but outside the shortest period, Veeco announced its 2003 operating loss was attributable, in part, to "a $1.7 million reduction in gross profit from *purchase accounting adjustments* due to the required capitalization of profit in *inventory* and permanent elimination of certain deferred revenue… ."[10] This statement, according to those complaints, was false and misleading because it failed to reveal what the defendants knew at that time – Veeco had improperly accounted for inventory and other items at TurboDisc. This statement also indicates that **as of the fourth-quarter 2003**, Veeco had understated the fair value of TurboDisc's inventory, thereby overstating the Company's gross margins, operating income, and gross profit, as well as understating its cost of sales. It was on February 11, 2005, the end of all the proposed class periods, that the Company admitted it had mis-accounted for TurboDisc's inventory, accounts

---

[7] Counsel for the Trust mistakenly attached to its moving papers a different notice disseminated by counsel for plaintiff that filed a later complaint – not the first-filed complaint. *See* Exh. C to the Seidman Decl.. The undersigned counsel filed the first-filed complaint in this matter, and published the first-filed notice. *See* Exh. B to Keller Decl., filed in support of Mr. LalChandani's moving papers.

[8] *See e.g.,* plaintiff Linzer's complaint (No. 05-CV-957, E.D.N.Y.), plaintiff Grove's complaint (No. 05-CV-2189, E.D.N.Y.), plaintiff L.I.S.T.'s complaint (No. 05-CV-2189, S.D.N.Y.) and plaintiff Kershaw's complaint (No. 05-CV-2929, S.D.N.Y.).

[9] Id.

[10] Id. (emphasis added).

5

payable and revenue.[11] This announcement caused Veeco shares to drop approximately 10% on heavy trading.[12] As a result of these facts, the alleged fraud at Veeco began in the fourth quarter of 2003; therefore, the longest class period, which encompasses this period, is the most appropriate class period.

Third, the longest period is appropriate because an Amended Complaint was filed in this matter on April 14, 2005,[13] asserting that between November 3, 2003 and February 11, 2005 (the longest class period), Veeco had been engaged in the following additional improprieties:

(a) The defendants failed to disclose that Veeco had improperly exported products without the license required by the United States Department of Commerce ("USDOC"), on national security and anti-terrorism grounds, for shipments of certain products to certain countries, in particular Malaysia and Hong Kong, China.

(b) The Company, following improper shipment of sensitive equipment to prohibited countries, sought to cover up this impropriety by, after the fact, seeking approval to have the equipment deemed not classified by the USDOC as requiring a license. And in doing so, the Company omitted material information from its applications to the USDOC in an attempt to have its products classified in a manner which would not require the above-described export license.

(c) The Company had booked material amounts of revenue for the improper shipment of products without the required license; and

(d) The Company was aware of these facts, and had acknowledged that any corresponding government investigation could materially impact the financial status of the

---

[11] Id.

[12] Id.

[13] *See* Amended Complaint, filed April 14, 2005, in *L.I.S.T., Inc. v. Veeco Instruments, Inc.,* No. 05-CV-2189 (S.D.N.Y.) (McMahon, J.).

6

Company and could put the Company's export privileges at risk, but failed to disclose this to the investor public.[14]

These allegations span the entire length of the longest class period, and the longest class period is necessary to assert these claims. For example, the Amended Complaint alleges, "on December 31, 2003, in order to make the desired revenue numbers for the year ending that day, Veeco shipped product model DLC-350V/FCA to a customer in Malaysia, without the required export license. Defendants were aware that shipment of this product was restricted by the USDOC on national security and anti-terrorism grounds, and that shipping it without license could result in fines and suspension of export privileges." Again, the alleged fraud at Veeco was taking place in the fourth-quarter 2003, which is before the shortest class period. Therefore, to the extent the Trust seeks to utilize the shortest class period to support its damage calculation, any consolidated amended complaint utilizing that period would eviscerate the above claims on behalf of thousands of class members.

In sum, the determination of the appropriate class period in this case should not be made at the lead plaintiff stage; rather, the Court should simply determine the largest financial interest using the longest asserted period. And even if the Court analyzes the appropriateness of the three class periods, the longest class period is the most appropriate one in this case.

