# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
ANDREW MCINTOSCH, Individually and on          :
behalf of all others similarly situated,        :
                                                :
                    Plaintiff,                  :        Civil Action No. 2:05-cv889
                                                :
          v.                                    :
                                                :
VEECO INSTRUMENTS, INC., EDWARD                 :
BRAUN and JOHN REIN, JR.                        :
                                                :
                    Defendants.                 :
----------------------------------------------------------------x


----------------------------------------------------------------x
BARRY LINZER, Individually and on               :
behalf of all others similarly situated,        :
                                                :
                    Plaintiff,                  :        Civil Action No. 2:05-cv957
                                                :
          v.                                    :
                                                :
VEECO INSTRUMENTS, INC., EDWARD                 :
BRAUN and JOHN REIN, JR.                        :
                                                :
                    Defendants.                 :
----------------------------------------------------------------x
```

[Captions continued on the following page]

**THE STEELWORKERS PENSION TRUST'S MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**
**AND IN OPPOSITION TO THE COMPETING MOTIONS FOR**
**APPOINTMENT AS LEAD PLAINTIFF**

```
--------------------------------------------------------------x
BRUCE KANTOR, Individually and on              :
behalf of all others similarly situated,       :
                                               :
                      Plaintiff,               :       Civil Action No. 2:05-cv967
                                               :
              v.                               :
                                               :
VEECO INSTRUMENTS, INC., EDWARD                :
BRAUN and JOHN REIN, JR.                       :
                                               :
                      Defendants.              :
--------------------------------------------------------------x
--------------------------------------------------------------x
GEORGE WALKER, Individually and on             :
behalf of all others similarly situated,       :
                                               :
                      Plaintiff,               :       Civil Action No. 2:05-cv1003
                                               :
              v.                               :
                                               :
VEECO INSTRUMENTS, INC., EDWARD                :
BRAUN and JOHN REIN, JR.                       :
                                               :
                      Defendants.              :
--------------------------------------------------------------x
--------------------------------------------------------------x
PHILLIP G. COLLINS, Individually and on        :
behalf of all others similarly situated,       :
                                               :
                      Plaintiff,               :       Civil Action No. 2:05-cv1277
                                               :
              v.                               :
                                               :
VEECO INSTRUMENTS, INC., EDWARD                :
BRAUN and JOHN REIN, JR.                       :
                                               :
                      Defendants.              :
--------------------------------------------------------------x
```

```
-------------------------------------------------------------x
SERVAAS HOLTHUIZEN, Individually and on       :
behalf of all others similarly situated,      :
                                              :
                        Plaintiff,            :        Civil Action No. 2:05-cv1337
                                              :
                v.                            :
                                              :
VEECO INSTRUMENTS, INC., EDWARD               :
BRAUN and JOHN REIN, JR.                      :
                                              :
                        Defendants.           :
-------------------------------------------------------------x
-------------------------------------------------------------x
GERALD J. VOGT and ELEANOR L. VOGT,           :
Individually and on behalf of themselves and  :
all others similarly situated,                :
                                              :
                        Plaintiffs,           :        Civil Action No. 2:05-cv1430
                                              :
                v.                            :
                                              :
VEECO INSTRUMENTS, INC., EDWARD               :
BRAUN and JOHN REIN, JR.                      :
                                              :
                        Defendants.           :
-------------------------------------------------------------x
-------------------------------------------------------------x
TIMOTHY JOSE GROVE, Individually and on       :
behalf of all others similarly situated,      :
                                              :
                        Plaintiff,            :        Civil Action No. 2:05-cv1552
                                              :
                v.                            :
                                              :
VEECO INSTRUMENTS, INC., EDWARD               :
BRAUN and JOHN REIN, JR.                      :
                                              :
                        Defendants.           :
-------------------------------------------------------------x
```

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION.................................................................................................. 1

II.    ARGUMENT ....................................................................................................... 3

    A.    The Steelw orkers is Presumptively the Most Adequate Plaintiff Because it
    Has the Greatest Financial Interest in the Litigation, is an Institutional
    Investor, and Otherwise Satisfies the Relevant Typicality and Adequacy
    Requirements of Rule 23 .........................................................................................4

        1.    The Steelworkers Have the "Largest Financial Interest" Under the
            Applicable Four-Factor Analysis ................................................................4

        2.    The Steelworkers is an Institutional Investor Envisioned by
            Congress to be Lead Plaintiff Pursuant to the PSLRA ...............................6

