# EXHIBIT D

# BERGER & MONTAGUE, P.C.

# BERGER & MONTAGUE, P.C.

## THE FIRM:

Berger & Montague has been engaged in the practice of complex and class action litigation from its Center City Philadelphia office for over 35 years. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of securities, antitrust, mass torts, and civil and human rights. In numerous precedent-setting cases, the Berger firm has played a principal or lead role. The firm has achieved the highest possible rating by its peers and opponents as reported in Martindale-Hubbell. Currently, the firm consists of more than 60 lawyers, 18 paralegals, professional investigators and an experienced support staff.

Berger & Montague was founded in 1970 by David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger pioneered the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery for victims of fraud and other wrongdoing.

The firm has been involved in a series of notable cases, some of them among the most important in the last 35 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the Drexel Burnham Lambert/Michael Milken securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of Drexel in the late 1980's. The firm was also among the principal counsel engaged in the trial of the Exxon Valdez Oil Spill in Anchorage, Alaska, a trial resulting in a record punitive damages award of $5 billion against Exxon. Berger & Montague was lead counsel in the School Asbestos Litigation, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis.

2

In the area of securities litigation, the firm has represented public institutional investors - such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey and Louisiana, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the Melridge Securities Litigation in the Federal District Court in Oregon, in which an $88.2 million jury verdict was obtained. Berger and Montague has served as lead counsel in numerous other major class action cases, including those against Waste Management (settlement for investors of $220 million) and Rite Aid (settlements totalling $334 million), to name only two of the most notable successes.

In addition to its distinction in securities litigation, the firm has served as lead or co-lead counsel on many of the most significant civil antitrust cases over the last 30 years, including In re Corrugated Container Antitrust Litigation (recovery in excess of $366 million), the Infant Formula case (recovery of $125 million), and the Retail Drug price fixing case (settlement of more than $700 million). More recently, the firm, through its membership on the litigation Executive Committee, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm has also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

The *National Law Journal* in July, 2004 selected Berger & Montague as one of the 20 top plaintiffs' litigation firms based on recent performance and a long track record of success.

3

# PROMINENT JUDGMENTS AND SETTLEMENTS

The success of Berger & Montague in prosecuting class actions and other complex litigation is best demonstrated by the firm's significant results for its clients. The following is a partial list of some of the more notable judgments and settlements from the past few years:

## *Securities Litigation*

*In re Campbell Soup Co. Securities Litigation:* The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class. (Civil Action No. 00 152 (JEI) (D.N.J.)).

*In re Premiere Technologies, Inc. Securities Litigation:* The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock. (Civil Action No.1:98-CV-1804-JOF (N.D.Ga.)).

*In re: PSINet, Inc., Securities Litigation:* The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors. (Civ. No. 00-1850-A (E.D.Va.)).

*In re Safety Kleen Corp. Securities Litigation :* The firm, as co-lead counsel, obtained a class settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors. The final settlement was obtained 2 business days before the trial was to commence. (C.A. No. 3:00-CV-736-17 (D.S.C.)).

*Emil Rossdeutscher and Dennis Kelly v. Viacom:* The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class (C.A. No. 98C-03-091 (JEB) (Sup. Ct. Del.)).

*Silver v. UICI:* The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99 CV 2860-L (N.D. Tex.)).

*In re Alcatel Alsthom Securities Litigation:* In 2001, the firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash. (MDL Docket No. 1263 (PNB)).

*In re Rite Aid Corp.. Securities Litigation:* The firm, as co-lead counsel, has obtained settlements

4

totalling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers (99 CV 1349 (E.D. Pa. 2001).

*In re Sunbeam Inc. Securities Litigation:* As co-lead counsel, the firm obtained a settlement on behalf of investors of $141 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers. (98 CV 8258 (S.D. Fla. 2001)).

*In re Waste Management, Inc. Securities Litigation:* In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants. (97CV 7709 (N.D. Il. 2000)).

*In re IKON Office Solutions Inc. Securities Litigation:* The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers in 2000. (MDL Dkt. No. 1318 (E.D. Pa. 2000)).

*In re Melridge Securities Litigation:* The firm served as lead counsel and co-trial counsel for a class of purchasers of Melridge common stock and convertible debentures. A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million. The court approved settlements totaling $55.4 million. (CV-87-1426FR (D. Or. 1998)).

*Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):* The firm, as a member of the Plaintiffs' Steering Committee, obtained settlements of $141 million for investors victimized by a ponzi scheme. (Reported at: 881 F. Supp. 1576 (S.D. Fla. 1995); 168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

*In re The Drexel Burnham Lambert Group, Inc.:* The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (90 Civ. 6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

*In re Michael Milken and Associates Securities Litigation:* As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities. (MDL Dkt. No. 924, M21-62-MP (S.D. N.Y.1993)).

*RJR Nabisco Securities Litigation:* In this action, Berger & Montague represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million. (88 Civ. 7905 MBM (S.D. N.Y. 1992)).

### *Antitrust Litigation*

*In re High Fructose Corn Syrup:* Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup. After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million.

*In re Linerboard Antitrust Litigation:* Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard. The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom. At the close of discovery, the case was settled for more than $200 million.

*In re Relafen Antitrust Litigation:* Berger & Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone). Just before trial, the case was settled for $175 million. (No. 01-12239-WGY, D. Mass. 2003).

6

*State of Connecticut Tobacco Litigation:* Berger & Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies. The case was litigated separate from the coordinated nationwide actions. Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

*In re Graphite Electrodes Antitrust Litigation:* Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case. The case eventually settled in excess of $130 million.

*In re Buspirone Antitrust Litigation:* The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers. The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, namely, paying a competitor to refrain from marketing a generic version of Buspar; improperly listing a patent with the FDA; and wrongfully prosecuting patent infringement actions against generic competitors to Buspar. On April 11, 2003, the Court finally approved a $220 million settlement. (MDL No. 1410 (S.D.N.Y. 2003)).

*In re Cardizem CD Antitrust Litigation:* Berger & Montague served on the Executive Committee of firms appointed to represent the class of direct purchasers of Cardizem CD. The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product. On November 26, 2002, the district court approved a final settlement against both defendants for $110 million. (No. 99-MD-1278, MDL No. 1278 (E.D. Mich. 2002)).