    **2.**    **The Trust is an Improper Lead Plaintiff**

        **a.**    **The Trust Has a Net Gain in Veeco Stock during the Longest Class Period**

As stated above, the Trust utilized the shortest class period in presenting its losses to the Court, thereby excluding its January 6, 2004 sale of 40,000 Veeco shares for proceeds of

---

[14] It is worth noting that the investigation of counsel for Mr. LalChandani revealed these additional facts, further evidencing the benefit to the class of his being appointed lead plaintiff in this case.

7

$1,256,800. When taking that transaction into consideration, although the Trust will argue it continues to have a FIFO loss[15] on Veeco shares, the Trust actually has a <u>net gain</u> of $315,530.25.[16] **<u>Courts have routinely rejected lead plaintiff movants and proposed class representatives with net gains in the subject security</u>**. *See, e.g., In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Oh. 2005) (rejecting lead plaintiff movants who reported FIFO losses but actually had net gains, stating, "courts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages…proving damages and typicality will be the bête noir of these [] entities"); *In re Comdisco Sec. Litig.,* 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001) (rejecting lead plaintiff movant who asserted an "artificial" FIFO loss where movant actually had a net gain in the security); *Griffin v. GK Intelligent Systems, Inc.*, 196 F.R.D. 298, 301 (S.D. Tex. 2000) (finding proposed class representative atypical because she had a net gain in the stock); *see also In re Cable & Wireless, PLC Sec. Litig.,* 217 F.R.D. 372, 378 (E.D. Va. 2003) ("Courts have refused to appoint as lead plaintiff a movant who profited from purchases and sales of the defendant's shares during the class period."). This is because an investor with a net gain actually benefited from alleged fraud during the class period, making them atypical and inadequate class representatives under both Rule 23 and the PSLRA. *See id.;* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb); and Fed. R. Civ. P. 23(3) and (4).

Similarly, in this case, although it reports a FIFO loss, the Trust actually made money on Veeco shares during the class period. In fact, having invested a total of $941,269.75 on Veeco

---

[15] "FIFO" refers to the "first-in-first-out" methodology for calculating losses on stock.

[16] A net gain or net loss is calculated by comparing a movant's funds spent to its funds received during the class period. Also utilized in a "LIFO" loss calculation ("last-in-first-out"), this analysis is typically used get a true picture of whether a movant with FIFO losses is actually a net seller or has a net gain on the stock during the class period, thereby subjecting the movant to unique defenses. *See Cardinal Health, Inc*, 226 F.R.D. at 308; *see also Cable & Wireless, PLC,* 217 F.R.D. at 378.

8

shares during the class period, and receiving proceeds of $1,256,800.00, a 34% return (net gain of $315,530.25), Veeco was actually a <u>fantastic</u> investment for the Trust. Therefore, the Trust is clearly atypical and/or subject to a "unique defense" because it suffered <u>no loss</u> during the longest period; rather, it made a <u>net gain</u> on Veeco shares.

      **b.**    <u>**No Matter What Class Period is Used, the Trust is an Inadequate Lead Plaintiff and has Interests that Conflict with Other Class Members**</u>

If the Trust were appointed lead plaintiff in this case, and the longest class period was used in the consolidated amended complaint, then, as stated above, the Trust would be an atypical and inadequate class representative. *See* Fed. R. Civ. P. 23(3) and (4). The class would be burdened with the defense of the Trust, which would surely be contested at the class certification stage by the defendants; and in the end, the class could be left without leadership. Alternatively, if the Trust were appointed lead plaintiff and filed a consolidated amended complaint asserting the shortest class period, then the Trust would be violating its duty to putative class members for abandoning the above, valid claims. *See supra,* Section II.A.1.a.. In sum, the Trust cannot adequately serve as a lead plaintiff in this case no matter what class period is eventually asserted.

      **c.**    <u>**The Trust is Inadequate as a Result of its Failure to Set Forth All its Transactions in Veeco Securities**</u>

By excluding a significant sale that occurred during the longest and first-filed class period, counsel for the Trust has engaged in classic "hide-the-ball" tactics in an effort to artificially inflate its reported losses on Veeco shares. And in failing to disclose to the Court its January 6, 2004 sale of 40,000 Veeco shares for proceeds of more than $1.2 million, the Trust also failed to comply with a fundamental requirement of the PSLRA that movants set forth <u>all</u> of their transactions in the subject stock. The PSLRA states:

9

>Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which…..
>
>>(iv) sets forth <u>all of the transactions</u> of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint…