        3.    The Steelworkers Otherwise Satisfy Rule 23................................................8

    B.    Steelworkers Used The Most Appropriate Class Period...........................................9

    C.    No Other Movant Has a Financial Interest in the Litigation Greater than
    the Steelworkers and Some are Otherwise Inadequate Because of Unique
    Defenses...............................................................................................................12

        1.    Mr. Ratan LalChandani has a Smaller Financial Interest...........................12

        2.    Joel Mandel's Losses are Lower than those of the Steelworkers...............13

        3.    The Decatur Plan has no Legally Permissible Loss Under *Dura
            Pharmaceuticals* and at the Very Least is Rendered Inadequate
            Because of Unique Defenses Regarding Its Ability to Prove Loss
            Causation...................................................................................................14

        4.    Capitanio Group is Composed of at Least Seven Unrelated
            Individuals.................................................................................................16

III.   CONCLUSION................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*AOL Time Warner, Inc. Sec. & ERISA Litig.,*
MDL No. 02-1500, 2003 WL 102806 (S.D.N.Y. Jan. 10, 2003) ............................................3

*Auini/Messina Partnership v. Nat'l Med. Fin. Servs. Corp.,*
74 F. Supp. 2d 352 (S.D.N.Y. 1999) ...............................................................................15

*In re Cable & Wireless, Plc Sec. Litig.,*
217 F.R.D.372 (E.D. Va. 2003) ......................................................................................15

*In re Cardinal Health, Inc. Sec. Litig.,*
226 F.R.D. 298 (S.D.Ohio 2005)....................................................................................11

*In re Comdisco Sec. Litig.,*
150 F. Supp. 2d 943 (N.D. Ill. 2001) ..............................................................................15

*In re Crayfish Co. Securities Litig.,*
2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. June 4, 2002) ...................................................4, 8

*Dura Pharmaceuticals, Inc. v. Broudo,*
125 S. Ct. 1627 (2005).............................................................................................2, 5, 7

*Ferrari v. Impath,*
2004 U.S. Dist. LEXIS (S.D.N.Y. July 15, 2004) ...........................................................4, 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
903 F.2d 176 (2d Cir. 1990) ..........................................................................................14

*Helvering v. Campbell,*
313 U.S. 15 (1941)........................................................................................................11

*Holmes v. Commissioner of Internal Revenue,*
134 F.2d 219 (3d Cir.1943) ...........................................................................................11

*In re Bally Total Fitness Sec. Litig.,*
2005 WL 627960 (N.D. Ill. March 15, 2005).............................................................15, 16

*In re Initial Public Offering Secs. Litig.,*
214 F.R.D. 117 (S.D.N.Y 2002) ..................................................................................4, 8

*In re McKesson HBOC, Inc. Sec. Litig.,*
97 F. Supp. 2d 993 (N.D. Cal. 1999)...............................................................................15

ii

*In re Olsten Corp. Sec. Litig.,*
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..............................................................................4

*In re Olsten Corp. Sec. Litig.,*
   181 F.R.D. 218 (E.D.N.Y. 1998) ..................................................................................6

*In re Schering-Plough Corp. Sec. Litig.,*
   Master File No. 01-CV-0829 (D.N.J. Oct. 10, 2003) ................................................11

*In re Star Gas Securities Litigation,*
   2005 WL 818617 (D. Conn. April 8, 2005) ...............................................................16

*In re WorldCom, Inc. Sec. Litig.,*
   219 F.R.D. 267 (S.D.N.Y. 2003) ..................................................................................3

*Malasky v. IAC/Interactive Corp.,*
   2005 WL 549548 (S.D.N.Y. March 7, 2005) ..............................................................7

*Plumbers and Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.,*
   No. C01-20418-JW (N.D. Cal. May 27, 2004) ..........................................................11

*Schulman v. Lumenis, Ltd.,*
   2003 U.S. Dist. LEXIS 10348 (S.D.N.Y. June 17, 2003) ......................................4, 8

*Skwortz v. Crayfish Co., Ltd.,*
   No. 00-67666 (DAB), 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) ..................7, 13

*The Zemel Family Trust v. Philips Int'l Realty Corp.,*
   205 F.R.D. 434 (S.D.N.Y. 2002) ..................................................................................6

*Thompson v. Shaw Group, Inc.,*
   2004 WL 2988503 (E.D. La. Dec. 14, 2004) .............................................................11

*Wood v. Commissioner of Internal Revenue,*
   197 F.2d 859 (5th Cir.1952) .......................................................................................11

## FEDERAL STATUTES

15 U.S.C. section 78u-4(a)(3) ................................................................................................ *passim*

26 C.F.R. 1.1012-1(c)(1) .................................................................................................... 11

Fed. R. Civ. P. 23 ............................................................................................................... 4

## MISCELLANEOUS

House Conference Report on Securities Litigation Reform, House Conference Report
    No. 104-369, 104th Cong. 1st Sess. (1995) ............................................................ 3

**THE STEELWORKERS PENSION TRUST'S MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
AND IN OPPOSITION TO THE COMPETING MOTIONS FOR
<u>APPOINTMENT AS LEAD PLAINTIFF</u>**

## I.    INTRODUCTION

Class member Steelworkers Pension Trust ("Steelworkers," "Proposed Lead Plaintiff" or

"Movant") respectfully submits this memorandum of law in further support of its motion for its

appointment as Lead Plaintiff and approval of its selection of Berger & Montague P.C. ("Berger

& Montague") as Lead Counsel and Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss")

as Liaison Counsel pursuant to the Private Securities Litigation Reform Act ("PSLRA"). This

memorandum also opposes the four competing motions that have been filed by other movants or

movant groups, insofar as each seeks their respective appointment as Lead Plaintiff and approval

of their selection of Lead and Liason Counsel.