*In re Brand Name Prescription Drugs Antitrust Litigation:* The firm served as co-lead counsel in this antitrust price-fixing class action on behalf of a class of purchasers of brand name prescription drugs. Following certification of the class by the district court, settlements exceeded $717 million. (No. 94 C 897 (M.D. Ill. 2000)).

*North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.*: The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin). The case settled for $50 million. (No. 1:04CV248 (EGS) (D. D.C. 2004))

*In re Catfish Antitrust Litig.*:    The firm was co-trial counsel in this action (by Mr. Twersky) which settled with the last defendant a week before trial, for total settlements approximating $27 million. (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss. 1995)).

*In re Carbon Dioxide Antitrust Litigation:* The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial for total settlements approximating $53 million, plus injunctive relief. (MDL No. 940 (M.D. Fla. 1995)).

*In re Infant Formula Antitrust Litigation*:  The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million. (MDL No. 878 (N.D. Fla. 1992)).

*Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:* The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million. (C.A. No. H-91-627 (S.D. Tex. 1991)).

*In re Corrugated Container Antitrust Litigation:* The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following a trial. (MDL No. 310 (S.D. Tex. 1981)).

*Bogosian v. Gulf Oil Corp.:*  With Berger & Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies lead to settlements of over $35 million plus equitable relief on the eve of trial. (No. 71-1137 (E.D. Pa. 1977)).

*In re Master Key Antitrust Litigation:*  The firm served as co-lead counsel in antitrust class action that yielded settlement of $21 million during trial. (MDL No. 45 (D. Conn. 1977)).

8

## *Environmental/Mass Tort Litigation*

*In re Exxon Valdez Oil Spill Litigation*: On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history. David Berger was co-chair of the Plaintiffs' Discovery Committee (appointed by both the federal and state courts). H. Laddie Montague was specifically appointed by the federal court as one of the four designated trial counsel. Both Mr. Montague and Peter Kahana shared (with the entire trial team) in the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice. (No. A89-0095-CVCHRH (D. Ala. 1996)).

*In re Ashland Oil Spill Litigation*: The firm served as co-lead counsel and obtained a $30 million settlement for damages resulting from a very large oil spill. (Master File No. M-14670 (W.D. Pa. 1990)).

*In re School Asbestos Litigation*: As co-lead counsel, the firm successfully litigated a case in which a nationwide class of elementary and secondary schools and school districts suffering property damage as a result of asbestos in their buildings were provided relief. Pursuant to an approved settlement, the class received $70 million in cash and $145 million in discounts toward replacement building materials. (No. 83-0268 (E.D. Pa. 1986)).

## *Health Care/ERISA Litigation*

*In re Unisys Corp. Retiree Medical Benefits*: The firm, as co-lead counsel, handled the presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this action that has resulted in partial settlements of over $110 million for retirees whose health benefits were terminated. (MDL No. 969 (E.D. Pa.)).

*Local 56 U.F.C.W. v. Campbell Soup Co.*: The firm represented a class of retired Campbell Soup employees in an ERISA class action to preserve and restore retiree medical benefits. A settlement yielded benefits to the class valued at $114.5 million. (No. 93-MC-276 (SSB) (D. N.J. 1984)).

9

### *Civil/Human Rights*

*In re Holocaust Victim Assets Litigation:*  Through Stephen A. Whinston's membership on the Executive Committee in cases brought by Holocaust survivors against the three largest Switzerland-based banks, this litigation was settled for $1.25 billion. (105 F. Supp.2d 139 (E.D. N.Y. 2000)).

*In re Nazi Era Cases Against German Defendants Litigation:*  Through the firm's co-lead counsel role, cases against German industry and banks for the use of slave and forced labor during the Nazi era were ultimately settled in the context of international negotiations which created a fund for victims of $4.5 billion. (198 F.R.D. 429 (D. N.J. 2000)).

10

## JUDICIAL PRAISE FOR BERGER & MONTAGUE ATTORNEYS

Berger & Montague's record of successful prosecution of class-actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

### *Securities Litigation*

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash. Seizing on an opportunity Rite Aid presented class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes. Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00. The class also received $14,435,104 in interest on the Notes.

> Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings. In short, it would be hard to equal the skill class counsel demonstrated here."

> Praising the work of Berger & Montague attorneys including Securities Department Chair, Sherrie R. Savett and partners Carole Broderick and Robin Switzenbaum *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603 (E.D. Pa. 2003)

From **Judge Clarence C. Newcomer**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "...[C]ounsel has conducted this litigation with skill, professionalism and extraordinary efficiency."

11

Praising the work of Sherrie R. Savett, Securities Department Chair, and Arthur Stock, *In Re: Unisys Corporation Securities Litigation*, Civil Action No. 99-5333 (E.D. Pa. 1999).

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"As to 'the skill and efficiency of the attorneys involved,' we can only echo what we said about some of the same lawyers in *U.S. Bioscience*. The results here are outstanding in a litigation that was far ahead of public agencies like the Securities and Exchange Commission and the United States Department of Justice. . . . At the same time, these attorneys have, through the division of their labors, represented the class most efficiently[.]"

Praising the work of Berger & Montague attorneys including Securities Department Chair, Sherrie R. Savett, in achieving settlements of over $190 million in *In re Rite Aid Inc. Securities Litigation*, 146 F. Supp.2d 706 (E.D. Pa. June 8, 2001).

From **Judge Marvin Katz**, of the U.S. District Court for the Eastern District of Pennsylvania:

"Class counsel did a remarkable job in representing the class interests."

Commenting on the work of Berger & Montague attorneys Merrill G. Davidoff, Todd S. Collins and Douglas M. Risen, on the partial settlement for $111 million approved May, 2000, *In Re: IKON Offices Solutions Securities Litigation*, Civil Action No. 98-4286 (E.D. Pa. 2000).

From Judge **Wayne R. Andersen**, of the U.S. District Court for the Northern District of Illinois:

"...[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases...in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here ... I would say this has been the best representation that I have seen."