15 U.S.C. § 78u-4(a)(2)(A)(iv) (emphasis added); *see also In re Peregrine Systems, Inc. Sec. Litig.,* No. Civ. 02 CV 870-J, 2003 WL 23955714, at * 2 (S.D. Cal. Jan. 30, 2003) ("The court has concerns about whether [this movant] has presented a straightforward and fair assessment of his losses…Especially troubling is [this movant's] failure to present evidence of his transactions until he filed his reply brief, thereby depriving competing movants of an opportunity to instruct the court on the inadequacies of the evidence"). Although the statute is silent on which complaint's class period is to be used, it is well-accepted that damages are to be calculated with the longest period – particularly where, as here, the longest class period appeared in the first-filed and noticed complaint. *See Party City*, 189 F.R.D. at 94 n.3; *First Merchants Acceptance Corp.*, 1997 WL 461036, at *4; *Star Gas*, 2005 WL 818617, at * 7. It is especially unfortunate that counsel for the Trust chose to a hide stock transaction so significant that it dramatically alters the financial interest the Trust purports to have in this case. By engaging in this "hide-the-ball" tactic, the Trust and its counsel have compromised their integrity as potential lead plaintiff and counsel for the class.

### 3. <u>Ratan LalChandani Has the Largest Financial Interest</u>

As stated above, Mr. LalChandani has the largest financial interest in this case, having purchased more total and net shares and expended more net funds during the class period than any other movant. And when taking into consideration the Trust's previously undisclosed January 6, 2004 sale of 40,000 Veeco shares for proceeds of more than $1.2 million, Mr. LalChandani is also the movant with the largest financial interest in this case. Mr. LalChandani

10

has <u>actual losses</u> of approximately $300,000, no matter how they are analyzed, compared to the Trust's <u>net gain</u> of $315,530.25. Therefore, Mr. LalChandani is the presumptive lead plaintiff in this case.

### 4. Ratan LalChandani Meets the Rule 23 Requirements

"Once the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." *Sofran*, 220 F.R.D. at 402 (citation omitted). The district court's belief that "another plaintiff may be 'more typical' or 'more adequate' is of no consequence." *Id.* So long as the plaintiff with the largest loss satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id.*

In determining whether Ratan LalChandani, as the movant with the largest financial interest, meets Rule 23's typicality and adequacy requirements, "a wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for class certification." *Sofran*, 220 F.R.D. at 402 (citations omitted). "The claims of class representatives need not be identical to the claims of the class to satisfy the typicality requirement." *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.,* No. 03 Civ. 8264 RWS, 2004 WL 1179311, at *15 (S.D.N.Y. May 27, 2004) (Sweet, J.).

As discussed in his opening memorandum, Mr. LalChandani satisfies the typicality requirement because he purchased Veeco securities during the class period at prices alleged to have been artificially inflated by the false and misleading statements issued by defendants, and suffered damages thereby. *Id.* Mr. LalChandani and his attorneys are capable and willing to pursue this litigation and neither has a conflict of interest with the other class members; therefore, the Mr. LalChandani is an also an adequate class representative. *Id.* In fact, and as

11

demonstrated in the moving papers of the Mr. LalChandani, both Goodkind Labaton and Schatz & Nobel enjoy excellent reputations as preeminent class action law firms with skill and experience in the successful prosecution of securities class actions like this case.

## III.    CONCLUSION

For the foregoing reasons, Ratan LalChandani respectfully requests that this Court (i) appoint him as lead plaintiff in the consolidated action; and (ii) approve his selection of Goodkind Labaton and Schatz & Nobel to serve as co-lead counsel for the class; and (iv) deny all other motions.

Date:  May 2, 2005

Respectfully submitted,

**GOODKIND LABATON RUDOFF & SUCHAROW LLP**

s/Christopher J. Keller
Jonathan M. Plasse (JP-7515)
Christopher J. Keller (CK-2347)
Shelley Thompson (MT-4109)
100 Park Avenue
New York, New York  10017
Tel:  (212) 907-0700
Fax:  (212) 818-0477

**SCHATZ & NOBEL, P.C.**
Andrew M. Schatz
Jeffrey S. Nobel
Nancy A. Kulesa
One Corporate Center
20 Church Street, Suite 1700
Hartford, Connecticut 06103
Tel.: 860-493-6292
Fax:  860-493-6290

*Attorneys for Movant and
Proposed Co-Lead Counsel for the Class*