Currently pending before the Court are five motions to appoint Lead Plaintiff and approve

Lead Plaintiff's selection of lead counsel and to consolidate all related actions. Lead Plaintiff

motions have been filed by: (1) Steelworkers; (2) Ratan LalChandani; (3) NECA-IBEW Pension

Fund (the "Decatur Plan"); (4) Steve Capitanio, R.M. DeVane, Gerald and Eleanor Vogt, Robert

E. Anderson, Bill McCurtain, Marcus McPhail & Julie and Russell Jensen (the "Capitanio

Group"); and (5) Joel Mandel.[1]

---

[1]    Except for Mr. Mandel, each of the other movants has filed their motions, or notice of motions, for consolidation and appointment as Lead Plaintiff in both this District and the Southern District of New York. Movant Mandel filed only in the Southern District. However, Steelworkers has included arguments in opposition to Mr. Mandel's petition in this brief, in order to address the petitions in all the related cases before both courts and to show that Steelworkers have the largest losses of *all* competing movants in all related cases. Additionally, defendants filed a motion with the Judicial Panel on Multi-District Litigation (the "MDL Panel") on April 29, 2005, seeking transfer of all related cases to the Southern District of New York. Steelworkers will respond to that motion in due course.

As discussed below, Steelworkers' $345,878.94 in losses is by far the largest of any applicant, under all relevant criteria.    Accordingly, Steelworkers has the "largest financial interest" in the case and is presumptively the "most adequate Plaintiff" under the PSLRA's lead plaintiff provisions.

First, Steelworkers has the "largest financial interest" in this litigation under the "four factor" test that courts in this district have traditionally used to determine the "largest financial interest".[2]    Moreover,  following the United States Supreme Court's recent ruling in *Dura Pharmaceuticals, Inc. v. Broudo,* 125 S. Ct. 1627 (2005), Steelworkers' financial interest in the litigation relative to other movants only increases.   During the appropriate Class Period of April 26, 2004 through February 10, 2005,[3] Steelworkers purchased 40,000 shares of Veeco stock, for total expenditures of $941,269.75, and suffered a net loss of $345,878.94 attributable to fraud, when the truth about the Company's financial statements was first revealed.

Second, Steelworkers otherwise satisfies the requirements of Rule 23.   It is both typical and adequate, its claims arising from the same conduct and based on the same theories as other class members, and there is no indication that Steelworkers' claims conflict with those of the class or present unique defenses that would rebut the presumption of their adequacy.   *See* U.S.C. section 78u-4(a)(3)(B)(iii)(I).    Moreover, Steelworkers is a large institutional investor that is precisely the type of entity that Congress envisioned as leading the class under the PSLRA,

---

[2]    *See* page 4 for a discussion of the four-factor test.

[3]    Most of the related complaints used a class period beginning April 26, 2004.  Certain complaints plead a class period beginning on November 1, 2003, and one complaint started the class period on February 6, 2004.  All agree that the appropriate end date is February 10, 2005. As discussed below, the majority of the complaints used the appropriate class period – April 26, 2004 through February 10, 2005 – which corresponds to the time frame in which Veeco had publicly announced false and misleading financial results. *See* discussion at page 8.

2

because it has a large stake in the outcome and will ensure zealous prosecution of the case. Accordingly, as set forth below, the Steelworkers Pension Trust should be appointed Lead Plaintiff.

## II.    ARGUMENT

The Steelworkers' $345,878.94 loss is the largest financial loss asserted by any movant for appointment as Lead Plaintiff. Steelworkers is presumptively the most adequate Plaintiff because it has the largest financial interest in the relief sought by any other class member who has come forward and otherwise satisfies the requirements of Rule 23(a). In addition, Steelworkers is precisely the type of large sophisticated institutional investor accustomed to acting in a fiduciary capacity that Congress contemplated as the most adequate Lead Plaintiff in enacting the Lead Plaintiff provisions of the PSLRA.[4]   *See AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 02-1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003)(appointing as lead plaintiff the institutional investor with the "largest financial stake in the litigation."); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003)("[T]he PSLRA promotes the selection at an early stage of the litigation of an institutional investor with the largest financial stake in the action so that investor can control the course of the litigation").

---

[4]     *See* House Conference Report on Securities Litigation Reform, House Conference Report No. 104-369, 104th Cong. 1st Sess. at 34 (1995)(stating that the PSLRA was intended "to increase the likelihood that institutional investors will serve as Lead Plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the class more effectively than class members with small amounts at stake.")

3

A.    **The Steelworkers is Presumptively the Most Adequate Plaintiff Because it Has the Greatest Financial Interest in the Litigation, is an Institutional Investor, and Otherwise Satisfies the Relevant Typicality and Adequacy Requirements of Rule 23**

1.    **The Steelworkers Have the "Largest Financial Interest" Under the Applicable Four-Factor Analysis**

The lead plaintiff provisions of the PSLRA instruct courts to adopt a presumption that the most adequate Plaintiff is the person or group of persons with "the largest financial interest in the relief sought by the class" and who "otherwise satisfies the requirements" of Fed. R. Civ. P. 23. See 15 U.S.C. section 78u-4(a)(3)(B)(iii)(I).