12

Praising the work of Sherrie R. Savett and Carole A. Broderick, in *In Re: Waste Management, Inc. Securities Litigation*, Civil Action No. 97-C 7709 (N.D. Ill. 1999).

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett ..., and the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

Commenting on the settlement of a securities case litigated by Sherrie R. Savett and Carole A. Broderick, *In re U.S. Bioscience Securities Litigation*, Civil Action No. 92-0678, (E.D. Pa. 1994).

From **Judge Joseph F. Anderson, Jr.**, of the U.S. District Court for the District of South Carolina:

"I don't have a problem at all approving the settlement. In light of what you've said today and your submission to the Court and I am familiar with the case ... it was a sharply litigated case, with good lawyers on both sides and I think it's an ideal case for settlement. It's the largest settlement I've been called upon to approve in my eight years as a judge."

Praising the work of Sherrie R. Savett, Securities Department Chair, in achieving a $32 million settlement in *In Re: Policy Management Systems Corporation*, Civil Action No. 3:93-0807-17 (D.S.C. 1993).

From **Judge Harry R. McCue**, of the U.S. District Court for the Southern District of California:

"There can be no doubt that the public good was fully served by the attorneys for the plaintiffs in this case, because they invested their own time, their own money, they invested

13

their special skills and knowledge to vindicate the rights and interests of the thousands of investors who invested their money and placed their trust in the integrity of the securities market. . . . I conclude that the achievement of plaintiffs' counsel under any of those tests was superior. "

Concerning the work of Berger & Montague in achieving a $33 million settlement in *In re Oak Securities Litigation*, 1986 U.S. Dist. LEXIS 20942 (S.D. Cal. 1986).

From **Judge John F. Keenan,** of the U.S. District Court for the Southern District of New York:

"The quality of work of plaintiffs' counsel on this case is also demonstrated by the efficient manner of prosecution. . . . At the settlement hearing, defense counsel conceded that plaintiffs' counsel constitute the 'cream of the plaintiffs' bar.' The court cannot find fault with that characterization."

Regarding the work of Sherrie R. Savett and Stephen A. Whinston, *In re Warner Communications Securities Litigation*, 618 F. Supp. 735 (S.D.N.Y. 1985).

### *Antitrust Litigation*

From **Judge Charles P. Kocoras,** of the U.S. District Court for the Northern District of Illinois:

"The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague shareholders H. Laddie Montague and Peter R. Kahana, among others, in achieving a more than $700 million settlement with some of the

14

defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, *5-6 (N.D. Ill. February 9, 2000).

From **Judge Peter J. Messitte**, of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Concerning the work of senior member, Merrill G. Davidoff, as stated in a Settlement Approval Hearing, Oct. 28, 1994. *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624.


From **Judge Donald W. Van Artsdalen**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

Commending the skills of firm chairman David Berger, shareholder Martin Twersky, and other Berger & Montague attorneys, in *Bogosian v. Gulf Oil Corp*, 621 F. Supp. 27 (E.D. Pa. 1985).

From **Judge Joseph Blumenfeld**, of the U.S. District Court of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

> Referencing the leadership of managing partner H. Laddie Montague, co-lead counsel, in *In re Master Key Antitrust Litigation*, 1977 U.S. Dist LEXIS 12948 (Nov. 4, 1977).

### *Civil/Human Rights Cases*

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

> "We must be frank. It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda. It was their research and their work which highlighted these old injustices and forced us to confront them. Without question, we would not be here without them. . . . For this dedication and commitment to the victims, we should always be grateful to these lawyers."

> In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors. Among the lawyers specifically mentioned for special recognition were Stephen A. Whinston and Edward W. Millstein, both shareholders of the firm.

### *Customer/Broker Arbitrations*

**From Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> ". . . [H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, . . . the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and . . . the detail and the

intellectual rigor that went into the documents was fully reflective of the effort that was made in general. I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger & Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

## THE SHAREHOLDERS:

### David Berger

David Berger is the founder and Chairman of Berger & Montague. He received his A.B. *cum laude* in 1932 and his LL.B. *cum laude* in 1936, both from the University of Pennsylvania. He is a member of The Order of the Coif and was an editor of the *University of Pennsylvania Law Review*. He had a distinguished scholastic career including being Assistant to Professor Francis H. Bohlen and Dr. William Draper Lewis, Director of the American Law Institute, participating in the drafting of the first Restatement of Torts. He also served as a Special Assistant Dean of the University of Pennsylvania Law School. He is now a member of the Board of Overseers of the Law School and Associate Trustee of the University of Pennsylvania. In honor of his many contributions, the Law School established the David Berger Chair of Law for the Improvement of the Administration of Justice.

David Berger was a law clerk for the Pennsylvania Supreme Court. He served as a deputy assistant to Director of Enemy Alien Identification Program of the United States Justice Department during World War II.

Thereafter he was appointed Lt.j.g. in the U.S. Naval Reserve and he served in the South Pacific aboard three aircraft carriers during World War II. He is a survivor of the sinking of the U.S.S. Hornet in the Battle of Santa Cruz, October 26, 1942. After the sinking of the Hornet, Admiral Halsey appointed him a member of his personal staff when the Admiral became Commander of the South Pacific. Mr. Berger was ultimately promoted to Commander. He was awarded the Silver Star and Presidential Unit Citation.

After World War II, he was a law clerk in the United States Court of Appeals. The United States Supreme Court appointed David Berger a member of the committee to draft the Federal Rules of Evidence, the basic evidentiary rules employed in federal courts throughout the United States. David Berger is a fellow of the American College of Trial Lawyers, the International Society of Barristers, and the International Academy of Trial Lawyers, of which he is a former Dean. He is a Life Member of the Judicial Conference of the Third Circuit and the American Law Institute.

18

A former Chancellor (President) of the Philadelphia Bar Association, he has served on numerous committees of the American Bar Association and is a lecturer and author on various legal subjects, particularly in the areas of antitrust, securities litigation, and evidence.