Although the statute does not define "largest financial interest," and does not explicitly provide any guidance or explain how it should be calculated, this Court and others in the Second Circuit have traditionally examined four factors when considering this requirement: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period." *In re Crayfish Co. Securities Litig.*, 2002 U.S. Dist LEXIS 10134, at *13-14 (S.D. N.Y. June 4, 2002) (*citing In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); *Schulman v. Lumenis, Ltd.*, 2003 U.S. Dist. LEXIS 10348, at * 18 (S.D.N.Y. June 17, 2003); *Ferrari v. Impath, Inc.*, at *16 (S.D.N.Y. July 15, 2004); *In re Initial Public Offering Secs. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y 2002).

However, since last month's *Dura Pharmaceuticals* opinion, courts will likely focus their inquiry on the one truly relevant factor: the net loss attributable to fraud, *i.e.*, the loss sustained after excluding a plaintiff's class period sales made before the relevant truth begins to leak out. As stated by Justice Breyer:

4

> Normally, in cases such as this one (*i.e.,* fraud-on-the-market cases), an inflated purchase price will not itself constitute or proximately cause the relevant economic loss. For one thing, as a matter of pure logic, at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that *at that instant* possesses equivalent value . . . . Shares are normally purchased with an eye toward a later sale. But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."

*Dura Pharmaceuticals*, at 1631 (emphasis in original). Stated simply, *Dura Pharmaceuticals* makes clear that loss causation – the loss caused by disclosure of the truth – is an essential element of a 10(b)-5 claim, and that losses attributable to other factors are not actionable under the federal securities laws. Accordingly, only losses which were "caused" by defendants' fraud can properly be considered as constituting a "financial interest in the litigation."

Applying the analysis to the five competing movants for lead plaintiff, it is clear that the Steelworkers possess "the largest financial interest" in the litigation of the five plaintiff or plaintiff groups who filed motions to be appointed Lead Plaintiff in this case, as shown by the following chart:

| Plaintiff(s) | Gross No. of Shares Purchased | Net Number of Shares Purchased (retained at the end of Class Period) | Net Funds Expended During the Class Period | Net Loss Asserted During the Class Period | Net Loss Permissible under *Dura* (i.e. loss on retained shares) |
|---|---|---|---|---|---|
| Steelworkers Pension Trust | 40,000 | 40,000 | $941,269.75 | $345,878.94 | **$345,878.94** |
| Ratan LalChandani | 89,143 | 49,943 | $1,895,686.00 | $299,695.45 | **$252,948.65** |
| Joel Mandel | 55,000 | 15,000 | $1,347,534.00 | $116,392.06 | **$ 43,484.00** |
| NECA-IBEW Pension Fund (The Decatur Plan) | 9,671 | 0 | $207,298.83 | $40,707.43 | **$0.00** |

5

| Steve Capitanio, R.M. DeVane, Gerald and Eleanor Vogt, Robert E. Anderson, Bill McCurtain, Marcus McPhail, and Julie and Russell Jenson (the "Captianio Group") | 2,343 | 2,343 | $51,442.45 | $16,566.36 | **$16,566.36** |
|---|---|---|---|---|---|

Thus, there is no question that the Steelworkers have the "largest financial interest" in the litigation.[5]

### 2.    The Steelworkers is an Institutional Investor Envisioned by Congress to be Lead Plaintiff Pursuant to the PSLRA

The Steelworkers is a large institutional Plaintiff who invests money on behalf of thousands of union members. Courts construing the PSLRA lead plaintiff provision have held that institutional investors like the Steelworkers are presumptively the most adequate Lead Plaintiffs. *See, e.g., The Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002)(discussing congressional intent to favor appointment of institutional investors as Lead Plaintiffs while denying lead plaintiff status to non-institutional investor plaintiff); *In re Olsten Corp. Sec. Litig.*, 181 F.R.D. 218, 220-221 (E.D.N.Y. 1998)("By establishing the presumptive criterion that the most adequate plaintiff is the one who 'has the largest financial

---

[5]    The chart was put together from the information contained in each movants' opening motion papers. Steelworkers and the Capitanio Group used the April 26, 2004 – February 10, 2004 Class Period. LalChandani, Mandel, and the Decatur Plan used the period from November 3, 2003 – February 10, 2005. *See* discussion on appropriate class period at page 9.

6

interest in the relief sought by the class,' PSLRA section 21(D)(a)(3)(B)(iii)(bb), Congress intended to increase the likelihood that institutional investors will serve as lead plaintiffs . . . '").