David Berger served as a member of President John F. Kennedy's small committee which designed high speed rail lines between Washington and Boston. He drafted and activated legislation in the Congress of the United States which resulted in the use of federal funds to assure the continuance of freight and passenger lines throughout the United States. When the merger of the Pennsylvania Railroad and the New York Central Railroad, which created the Penn Central Transportation Company, crashed into Chapter 11, David Berger was counsel for Penn Central and a proponent of its reorganization. Through this work, Mr. Berger ensured the survival of the major railroads in the Northeastern section of the United States including Penn Central, New Jersey Central, and others.

Mr. Berger's private practice includes clients in London, Paris, Dusseldorf, as well as in Philadelphia, Washington, New York City, Florida, and other parts of the United States. David Berger instituted the first class action in the antitrust field, and for over 30 years he and the Berger firm have been lead counsel and/or co-lead counsel in countless class actions brought to successful conclusions, including antitrust, securities, toxic tort and other cases. He served as one of the chief counsel in the litigation surrounding the demise of Drexel Burnham Lambert, in which over $2.6 billion was recovered for various violations of the securities laws during the 1980s. The recoveries benefitted such federal entities as the FDIC and RTC, as well as thousands of victimized investors.

In addition, Mr. Berger was principal counsel in a case regarding the Three Mile Island accident near Harrisburg, Pennsylvania, achieving the first legal recovery of millions of dollars for economic harm caused by the nation's most serious nuclear accident. As part of the award in the case, David Berger established a committee of internationally renowned scientists to determine the effects on human beings of emissions of low level radiation. Several important studies have issued from this committee, some which were used in connection with the Chernobyl disaster.

In addition, as lead counsel in *In re Asbestos School Litigation*, he has brought about settlement of this long and vigorously fought action spanning over 13 years for an amount in excess of $300 million.

19

David Berger has been active in Democratic politics. President Clinton appointed David Berger a member of the United States Holocaust Memorial Council and thereafter Mr. Berger was and continues to be appointed in that capacity at this time. In addition to his having served for seven years as the chief legal officer of Philadelphia, he has been a candidate for District Attorney of Philadelphia, and was a Carter delegate in the Convention which nominated President Carter.

Over his lengthy career David Berger has been prominent in a great many philanthropic and charitable enterprises some of which are as follows: He is the Chairman of the David Berger Foundation and a long time honorary member of the National Commission of the Anti-Defamation League. He has been on the Board of the Jewish Federation of Philadelphia and, at his present place of residence, Palm Beach, he has been Honorary Chairman of the American Heart Association and Trustee of the American Cancer Society. He is a member of the Board of Directors of the American Red Cross and active in the Jewish Federation of Palm Beach County. Among other distinguished entities, David Berger is a Fellow of the Duke of Edinburgh's Award World Fellowship, a member of The Queen's Club and the Royal Ascot Racing Club, and a Founder Member of the Friends of Art and Preservation in Embassies.

David Berger's principal hobby is tennis, a sport in which he has competed for over 60 years and in which he is actively engaged at present. He has been a member of the Board of Directors of the International Tennis Hall of Fame and other related organizations for assisting young people in tennis on a world wide basis.

### Harold Berger

Harold Berger, a former Judge of the Court of Common Pleas of Philadelphia, is a graduate of the University of Pennsylvania School of Electrical Engineering (B.S.E.E. 1948) and the University of Pennsylvania Law School (J.D. 1951). He is a senior partner and managing principal of the firm and serves on its Executive Committee.

He currently serves as a member of the Board of Overseers of the School of Engineering and Applied Science of the University of Pennsylvania. He has served as Chair of the Third Circuit Class Action and Complex Litigation Committee of the Federal Bar Association and is past Chair of the FBA's National Committee on the Federal and State Judiciary. He is the author of numerous law review articles and has lectured extensively before bar associations and at universities. His biography

appears in Who's Who in America, Who's Who in American Law and Who's Who in the World. He has been given the highest rating for legal ability as well as the highest rating for ethical standards by the *Martindale-Hubbell* American legal directory.

Harold Berger has participated in many national litigation and class action matters of a complex nature, including the *Exxon Valdez Oil Spill Litigation*, C.A. No. A89-095, which resulted in a record punitive damage award of $5 billion against Exxon after Trial and in which he served on the case management team and as Co-Chair of the national discovery team. He also participated in the *In re Three Mile Island Litigation,* C.A. No. 79-0432 (M.D. Pa.), where he acted as liaison counsel, and in the nationwide school asbestos property damage class action, *In re Asbestos School Litigation*, Master File No. 83-0268 (E.D. Pa.), where the firm was co-lead counsel. The case was settled for an amount in excess of $300 million. He also served as co-lead counsel in the *Ashland Oil Spill Litigation*, Master File No. M-14670, as co-lead counsel in the *Chrysler Motors Corp. Odometer Litigation*, MDL Docket No. 740, and as lead counsel in the *Collins & Aikman Product Liability class action,* C.A. No. 87-2529.

Harold Berger is a former member of the State and Federal Court Relations Committee of the National Conference of State Trial Judges and is the recipient of numerous awards including a Special American Bar Association Presidential Program Award and Medal and the Special Service Award of the Pennsylvania Conference of State Trial Judges. He is the recipient of the Federal Bar Association's National Service Award for distinguished service to the Federal and State Judiciary. He is a permanent member of the Judicial Conference of the Third Circuit Court of Appeals and served as National Chair of the FBA's Alternate Dispute Resolution Committee.

Recipient of the Alumnus of the Year Award of the Thomas McKean Law Club of the University of Pennsylvania Law School, Harold Berger was honored by the University of Pennsylvania School of Engineering and Applied Science by the dedication of the Honorable Harold Berger Annual Lecture and Award to a technical innovator who has made a lasting contribution to the quality of our lives. He was further honored by the University by the dedication of a student award in his name for engineering excellence.

Harold Berger has served as Chair of the International Conferences on Global Interdependence held at Princeton University. He has served as Chair of the Aerospace Law Committees of the American, Federal and Inter-American Bar Associations and, in recognition of the importance and impact of

21

his scholarly work, was elected to the International Academy of Astronautics in Paris. He is active in law and engineering alumni affairs at Penn, serving on the University of Pennsylvania's Biddle Law Library Advisory Board and as Chair of Friends of Biddle National Campaign. He is a past President of the Eastern District Chapter of the Federal Bar Association and currently serves as Chair of the Chapter's Class Action and Complex Litigation Committees in addition to serving as Chair of the Bench-Bar Liaison Committee.