Indeed, a court in the Southern District of New York recently reversed itself in order to appoint the Cement Masons Trust, an institutional plaintiff, as lead plaintiff. *See Malasky v. IAC/Interactive Corp.*, 2005 WL 549548 (S.D.N.Y. March 7, 2005). In *Malasky*, Judge Howell granted the motion of the Cement Masons Trust for reconsideration of the lead plaintiff decision and substituted the Cement Masons Trust instead of a previously appointed "Investor Group" which conceded after it had been appointed lead plaintiff that it was not an institutional investor, but only a "sophisticated" investor. *Id.* at *2-3. In rejecting the individual, albeit "sophisticated," non-institutional investor and substituting the Cement Masons Trust, which described itself as a "multiemployer pension plan that provides pension benefits to retired cement masons and plasterers in Washington State," Judge Howell preferred the "real" institutional investor Cement Masons to provide a unique perspective, depth of experience and added stability to the representation of the class. *Id.* *See also Skwortz v. Crayfish Co., Ltd.,* No. 00-67666 (DAB), 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001)(Congress believed that the purpose behind the PSLRA could best be achieved by encouraging institutional investors to serve as lead plaintiffs.).[6]

---

[6]    In contrast, the only other institutional movant here, the Decatur Plan, asserts losses of only $40,707.43 – a fraction of the Steelworkers' losses – and, moreover, the Decatur Plan sold all of its shares by January 26, 2005 – before the relevant truth began to leak out. *See Dura Pharmaceuticals,* at 1631. Therefore, the February 11, 2005 revelation of misrepresentations in Veeco's financial statements for the first three quarters of 2004 would not have led to any loss by Decatur. Thus, the Steelworkers are the only institutional plaintiff among the five movants with any financial interest in the litigation.

### 3.    The Steelworkers Otherwise Satisfy Rule 23

In addition to having the largest financial interest, the Steelworkers is presumptively the Lead Plaintiff because, as discussed in its opening brief, it otherwise satisfies Rule 23. The Rule 23 analysis for purposes of appointing a Lead Plaintiff is significantly less detailed than the inquiry otherwise required by that Rule. *In re Initial Public Offering Secs. Litig.*, 214 F.R.D. at 121. "At this stage one need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied." *Id* . (citing *In re Crayfish*, 2002 U.S. Dist. LEXIS 10134, at *14).

The typicality requirement is satisfied where the claims of the proposed Lead Plaintiff "arise from the same conduct from which the other class members' claims and injuries arise" – here, the misrepresentation of Veeco's financial statements during the first three quarters of 2004. *See Crayfish,* 2002 U.S. Dist. LEXIS 10134, at *15; *Ferrari,* 2004 U.S. Dist. LEXIS, at *18.

The adequacy requirement is met at this stage where the proposed lead   plaintiff demonstrates "(1) the class counsel is qualified, experienced and generally able to conduct the litigation; (2) the interests of the class members are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy." *Ferrari*, 2004 U.S. Dist. LEXIS at *19; *Schulman v. Lumenis*, 2003 U.S. Dist. LEXIS, at *21.    Here, there is no indication that the Steelworkers' claims conflict with those of the class.  It has sufficient interest in the outcome to ensure zealous advocacy; and its chosen counsel is competent and experienced.  Because the Steelworkers has the largest financial interest and satisfies Rule 23, it is presumptively the most adequate to serve as Lead Plaintiff.

8

The PSLRA's rebuttable presumption - that the movant with the largest financial interest who otherwise satisfies Rule 23 is the most adequate plaintiff - may be overcome only with *proof* that the presumed lead plaintiff will either not fairly and adequately represent the class, or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *See* 15 U.S.C. section 78 U.S.C. section 78u-4(a)(3)(B)(iii)(II).   Steelworkers know of no grounds on which any competing petitioner could rebut the presumption favoring Steelworkers. Accordingly, the Steelworkers, should be appointed to serve as Lead Plaintiff.

**B.    Steelworkers Used The Most Appropriate Class Period**

With respect to the class period, as Steelworkers noted in their opening brief,  April 26, 2004 appears to be the accurate start of the class period based on currently available facts.  All movants agree that the class period ends on February 10, 2005 when Veeco announced the postponement of the release of audited results for the fourth quarter and year ended December 31, 2004, pending completion of an internal investigation of improper accounting transactions at its TurboDisc business unit.  **In March 2005, the Company indeed restated its financial results for the three quarterly periods and nine months ended September 2004, beginning with the results of the quarter ending March 31, 2004.**  The company admitted that the restatement was due to adjustments to correct accounting improprieties at its TurboDisc division, involving the value of inventory, accounts payable and certain liabilities, as well as certain revenue transactions of TurboDisc.  *See* Veeco's March 16, 2005, press release and Form 10-K for year ended December 31, 2004.  Defendants had first publicly announced those false and misleading first quarter results on April 26, 2004, thus justifying this date as the start of the class period.