Long active in diverse, philanthropic, charitable, community and inter-faith endeavors, Harold Berger currently serves as a Trustee of The Federation of Jewish Charities of Greater Philadelphia, as a Director of the National Museum of Jewish History, as a National Director of the Hebrew Immigrant Aid Society in its endeavors to assist refugees and indigent souls of all faiths, as a Charter Fellow of the Foundation of the Federal Bar Association and as a member of the Hamilton Circle of the Philadelphia Bar Foundation.

### H. Laddie Montague, Jr.

H. Laddie Montague, Jr. is a graduate of the University of Pennsylvania (B.A. 1960) and the Dickinson School of Law (L.L.B. 1963) where he was a member of the Board of Editors of the *Dickinson Law Review*. He is currently Chairman of the Board of Governors for Dickinson School of Law of Penn State University. He is a member of the Executive Committee of the firm having joined its predecessor David Berger, P.A. at its inception in 1970. He is a managing principal and shareholder of the firm and is Chairman of the Antitrust Department.

In addition to being one of the courtroom trial counsel for plaintiffs in the mandatory punitive damage class action in the *Exxon Valdez Oil Spill Litigation*, Mr. Montague has served as lead or co-lead counsel in many class actions, including *In re Infant Formula Antitrust Litigation* (1993) and *Bogosian v. Gulf Oil Corp.*, a nationwide class action against thirteen major oil companies (1984). Mr. Montague is co-lead counsel for the State of Connecticut in its litigation against the tobacco industry.

Mr. Montague was one of four co-lead counsel in *In re Brand Name Prescription Drugs Antitrust Litigation, M.D.L.* 997 (N.D. Ill.) and was one of three co-lead counsel in *In Re High Fructose Corn Syrup Antitrust Litigation*, M.D.L. No. 1087 (C.D. Ill.). In addition to the *Exxon Valdez Litigation*, he has tried several complex, protracted cases to jury, including two class actions: *In re Master Key Antitrust Litigation*, (1977) and *In re Corrugated Container Antitrust Litigation* (1980). For his work

as trial counsel in the *Exxon Valdez Oil Spill Litigation*, Mr. Montague shared the Trial Lawyers for Public Justice 1995 Trial Lawyer of the Year Award.

Mr. Montague has frequently lectured on class action litigation for the Practicing Law Institute, the Pennsylvania Bar Institute and before other associations. He has taught a Complex Litigation Course at Temple University Law School and has been a panelist at the Federal Bench-Bar Conference for the Eastern District of Pennsylvania. Mr. Montague was a member of the 1984 faculty of the Columbia Law School Continuing Legal Educational Program entitled "The Trial of an Antitrust Case." Mr. Montague has testified before Congress with respect to antitrust and business fraud legislation, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"). He is currently a member of the Advisory Board of the Antitrust & Trade Regulation Report published by the Bureau of National Affairs.

### Sherrie R. Savett

Ms. Savett received her B.A. degree from the University of Pennsylvania in 1970 (*summa cum laude*, Phi Beta Kappa) and her J.D. from the University of Pennsylvania Law School in 1973. Ms. Savett has practiced in the area of securities litigation and complex consumer class actions with the firm of Berger & Montague for 30 years, where she is a managing principal and shareholder as well as Chair of the firm's Securities Litigation Department. Ms. Savett is admitted to practice law in the Commonwealth of Pennsylvania and in numerous federal courts throughout the country.

Ms. Savett has served or serves as lead or co-lead counsel or as a member of the Executive Committee in a large number of important securities and consumer class actions in federal and state courts throughout the country, including securities actions against the following companies:

> *Advanced Micro Devices* (class settlement of $11.5 million);
> *Alcatel Alsthom* (class settlement of $75 million);
> *BankAmerica* (derivative settlement of $39.25 million);
> *Boston Chicken* (class settlement of $19.4 million);
> *Bristol-Myers Squibb* (class settlement of $20 million);
> *Cephalon* (class settlement of $17 million);
> *Coastal Physician Group* (class settlement of $8.15 million);
> *Crocker Bank* (class settlement of $35 million);

23

*Employee Solutions* (class settlement valued at $15 million);

*Fidelity/Micron* (class settlement of $10 million);

*Genentech* (class settlement of $29 million);

*Global Crossing* (class settlement of $245 million (partial));

*Home Shopping Network* (class settlement of $18.2 million);

*Long Island Lighting* (class settlement of $48.5 million);

*Marconi* (class settlement of $7.1 million);

*Medaphis* (class settlement of $72.5 million);

*Deloitte & Touche* (arising out of the Medaphis audit) (class settlement of $24 million);

*MicroWarehouse* (class settlement valued at $30 million);

*Motorola* (class settlement of $15 million);

*Oak Industries* (class settlement in excess of $35 million);

*Plains All American Pipeline LP* (class settlement of $24.1 million);

*Policy Management* (class settlement of $32 million);

*Policy Management II* (class settlement of $7.75 million);

*Public Service Company of New Mexico* (class and derivative settlements of $33 million);

*Raychem* (class settlement of $19.5 million);

*Rite Aid* (class settlement of $334 million);

*Safety-Kleen* (class settlement of $44.5 million achieved two days before trial);

*Shopko Stores* (class settlement of $4.9 million);

*SmithKline Beckman* (class settlement of $22 million);

*Sotheby's Holdings* (class settlement of $70 million);

*Summit Technology* (class settlement of $10 million);

*Sunrise Medical* (class settlement of $20 million);

*Subaru* (class settlement of $70 million);

*Synergen* (class settlement of $28 million);

*U.S. Bioscience* (class settlement valued at $15.25 million);

*United HealthCare* (class settlement of $20.1 million);

*United Telecommunications* (class settlement of $28 million);

*Valujet* (class settlement of $5 million);

*W.R. Grace* (derivative settlement of $8.5 million);

*Waste Management* (class settlement of $220 million); and

**Xcel Energy** ($80 million).

Ms. Savett has advanced investor protection in helping to establish several significant precedents in her 30 years of practice. Among them is the holding (the first ever in a federal appellate court) that municipalities are subject to the antifraud provisions of SEC Rule 10b-5 under § 10(b) of the Securities Exchange Act of 1934, and that municipalities which issue bonds are not acting as an arm of the state and therefore are not entitled to immunity from suit in the federal courts under the Eleventh Amendment. *Sonnenfeld v. City and County of Denver*, 100 F.3d 744 (10th Cir.1996). In the *U.S. Bioscience* securities class action, a biotechnology case where critical discovery was needed from the federal Food and Drug Administration, the court ruled that the FDA may not automatically assert its administrative privilege to block a subpoena and it may be subject to discovery depending on the facts of the case. *In re U.S. Bioscience Secur. Litig.*, 150 F.R.D. 80 (E.D. Pa. 1993).