9

Six of the ten related complaints filed in the Southern and Eastern Districts used the April 26, 2004 opening date for the class period. In addition, of the thirteen press releases that were issued pursuant to the PSLRA notice requirement, nine used the April 26, 2004 date as the start of the class period, while only four press releases used the unjustified November 1, 2003 date and one used February 6, 2004.[7]

Goodkind Labaton Rudoff & Sucharow LLP filed an amended complaint dated April 14, 2005, asserting additional allegations that Veeco improperly exported products without license required by the U.S. Department of Commerce to prohibited countries, attempting to justify the earlier period. However, the amended complaint does not assert any additional losses by its proposed lead plaintiff, and in fact specifically acknowledges that "[t]he truth concerning Veeco's export compliance and its effect on the Company's business and reported revenues has not yet been fully revealed to the public . . ." *See L.I.S.T., Inc. v. Veeco Instruments, et al.*, 05 CV 2189 at ¶44. Steelworkers will thoroughly review and analyze the allegations in the various complaints, public statements made by the defendants during the various class periods and evolving events in formulating the allegations and length of the class period to be included in the consolidated amended complaint. *See* Steelworkers Memorandum of Law in Support of Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Its Selection of Lead Counsel and Liaison Counsel, April 18, 2005, at p. 1, n. 1. To the extent the longer class period can be justified based on then relevant facts – such as disclosure of, and a market reaction to, the export compliance allegations – Steelworkers is fully prepared to bring the consolidated

---

[7]    November 1, 2003 was the date that Veeco acquired its TurboDisc division. At this stage, that date appears to be a red-herring as no false and misleading statements were made until the April 26, 2004 press release, which contained fraudulent financial results.

10

amended complaint on behalf of all defrauded Veeco shareholders. At this stage, only the April

26, 2004 through February 10, 2005 period appears justified.[8]

_____

[8]    Steelworkers' class period transactions in Veeco stock were previously set forth in its opening papers. For the sake of completeness, Steelworkers had additional transactions in Veeco stock prior to the class period. Those transactions were a purchase of 10,000 shares on December 4, 2000 at $34.46 per share; a purchase of 5,000 shares on October 30, 2001 at $28.13 per share; and a purchase of 25,000 shares on September 25, 2003 at $21.86 per share, for total expenditures of $1,033,024.50 (including commissions). Those same forty thousand total shares were subsequently sold on January 6, 2004 (before the appropriate class period, but within the longer period suggested by a minority of plaintiffs) at $31.42 per share.

Nevertheless, the Steelworkers' financial interest in the litigation remains the same under either the shorter or longer class period, as Steelworkers retained 40,000 additional shares (purchased on May 19 and 20, 2004) through the disclosure on February 10, 2005. *See and compare* charts attached to the Declaration of Peter Seidman in Further Support of Motion by the Steelworkers Pension Trust ("Seidman Decl."), filed contemporaneously herewith, at Exhibit A.

The appropriate methodology for calculating Steelworkers loss during the larger time frame is "first-in, first-out" or "FIFO." Many federal appeal courts and commentators regard FIFO, which the IRS consistently uses, as a firmly established methodology for calculating loss for tax purposes in the context of securities investments. *See, e.g.,* 26 C.F.R. 1.1012-1(c)(1); *Helvering v. Campbell,* 313 U.S. 15 (1941); *Holmes v. Commissioner of Internal Revenue,* 134 F.2d 219, 221 (3d Cir.1943) ("[FIFO] is so old and well known that any extended explanation ... would be superfluous. It is incorporated in [the tax code]. It is sufficient to say that it establishes a presumption to be followed."); *Wood v. Commissioner of Internal Revenue,* 197 F.2d 859, 863 (5th Cir.1952). FIFO methodology is especially appropriate here, where the longer class period suggested by a minority of plaintiffs appears to be an artifice with no relation to the false and misleading financial statements at issue in this case. Steelworkers did not benefit from the false financial statements through their sales that took place four months before the fraud began (whether or not January 6, 2004 is ultimately left in or out of a certifiable class period).

Accordingly, where Steelworkers held 40,000 shares before the class period, the 40,000 shares sold on January 6, 2004 are matched against those pre-class period holdings, leaving a net purchase of 40,000 additional shares in May 2004, in the midst of the fraud, which shares were damaged by the revelation of Veeco's fraud on February 10, 2005. *See, e.g., Thompson v. Shaw Group, Inc.,* 2004 WL 2988503 at *5 (E.D. La. Dec. 14, 2004) ("For the immediate narrow purpose of considering the financial stake of the other movants for Lead Plaintiff, the Court resorts to the traditional FIFO methodology"); *In re Cardinal Health, Inc. Sec. Litig.,* 226 F.R.D. 298 (S.D.Ohio 2005) (using FIFO); *Plumbers and Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.,* No. C01-20418-JW, slip op. at 5, 6-7 (N.D.Cal. May 27, 2004) (using FIFO); *In re Schering-Plough Corp. Sec. Litig.,* Master File No. 01-CV-0829, slip op. at 14 (D.N.J. Oct. 10, 2003) (using FIFO).

**C.    No Other Movant Has a Financial Interest in the Litigation Greater than the Steelworkers and Some are Otherwise Inadequate Because of Unique Defenses**

**1.    Mr. Ratan LalChandani has a Smaller Financial Interest**

The movant with the second largest purported loss is Ratan LalChandani, who asserts that he sustained a loss of $299,695.45.[9]    First, he does not have the largest financial interest.    His purported losses were $46,183 less than the Steelworkers.    On that basis alone he is out of contention for appointment.