Ms. Savett has lectured at the Wharton School of the University of Pennsylvania and at the Stanford Law School on prosecuting shareholder class actions. Ms. Savett served as a panelist at the First Circuit Judicial Conference in September 2003, and has also been on various ABA and PLI panels concerning securities class action litigation and the use of class actions in consumer litigation. Ms. Savett most recently served as a moderator/panelist at the Opal Public Funds Summit in January, 2005. She is the author of numerous papers on various aspects of securities and complex litigation, including: *Recent Developments in the Lead Plaintiff and Lead Counsel Provisions of the PSLRA*, 1 SECUR. LITIG. RPT. (Glasser LegalWorks) (Dec. 2004-Jan. 2005); *Primary Liability of "Secondary" Actors Under The PSLRA*,1 SECUR. LITIG. RPT. (Glasser) (Nov. 2004); *The 'Indispensable Tool' of Shareholder Suits*, DIRECTORS & BOARDS, vol. 28 (Feb. 18, 2004); *Hurdles in Securities Class Actions: The Impact of Sarbanes-Oxley From a Plaintiff's Perspective*, 9 SECUR. LITIG. & REG. RPTR. (Andrews) (No. 16) (Dec. 23, 2003); and the series of annual reviews titled *Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective*, in 1 SECUR. LITIG. RPT. (Glasser) (Sept.-Oct.2004); PLI 2773 (Sept.-Oct. 2004); SJ084 ALI-ABA 399 (May 13-14, 2004); SG091 ALI-ABA (May 2-3, 2002); SF86 ALI-ABA 1023 (May 10, 2001); *Greetings From the Plaintiffs' Class Action Bar: We'll Be Watching*, SE082 ALI-ABA 739 (May 11, 2000); *Preventing Financial Fraud*, PLI B0-00E3 (Apr.-May 1999) and *Shareholders Class Actions in the Post Reform Act Era*, SD79 ALI-ABA 893 (Apr. 30, 1999).

Still earlier articles authored by Ms. Savett include: *What to Plead and How to Plead the Defendant's State of Mind in a Federal Securities Class Action* (with Arthur Stock), Practicing Law Institute, ALI/ABA-7239 (Nov. 1998); *The Merits Matter Most: Observations On A Changing Landscape Under The Private Securities Litigation Reform Act of 1995*, 39 ARIZ. L. REV. 525

25

(1997); *Everything David Needs to Know to Battle Goliath*, ABA Tort & Insurance Practice Section, THE BRIEF, vol. 20, no. 3 (Spring 1991); *The Derivative Action: An Important Shareholder Vehicle for Insuring Corporate Accountability in Jeopardy,* PLI-H4-0528 (Sept. 1, 1987); *Prosecution of Derivative Actions: A Plaintiff's Perspective,* PLI-H4-5003 (Sept. 1, 1986).

26

Ms. Savett has been named as one of the best lawyers in the Philadelphia region based on a 4,000-lawyer annual survey by *Philadelphia Magazine* in 1999 and in 2004 was selected by *Philadelphia Magazine* in Pennsylvania Super Lawyers 2004 as a Pennsylvania Super Lawyer and one of the area's leading female trial attorneys.

Ms. Savett has been active in community affairs. She currently serves and has served for decades on the Board of Trustees of the Jewish Federation. Ms. Savett is also on the Board of the National Liberty Museum and is Chairperson of the Southeastern Pennsylvania State of Israel Bonds. In January, 2005, State of Israel Bonds awarded Ms. Savett The Spirit of Jerusalem Medallion. Ms. Savett has been a member of the Board of Directors of the Philadelphia Chapter of the Weizman Institute, the American Jewish Committee and the Board of Trustees of the Philadelphia Bar Foundation.

### Merrill G. Davidoff

Merrill G. Davidoff, a Senior Shareholder in the firm, received a B.A. degree from the University of Pennsylvania in 1969, and a J.D. from the University of Pennsylvania Law School (*cum laude*) in 1973. He is admitted to practice law in the Commonwealth of Pennsylvania, the State of New York, the United States Supreme Court, and numerous federal Courts of Appeal. Mr. Davidoff is Co-Chairman of the Antitrust Department with Mr. Montague, Chairs the Environmental Group, and has litigated a wide range of securities, antitrust, and environmental class actions.

During a legal career spanning over twenty-eight years, Mr. Davidoff has represented diverse clients, including Burger King Corporation; John I. Haas, Inc.; Joh. Barth & Sohn, A.G.; Karhu, Inc.; Rexroth Corporation/Rexroth GmbH; ADVO System, Inc.; the LeFrak Organization; Mannesmann A.G.; Championship Auto Racing Teams, Inc.; Cascade Steel Rolling Mills, Inc.; Carpenter Technology Corp. He has also represented many other large and small companies, sports teams, professional organizations, individuals and professional firms. He has acted as lead counsel and trial counsel in numerous antitrust, commercial, environmental, and securities cases. He represented Championship Auto Racing Teams ("CART"), the major Indy-car race-sanctioning organization, in a series of antitrust cases against Indianapolis Motor Speedway and others.

Mr. Davidoff has been a speaker at American Trial Lawyers Association meetings and seminars, and has addressed the Environmental and Toxic Torts Section at the National Convention of ATLA. He

is also a member of the Antitrust and Business Law Sections of the American Bar Association, and served on the subcommittee of the American Bar Association Antitrust Section which prepared the 1985 supplement to the "Antitrust Civil Jury Instructions."