Second, Mr. LalChandani's losses are actually only $252,948.65.    That is because he is an "in-and-out" trader with respect to 39,200 shares to which he attributes $46,746.80 of his total loss.    This loss related to in-and-out trades during the class period before Defendants' curative disclosure of the restatement on February 11, 2005.    These losses are not actionable under the federal securities laws, pursuant to the Supreme Court's recent ruling in *Dura Pharmaceuticals.*

Under *Dura Pharmaceuticals,* it appears that the district court cannot consider or include a plaintiff's in-and-out transactions made before the curative disclosure that ends the class period for purposes of calculating one's net loss for the "largest financial interest" analysis.

The only exception is where the plaintiff can show that the relevant truth "began to leak out" *during* the class period - i.e. a partial disclosure of the alleged fraud - that caused the decline

---

Any suggestion that Steelworkers' use of a class period that precisely tracks the issuance of false and misleading financial statements through the revelation of the truth for purposes of hiding its January 6, 2004 sale is completely outrageous.    Indeed, the majority of plaintiffs filing complaints and notices agree with the class period used by Steelworkers.

[9]    All of Mr. LalChandani's transactions occurred after June 14, 2004, during the April 26, 2004 through February 10, 2005 class period used by Steelworkers.    Accordingly, using the April 26th start date for the class period yields an "apples to apples" comparison between the two movants with the largest losses.

12

in the price of the stock sold and therefore directly caused plaintiffs' damages. In this case, there was no such partial disclosure of the alleged accounting fraud in Veeco's TurboDisc subsidiary until the single curative disclosure on February 11, 2005. On that date, the Company shocked the market with the news that it was postponing the release of its financial results for the fourth quarter and full year 2004 pending completion of an internal investigation of improper accounting at TurboDisc, and that it would restate its financial for the quarterly periods and nine months ended September 2004.[10]    Accordingly, LalChandani's actionable loss under *Dura Pharmaceuticals* is approximately $93,000 less than that of Steelworkers.

Finally, Mr. LalChandani is an individual. Congress's intent was that institutional lead plaintiffs, like the Steelworkers, be appointed where possible. *See, e.g.*, *Skwortz v. Crayfish Co., Ltd.*, No. 00-67666 (DAB), 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001)(Congress believed that the purpose behind the PSLRA could best be achieved by encouraging institutional investors to serve as lead plaintiffs).

### 2.    Joel Mandel's Losses are Lower than those of the Steelworkers

Movant Mandel, another individual plaintiff, also has a substantially smaller financial interest in the litigation than Steelworkers, claiming a loss of only $116,392 – an interest of

---

[10]    Analysis of a chart of Veeco's stock price during the class period shows that the only noteworthy one-day decline in price accompanied by a significant increase in stock trading volume occurred on October 13, 2004. *See* Seidman Decl., at Exhibit B. The stock closed that day at $19.60 on heavy volume of 2,231,003 shares, from the October 12, 2004 closing price of $21.83. That drop was caused by Veeco's announcement on October 12 that "weak industry-wide capital equipment conditions, particularly in compound semiconductor[s], adversely impacted its results for the quarter ended September 30, 2004" and that the company was therefore sharply lowering its previous guidance for anticipated orders of its product for the third quarter 2004. *See* Veeco's October 12, 2004 press release, www.veeco.com, also attached to the Seidman Decl. at Exhibit C. The announcement made no mention of TurboDisc or any anticipated restatement of financial results – the fraud at issue here.

approximately one-third that of the Steelworkers. Moreover, Mandel also sold the majority of his stock during the class period, before any losses were caused by disclosure of Veeco's fraudulent financial statements. Indeed, Mandel sold 40,000 of the 55,000 shares he purchased during the class period prior to the curative disclosure on February 11, 2005. Accordingly, Mandel's interest in the litigation is limited, under *Dura Pharmaceuticals*, to the 15,000 shares he held through the disclosure. If the first 40,000 shares sold prior to disclosure are matched against the first 40,000 shares purchased by Mandel, his basis in the remaining shares is only $267,134, and his loss attributable to fraud is only $43,484.[11]

> **3.    The Decatur Plan has no Legally Permissible Loss
> Under *Dura Pharmaceuticals* and at the Very Least
> is Rendered Inadequate Because of Unique Defenses
> Regarding Its Ability to Prove Loss Causation.**

The Decatur Plan, the only other institutional investor seeking appointment as lead plaintiff, claims a loss of only $40,707. Even if this were accurate, it would put the Decatur Plan in fourth place in terms of the size of its interest in the litigation. But in reality, the Decatur Plan suffers from the same infirmities as LalChandani and Mandel to a greater degree – it sold its stock before the curative disclosure. Indeed, the Decatur Plan sold *all* of its stock before the disclosure, and accordingly, under *Dura*, has no financial interest in the litigation whatsoever.

Courts have long held that the class would be prejudiced if its representative is distracted with defenses that are unique to it, thereby defeating such applicant's adequacy and/or typicality pursuant to Rule 23. See, e.g., Gary Plastic Packaging Corp. V. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) ("[c]lass certification is inappropriate where a

---

[11]    Mandel's loss was calculated using the November 3, 2003 start date for the class period, as per his moving papers. If one uses the correct class period beginning April 26, 2004, Mandel's loss only decreases.

putative class representative is subject to unique defenses which threaten to become the focus of the litigation . . . [r]egardless of whether the issue is framed in terms of typicality . . . or . . . adequacy of its representation . . . there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.").