Mr. Davidoff served as co-lead and trial counsel for a plaintiff class in the first mass tort class action trial in federal court which resulted in a precedent-setting settlement for class members, *In re Louisville Explosions Litigation.* In the Canadian Radio-Television and Telecommunications Commission ("CRTC") Decisions (*Challenge Communications, Ltd. v. Bell Canada*), Mr. Davidoff was lead counsel for Applicant (plaintiff) in three evidentiary hearings before the CRTC. The hearings resulted in the first precedent breaking Bell Canada's monopoly over the telecommunications equipment which was connected to its telephone network. He was lead counsel in the *Revco Securities Litigation*, an innovative "junk bond" class action, which settled for $36 million. Mr. Davidoff was lead counsel and lead trial counsel in *In re Melridge Securities Litigation*, tried to jury verdicts for $88 million (securities fraud) and $240 million (RICO). He is co-lead counsel for the class in the *In re Graphite Electrodes Antitrust Litigation*, an international price-fixing case which has thus far yielded settlements ranging from 18% to 32% of the plaintiffs' and class' purchases from the defendants (aggregate partial settlements exceed $80 million). He was one of co-lead counsel in the *Ikon Securities Litigation*, in which a settlement of $111 million was obtained. He was co-lead counsel and designated lead trial counsel in the *In Re Sunbeam Securities Litigation*, where settlements of $110 million were reached with the auditors and an additional $32 million with the individual defendants and the insurers.

In the Rocky Flats Nuclear Weapons Plant class action where Mr. Davidoff is lead counsel, the Court held the United States Department of Energy in contempt of court after a one week trial in November, 1995 (reported at 907 F. Supp. 1460 (D. Colo. 1995)).

### Daniel Berger

Daniel Berger graduated with honors from Princeton University (Class of 1969) and Columbia Law School (1974) where he was a Harlan Fiske Stone academic scholar. He is presently a senior member and shareholder of the firm, for which he serves as Managing Shareholder. Over the last 15 years, he has been involved in a number of complicated commercial cases including class action securities, antitrust, mass tort and bankruptcy cases. In the antitrust area, he has headed up the Firm's involvement in highly successful litigation against brand and generic prescription drug

manufacturers in which the Berger Firm has been co-lead counsel, a member of various executive committees or otherwise played a key role including, *inter alia,* the following cases: <u>Duane Reede Co. v. Aventis *et. al.*</u> ($110 million settlement involving prescription drug Hytrin); <u>Louisiana Wholesale Drug Co. V. Bristol Myers Squibb</u> ($220 million settlement involving prescription drug Buspar); <u>Valley Drug Co. v. Abbott Laboratories *et. al.*,</u> (pending case involving agreements by brand and generic drug companies to delay generic entry). <u>Louisiana Wholesale Drug Co. v. Schering Plough</u> (pending case involving agreements by brand and generic drug companies to delay generic entry); and <u>Louisiana Wholesale Drug Co. v. Glaxo SmithKline Co.</u> (pending case involving fraud on the US. Patent Office and improper FDA listing by a brand prescription drug manufacturer which delayed generic entry. In the civil rights area, he has been counsel in informed consent cases involving biomedical research and human experimentation by federal and state governmental entities.

Daniel Berger also has a background in the study of economics having done graduate level work in applied micro-economics and macro-economic theory, the business cycle and economic history. He has published law review articles in the *Yale Law Journal*, the Duke University's *Journal of Law and Contemporary Problems* and the New York Law School *Law Review* and worked with the American Law Institute /American Bar Association program on continuing legal education. He has been affiliated with the Kennedy School of Government through the Shorenstein center of Media and Public Policy at Harvard University.

Mr. Berger has been active in city government in Philadelphia and was a member of the Mayor's Cultural Advisory Council, advising the Mayor of Philadelphia on arts policy and the Philadelphia Cultural Fund, which is responsible for all city grants to arts organizations. Mr. Berger was also a member of the Pennsylvania Humanities Council, one of the State organizations through which the NEA makes grants.

Mr. Berger is also an author and journalist and has published in the *Nation* magazine and reviewed books for the *Philadelphia Inquirer*.

### Todd S. Collins

Todd S. Collins is a graduate of the University of Pennsylvania (B.A. 1973) and the University of Pennsylvania Law School (J.D. 1978), where he won the 1978 Henry C. Laughlin Prize for Legal

Ethics. He is a member of the Pennsylvania and Delaware Bars. Since joining Berger & Montague in 1982, following litigation and corporate experience in Wilmington, Delaware and Philadelphia, he has concentrated on complex class litigation, including cases on behalf of securities purchasers, shareholders, trust beneficiaries, and retirement plan participants and beneficiaries.

Mr. Collins has served as lead counsel or co-lead counsel in numerous cases that have achieved significant benefits on behalf of the Class. These cases include: *In re AMF Bowling Securities Litigation*, 99 Civ. 3023 (PKC) (S.D.N.Y.) ($20 million recovery, principally against investment banks, where defendants asserted that c lass suffered no damages); *Ashworth Securities Litigation*; Master File No. 99 CV 0121- L (JFS) (S.D. Cal.) ($15.25 million recovery, coupled with substantial corporate therapeutic relief); *In re Aero Systems, Inc. Securities Litigation*, Case No. 90-0083-CIV-PAINE (S.D. Fla.) (settlement equal to 90 percent or more of Class members' estimated damages); *Price v. Wilmington Trust Company*, Case No. 12476, (Del. Chancery) (in litigation against bank trustee for breach of fiduciary duty, settlement equal to 70% of the losses of the Class of trust beneficiaries); *In re Telematics International, Inc. Securities Litigation*, Case No. 89-6015-CIV-PAINE (S.D. Fla.) (settlements achieved, after extensive litigation, following 11th Circuit reversal of dismissal below); *In re Ex-Cell-O Securities Litigation*, Case Nos. 86 CV 73442 DT and 86 CV 75335 DT (E.D. Mich.); *In re Sequoia Systems, Inc.* Case No. 92-11431-WD (D. Mass.); *In re Sapiens International, Inc. Securities Litigation*, Case No. 94 Civ. 3315 (RPP) (S.D. N.Y.); *In re Datastream Securities Litigation*, Case No. 9-99-0088-13 (D.S.C.); *Copland v. Tolson (*Fischer & Porter Corporate Litigation), Case No. 93008366-09-5 (C.P. Bucks County, Pa.) (on eve of trial, in case against corporate principals for breach of fiduciary duty, settlement reached that represented 65% or more of claimants' losses, with settlement funded entirely from individual defendants' personal funds); and *In re IKON Office Solutions, Inc. Securities Litigation,* Case No. 98-CV-5483 (E.D. Pa.).  In *IKON,* where Mr. Collins was co-lead counsel as well as chief spokesman for plaintiffs and the Class before the Court, plaintiffs' counsel created a fund of $111 million for the benefit of the Class.