Here, the Decatur Plan is subject to just such a unique defense: it cannot prove loss causation under *Dura*. This specific unique defense has been addressed by several courts at the lead plaintiff stage, even prior to the Supreme Court's recent opinion. For instance, in In re Cable & Wireless, Plc Sec. Litig., 217 F.R.D.372 (E.D. Va. 2003), the court rejected the West Virginia Investment Management's lead plaintiff application, noting that:

> West Virginia sold all of its shares before the fraud allegedly perpetrated by C & W was revealed to the public. Accordingly, it follows that West Virginia could not have suffered any loss as a result of the Defendants' alleged fraud . . .. Because West Virginia sold all of its C & W shares before the alleged fraud became public, it fails to establish that its harm was caused by the Defendant's conduct. Without causation, West Virginia cannot prevail on its claims. Moreover, West Virginia would therefore have no standing to pursue its claims against the Defendants because its losses cannot be attributed to the Defendants.

*Id.* at 379 (citing Auini/Messina Partnership v. Nat'l Med. Fin. Servs. Corp., 74 F. Supp.2d 352, 361-362 (S.D.N.Y. 1999) (movant's losses that occurred prior to disclosure of defendant's fraud are not, as a matter of law, recoverable); In re McKesson HBOC, Inc. Sec. Litig., 97 F. Supp.2d 993, 998 (N.D. Cal. 1999). See also, In re Comdisco Sec. Litig., 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001) (class period sales at inflated prices caused lead plaintiff applicant to derive unwitting benefits rather than true losses from the alleged securities fraud).

Similarly, in In re Bally Total Fitness Sec. Litig., 2005 WL 627960 (N.D. Ill. March 15, 2005), the court rejected a lead plaintiff application, stating:

15

> Genesee asserts that it will be able to establish loss causation and cites case law for the proposition that in-and-out traders can prove loss causation. The PSLRA, though, provides that we ask simply whether Genesee is likely to be "subject to" the unique defense regarding loss causation; we do not have to determine that the defense is likely to succeed. And it does appear that Genesee would have to use considerable resources to establish that even though it was an in-and-out trader, its losses nevertheless were caused by the alleged fraudulent statements. Our concern is that the time and attention Genesee would be required to devote to the loss causation issue (not to rebut a defense, but to prove its case) would distract it from the claims of the rest of the class. This would not be the case with the other prospective lead plaintiffs. Accordingly, we find that Genesee's status as presumptive lead plaintiff has been rebutted.

Id. at *6.

Here, the Decatur Plan's inability to demonstrate loss causation is fatal to its claim for securities fraud.    Because the Decatur Plan is inadequate, atypical, and subject to unique defenses, its appointment as Lead Plaintiff would also be a disservice to absent class members.

### 4.    Capitanio Group is Composed of at Least Seven Unrelated Individuals

The best that can be said about the Capitanio Group's motion is that they used the correct class period.  Otherwise, they appear wholly inadequate.  In contrast to the Steelworkers which is a single large institutional investor favored by the drafters of the PSLRA to serve as Lead Plaintiff, the Stull, Stull & Brody firm has aggregated a purported "group" of seven individuals and/or couples.  Movants have not presented any evidence that they were previously related or known to each other before or even during this litigation, and the purported "group" appears to be an artifice of counsel.  Courts view with disfavor this kind of aggregation of totally unrelated individuals simply for purposes of artificially increasing reported losses solely for purposes of a lead plaintiff motion. *See, e.g. In re Star Gas Securities Litigation*, 2005 WL 818617 at *4 (D.

16

Conn. April 8, 2005). In any event, the Capitanio Group of seven claims a combined loss of only

$16,566 – by far less significant than the interest of Steelworkers and all other movants,

excepting possibly the Decatur Plan.

**III.    CONCLUSION**

For the reasons stated above and in Steelworkers' April 18, 2005 Memorandum of Law in

Support of their Motion, Steelworkers satisfy all the requirements of the PSLRA and should be

appointed Lead Plaintiff in this action. Steelworkers are presumptively the most adequate Lead

Plaintiff by virtue of having the largest financial interest and demonstrating *prima facie*

compliance wit the adequacy and typicality requirements. 15 U.S.C. Section 78u

4(a)(3)(B)(iii)(I). No other movant can offer any proof to rebut the statutory presumption.

Accordingly, the Court should appoint the Steelworkers as Lead Plaintiff, and approve its

selections of Berger & Montague as Lead Counsel and Milberg Weiss Bershad and Schulman as

Liaison Counsel.

Dated: May 2, 2005

MILBERG WEISS BERSHAD & SCHULMAN LLP


By:   /s/ Peter E. Seidman
Steven G. Schulman  (SS-2561)
Peter E. Seidman (PS-8769)
Sharon M. Lee (SL-5612)
One Pennsylvania Plaza, 49th Fl.
New York, New York  10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Proposed Liaison Counsel*

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett, Esq.
Phyllis M. Parker, Esq.
Doug Risen, Esq.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

***Proposed Lead Counsel***

18