In addition, Mr. Collins has served as lead or co-lead counsel in several of the leading cases asserting the ERISA rights of 401(k) plan participants. Mr. Collins currently serves as co-lead counsel in *In re Lucent Technologies, Inc. ERISA Litigation,* No. 01-CV-3491 (D. N.J.); *In re Nortel Networks Corp. ERISA Litigation,* No. 03-MD-1537 (M.D. Tenn.); and *In re SPX Corporation ERISA Litigation,* Master File No. 04-CV-192 (W.D. N.C.). In *Lucent,* in the past year, Mr. Collins and his

30

team achieved an excellent result, consisting of $69 million for the benefit of plan participants as well as substantial injunctive relieve with respect to the operation of the 401(k) plans.

Mr. Collins is at the forefront of litigation designed to achieve meaningful corporate governance reform. Recently, he brought to a successful conclusion two landmark cases in which corporate therapeutics are at the core of the relief obtained. In *Oorbeek v. FPL Group, Inc.* (S.D. Fla.), a corporate derivative action brought on behalf of the shareholders of FPL Group, plaintiffs challenged excessive "change of control" payments made to top executives. In settlement, plaintiffs recovered not only a substantial cash amount, but also a range of improvements in FPL's corporate governance structure intended to promote the independence of the outsider directors.

Similarly, in *Ashworth Securities Litigation* (S.D. Cal.), a Section 10(b) fraud case, in which Mr. Collins was co-lead counsel, plaintiffs again have been successful in recovering millions of dollars and also securing important governance changes. The goal is to compensate the victims of wrongdoing and also, where appropriate, to make those structural changes necessary to make sure that such wrongdoing will never recur.

### Abbott A. Leban

Abbott A. Leban joined the firm in 2004 as Senior Counsel and is a member of the Securities Litigation Department. In the last seven years of his 45-year career, he held the position of Senior Counsel in Grant & Eisenhofer, P.A., of Wilmington, Delaware, where he participated in that firm's securities litigation and corporate governance practice, most notably in the *Oxford Health Plans, Inc. Securities Litigation* in the Southern District of New York and the *DaimlerChrysler Securities Litigation* in the Delaware federal court. In those cases, in each of which his firm served as co-lead counsel and achieved a settlement of $300 million, the settlements ranked at the time among the "top ten" since the enactment of the Private Securities Litigation Reform Act of 1995 (PSLRA).

Berger & Montague has assigned Mr. Leban to open an office for it in Wilmington, Delaware, where he will be principally based to further develop its corporate and securities litigation practice.

Mr. Leban is admitted to the practice of law in the District of Columbia, New York, Pennsylvania, and Delaware. He is also admitted in the U.S. Supreme Court, the U.S. Court of Appeals for the District of Columbia Circuit and the Fifth Circuit, and the U.S. District Courts for Delaware and the

Southern District of New York. He is a member of the American, New York State, and Delaware State Bar Associations and was an original member of the National Association of Public Pension Attorneys, in which he served for a time as chairman of its Committee on Federal Legislation.

Mr. Leban received his B.A. from Columbia College in 1955 (Honors with Distinction in Government, Phi Beta Kappa) and the J.D. degree from Yale Law School in 1958, where in his third year he was employed as one of six instructors to teach the first-semester course, Introduction to Legal Research. Between his second and third years, he was employed by the American Law Institute as Research Assistant to Professor Willis L. M. Reese (Columbia Law School) in his role as Reporter for the Restatement (Second) of the Conflict of Laws.

Mr. Leban held a judicial clerkship in the U.S. Court of Appeals for the District of Columbia Circuit. He continued in federal government service in Washington in the Office of General Counsel of the now-defunct U.S. Civil Aeronautics Board and as an Assistant U. S. Attorney for D.C. during the Eisenhower and Kennedy administrations, in both the appellate and civil trial sections of that office. In 1962, still a New Yorker at the time, he accepted a position on the staff of U.S. Sen. Kenneth B. Keating (R.-N.Y.), ending as his Executive Assistant and Counsel, with responsibility for managing 40-plus professional and clerical aides in the Senator's office, and participated as counsel to several subcommittees of the Senate Judiciary Committee in hearings on the steel, drug, insurance and funeral industries, and on bills that led to the Civil Rights Act of 1964 and, in the wake of the Kennedy assassination, the 25th Amendment on presidential succession and inability.

In 1965, Mr. Leban returned to New York and began a 17-year career in the "FIRE" sector: finance, insurance, and real estate. In-house with the Law Department of the Equitable Life Assurance Society of the U.S., he was, successively, a member of its securities and governmental relations divisions and in 1967 was elected to an officership as the Equitable's first-time Counsel for Federal Relations. In 1970, Colonial Penn Group, Inc., of Philadelphia, recruited him to be President/COO of its recently acquired New York-based life insurance subsidiary in what was essentially a turnaround situation. When Colonial Penn became one of the first insurance groups to be listed on the New York Stock Exchange, Mr. Leban was promoted to the parent company in Philadelphia as Senior V.P. and Corporate Secretary, with responsibilities for the legal, government relations, human resources, and corporate and public affairs departments. With the taking effect of ERISA in 1974, he also served as the chairman of the company's pension and profit-sharing plan trusts and supervised these plans' compliance programs in the early years of the ERISA regime.

32