UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
L.I.S.T., INC., Individually and On Behalf of Itself   :
and All Others Similarly Situated,                      :   Civil Action No.:05-CV-2189 (CM)
                                                        :
                                                        :
                       Plaintiff,                       :   Judge Colleen McMahon
                                                        :
      - v. -                                            :
                                                        :
VEECO INSTRUMENTS, INC., EDWARD H.                      :
BRAUN and JOHN F. REIN, JR.,                            :
                                                        :
                       Defendants.                      :
---------------------------------------------------------------x

*(Additional caption on following page)*

**REPLY MEMORANDUM OF LAW OF RATAN LALCHANDANI IN FURTHER SUPPORT OF HIS MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF PROPOSED LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

```
-------------------------------------------------------------------x
ROY P. KERSHAW, Individually and On Behalf of    :
All Others Similarly Situated,                   :   Civil Action No.: 05-CV-2929 (CM)
                                                 :
                                                 :   Judge Colleen McMahon
                          Plaintiff,             :
                                                 :
        - v. -                                   :
                                                 :
VEECO INSTRUMENTS, INC., EDWARD H.               :
BRAUN and JOHN F. REIN, JR.,                     :
                                                 :
                          Defendants.            :
-------------------------------------------------------------------x
```

I.     **PRELIMINARY STATEMENT**

Ratan LalChandani respectfully submits this memorandum of law in reply to the oppositions of Steelworkers Pension Trust (the "Trust") and the NECA-IBEW Pension Fund ("NECA") to Mr. LalChandani's motion for lead plaintiff and appointment of selection of lead counsel.

Mr. LalChandani suffered losses of approximately $300,000 on his purchases of the securities of Veeco Instruments, Inc. ("Veeco" or the "Company") during the class period (he suffered these losses regardless of which class period is used). As such, he has the largest financial interest in this case. The only putative lead plaintiff that claims a larger loss, is the Trust, which claims a "FIFO" loss of $345,879 on Veeco securities during the shortest alleged class period. The Trust, however, is an impermissible lead plaintiff because it actually made a *net gain* on its Veeco purchases during the longest class period. As such it *benefited* from the alleged fraud, and is, therefore, under the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 23 ("Rule 23"), an inadequate and atypical class representative, as well as subject to a unique defense.

In an attempt to draw attention away from the fact it has a net gain during the longest class period, and therefore has a *conflict* with many members of the class, the Trust argues that a shorter class period (beginning on April 26, 2004 instead of November 3, 2003) is the more appropriate period in this case. This argument is unconvincing. The longer class period is alleged in the first-filed case (and several of the related cases at issue here), and there is strong evidence to support that the fraud at Veeco was taking place in the fourth quarter 2003 and early 2004 – before the shortest class period. As a result, individuals who purchased Veeco shares during that period *are* members of the class. The lead plaintiff this Court appoints *must* be charged with their representation. To appoint the Trust would be to appoint an investor with

interests that *conflict* with the interests of those class members, and which will likely be forced to abandon their claims in order to survive class certification. The Trust's position that these class members do not have valid claims (that the shortest class period is more appropriate) emphasizes this conflict and precludes the Trust from effectively representing those class members in this case. Moreover, the Trust's use of the shortest class period to hide a major transaction, with which it has a net gain on Veeco shares, speaks volumes as to its integrity and adequacy as class representative.

NECA argues that, as an institutional investor, it should have a preference in the appointment of lead plaintiff, regardless of the fact it does not have the largest financial interest in the case (and having sold all of its shares, may have *no* financial interest in the case). This argument is contrary to the *express* mandate of the PSLRA and is *not* supported by the case law, as discussed below.

## II.    ARGUMENT

### A.    The Trust is An Inappropriate Lead Plaintiff

#### 1.    The Longest Class Period is the Most Appropriate

In the first-filed case in this matter, as well as several of the other related cases at issue here, it is alleged that the fraud at Veeco was taking place during the fourth quarter 2003 and early 2004. Specifically, on November 3, 2003, Veeco announced it had acquired TurboDisc creating "a Global Leader in Compound Semiconductor Deposition Technologies," and touted the acquisition as strengthening Veeco's position in the market.[1] The Company failed to disclose problems with the inventory and other accounting items at TurboDisc, of which the defendants were aware, or should have been aware, as a result of Veeco's due diligence on the acquisition. Then, on February 6, 2004, Veeco reported approximately $341 million in assets for the fourth

---

[1] Nov. 3, 2003 press release issued by Veeco over *Business Wire.*

2

quarter 2003, including $2.46 million in inventory.[2]  Veeco also announced, on that day, that it was making "purchase accounting adjustments" relating to inventory and deferred revenue.[3] These statements were false and misleading because they failed to disclose that during the fourth quarter 2003, Veeco had improperly accounted for inventory and other items relating to the TurboDisc acquisition.

Additionally, the amended complaint filed in this matter brings to light new allegations of wrongdoing in late 2003, such as, "on December 31, 2003, in order to make the desired revenue numbers for the year ending that day, Veeco shipped product model DLC-350V/FCA to a customer in Malaysia, without the required export license.  Defendants were aware that shipment of this product was restricted by the USDOC on national security and anti-terrorism grounds, and that shipping it without license could result in fines and suspension of export privileges."[4]  On February 6, 2004, however, when Veeco announced its results for the fourth quarter 2003, it failed to disclose that its 2003 revenues were derived, in part, from illegal shipments like these.

As a result of the above allegations, *as it stands*, individuals who purchased Veeco shares during the longest period *are* members of the class.  The lead plaintiff this Court appoints here *must* be charged with their representation.  This is true regardless of which class period may be the most appropriate.[5]

---

[2]  Feb. 6, 2004 press release issued by Veeco over *Business Wire.*

[3]  Id.

[4]  *See* Amended Complaint, filed April 14, 2005, in *L.I.S.T., Inc. v. Veeco Instruments, Inc.,* No. 05-CV-2189 (S.D.N.Y.) (McMahon, J.).

[5]  Moreover, as stated in Mr. LalChandani's opposition brief, in order to avoid litigating the merits of a case before lead plaintiff is appointed, the longest filed class period is typically used to determine "largest financial interest" under the PSLRA.  *See e.g., In re Star Gas Sec. Litig.*, No. 3:04cv1766, 2005 WL 818617, at * 7 (D. Conn. Apr. 8, 2005) (rejecting argument that shorter class period should be used when deciding the lead plaintiff motion, stating "it would be premature to limit the plaintiff class in this way at such an early stage of the litigation").

        2.        <u>The Trust Cannot Represent Members of the Longest Class Period</u>

In arguing that the shortest class period is the more appropriate period, the Trust has indicated its willingness to abandon the claims of these hundreds, if not thousands, of class members who purchased Veeco securities during the longest period, if it is appointed. And even if it does not abandon those claims, and asserts the longest class period, the Trust will be subject to attack at the class certification stage because it has a *net gain* during that period, and *benefited* from the alleged fraud. So with the appointment of the Trust, the class will, at best, be forced to incur the cost of defending the Trust's adequacy and typicality as a class representative, and, at worst, lose certification or be left without leadership.

For these reasons, even when lead plaintiff movants report a "FIFO" loss, courts routinely reject those movants that have a net gain during the class period in the subject security. *See In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Oh. 2005) (rejecting lead plaintiff movants who reported FIFO losses but actually had net gains, stating, "courts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages…proving damages and typicality will be the bête noir of these [] entities"); *In re Cable & Wireless, PLC Sec. Litig.,* 217 F.R.D. 372, 378 (E.D. Va. 2003) ("Courts have refused to appoint as lead plaintiff a movant who profited from purchases and sales of the defendant's shares during the class period."); *In re Comdisco Sec. Litig.,* 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001) (rejecting lead plaintiff movant who asserted an "artificial" FIFO loss where movant actually had a net gain in the security); *Griffin v. GK Intelligent Systems, Inc.*, 196 F.R.D. 298, 301 (S.D. Tex. 2000) (finding proposed class representative atypical because she had a net gain in the stock).

Here, by virtue of its having a net gain on Veeco shares during the longest class period, the Trust is both (a) subject to a unique defense, and (b) inadequate and atypical, under the PSLRA and Rule 23. As such, it should not be appointed lead plaintiff in this case.

### 3. The Trust's Use of the Shortest Class Period Hid its Net Gain on Veeco Shares

It was by no accident that the Trust's use of the shortest alleged class period hid a profitable sale of 40,000 Veeco shares on January 6, 2004, for proceeds of $1,256,800. As argued in Mr. LalChandani's opposition, the PSLRA *requires* that movants submit *all* of their transactions so that the Court can accurately and quickly evaluate which movant has the "largest financial interest" in the case. Here, with this sale, the Trust was aware it had a *net gain* on Veeco shares, and as such may not have the largest financial interest in the case, or at the very least be subject to a unique defense. The Trust's exclusion of this transaction was improper.

### 4. The Trust's Argument Concerning "In-and-Out" Losses is Without Support

The Trust invokes another novel argument which attempts to diminish all other movants' losses by asserting that *some* shares purchased during the class period were also sold before the end of the class period and therefore should not be included in movants' claimed losses. Although the Trust cites the recent Supreme Court decision, *Dura Pharmaceuticals., Inc. v. Broudo,* 125 S. Ct. 1627 (Apr. 19, 2005), to support this proposition, the *Dura* case does not support the Trust's argument.[6] By making this argument, the Trust has again demonstrated its willingness to sacrifice the interests of hundreds, if not thousands, of class members in an effort to be appointed lead plaintiff.

---

[6] *Dura* held that the inflated purchase price of a stock, alone, is not sufficient to show loss causation. *Dura*, 125 S. Ct. 1627. Dura did not address in-and-out losses.

5

And even assuming the Trust's *Dura* argument has merit, the Trust has conceded that Mr. LalChandani held approximately 9,943 more shares than the Trust held (approximately 25% more shares) at the end of the class period, when the stock tumbled.[7] And according to the Trust's *Dura* argument, the movants' financial interest is determined by this fact (the Trust states, "Under *Dura Pharmaceuticals*, it appears that the district court cannot consider or include a plaintiff's in-and-out transactions made before the curative disclosure that ends the class period for purposes of calculating one's net loss for the "largest financial interest" analysis").[8]

### B. NECA is Not an Appropriate Lead Plaintiff

#### 1. NECA's Position as an Institutional Investor Does Not Belie the Fact it Does Not Have the Largest Financial Interest in this Case

The PSLRA is clear in its *express* mandate that the movant with the largest financial interest is the most appropriate lead plaintiff, unless it is *proven* that movant is inadequate or atypical. 15 U.S.C. § 78u-4(a)(3)(B)(iii). As one circuit court has aptly stated:

> [T]he Reform Act provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy. . . . *[A] straightforward application of the statutory scheme, as outlined above, provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case.*

*In re Cavanaugh,* 306 F.3d 726, 732 (9th Cir. 2002) (some emphasis added); *see also Sofran v. LaBranche & Co. Inc.*, 03 Civ. 8201 (RWS), 2004 WL 569550, at *2 (S.D.N.Y. Mar. 22, 2004) (Sweet, J.) (the district court's belief that "another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the

---

[7] *See* Steelworkers Pension Trust's Memorandum of Law in Further Support of its Motion for Appointment as Lead Plaintiff and in Opposition to the Competing Motions for Appointment as Lead Plaintiff ("Trust Opp."), chart in Sect. II.A.1., at pp. 4-5.

[8] Trust Opp., at Sect. II.C.1., p. 12.

typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.") (citation omitted).

In this case, NECA argues that it is somehow "more adequate" because it is an institutional investor.[9]  In fact, the *only* support NECA provides for its bold statement that Ratan LalChandani does not satisfy Rule 23, is that Mr. LalChandani is *not* an institutional investor.[10] But this argument is inappropriate under the PSLRA and the relevant case law, as cited above, which says that the only basis on which to compare movants is their financial interest in the litigation.  In fact, there is not a single case that supports NECA's contention that an institution should be appointed *over* the movant with the largest loss, simply by virtue of it being an institution.[11]  On the contrary, courts that have heard the issue have held the opposite.  In rejecting NECA's argument, one court explained that while the aim of the PSLRA may have been to encourage institutional investors to seek lead plaintiff status, "the language of the [PSLRA] does not require that institutional investors take precedence over individual plaintiffs who are otherwise qualified to serve in a lead capacity. . . .  If that were the case, Congress would have simply provided that institutional investors are presumptively the most adequate plaintiffs regardless of the size of financial loss and saved the Court from the need to engage in the very analysis it undertakes here." *In re American Bus. Fin. Serv., Inc. Sec. Litig.*, No. Civ. A. 04-0265, 2004 WL 1221353, *2-3 (E.D. Pa. June 3, 2004) (denying lead plaintiff motion filed by

---

[9] The Trust makes a similar argument.  *See* Trust Opp., at Section II.A.2, pp. 6-7.

[10] *See* Opposition of NECA-IBEW Pension Fund (the Decatur Plan) to Competing Motions for Appointment as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Lead Counsel ("NECA Opp."), at pp. 2 & 7.

[11] The *Schulman* case, *Star Gas* case, and *Bassin* case, all cited in the NECA Opp. for this position, *do not state anything to this effect whatsoever*.  In fact, in all of these cases, the movant with the largest financial interest was appointed, and the courts made no reference to an institutional investor being preferable over the movant with the largest loss.  *Schulman v. Lumenis, Ltd.,* No. 02CV1989(DAB), 2003 U.S. Dist. LEXIS 10348 (S.D.N.Y. June 17, 2003); *In re Star Gas Sec. Litig.*, No. 3:04CV1766(JBA), 2005 U.S. Dist. LEXIS 5827, at *16 (D. Conn. Apr. 8, 2005); *Bassin v. Decode Genetics, Inc.*, 04CV7050(RJH), 2005 U.S. Dist. LEXIS 51, at *8 (S.D.N.Y. Jan. 4, 2005).

two pension funds, and appointing individual investors as lead plaintiffs).  Other courts have agreed:

> There is no express provision in the [PSLRA] limiting the rebuttable presumption to institutional investors.  It is well settled that the plain language of the [PSLRA] is controlling.  If Congress had intended to restrict the application of the rebuttable presumption to institutional investors, it could have stated such in the statute.

*Reiger v. Altris Software, Inc.*, No. 98CV0528J (JFS), 1998 WL 1986953, at * 4 (S.D. Cal. Sep. 14, 1998); *see also Steiner v. Aurora Foods, Inc.*, No. 00-CV-602, 2000 WL 33911305, at * 3 (N.D. Cal. June 5, 2000) ("[T]he PSLRA does not limit the presumption of most adequate plaintiff to institutional investors.  Rather, the statute merely provides that the person or group of persons with the largest financial interest in the relief sought by the class is entitled to the presumption of most adequate plaintiff.").

The only authority NECA describes as supporting the proposition that an institution should be appointed over an individual with the largest loss is *Malasky v. IAC/InteractiveCorp.*, 04 Civ. 7447 (RJH), 2004 U.S. Dist. LEXIS 25832, at *9 (S.D.N.Y. Dec. 21, 2004).  NECA, however, completely distorts the holding in that case.  In *IAC*, the court *did not* appoint an institution *over* the individual with a larger financial loss; rather, it appointed the individual with the largest loss.  Then, because the court was looking for an institution to serve as an additional lead plaintiff, it appointed what the court believed to be the institution with the largest loss to serve *with* the individual as co-lead plaintiff.  *IAC*, 2004 U.S. Dist. LEXIS 25832, at *9.[12]

Here, there is no question that Mr. LalChandani has a greater financial interest in this case than NECA.  Therefore, he deserves the statutorily mandated presumption that he is the most appropriate lead plaintiff, unless it is *proven* that he *will not* fairly and adequately protect

---

[12]    Here, the appointment of NECA as co-lead plaintiff would be inappropriate because it is completely "in and out" – that is, sold all its Veeco shares before the end of the class period.  *See* Note 13, *infra*.

8

the interests of the class. NECA's argument that Mr. LalChandani is inadequate simply by virtue of not being an institutional investor is without support.

### 2. NECA is Completely In-and-Out During the Class Period

NECA does not have the largest financial interest in this litigation by any measure, and does not deserve lead plaintiff appointment merely because it is an institution. But more importantly, NECA is completely in-and-out of Veeco securities during the class period. As such, it will be subject to the unique defense that it was not damaged by the alleged fraud.[13]

As a result of these facts, NECA is not an appropriate lead plaintiff in this case.

### C. Ratan LalChandani Should be Appointed Lead Plaintiff in this Case

Because the Trust has a net gain in Veeco shares during the first-filed, longest, and most appropriate class period, it does not have the "largest financial interest" in this case. Mr. LalChandani's loss of approximately $300,000 is the largest of all the movants. In addition to having the largest loss, and as shown in Mr. LalChandani's opposition brief, Mr. LalChandani purchased more net and total shares, and expended more net funds during the class period (using any class period) than any other movant in this case. For these reasons, Mr. LalChandani is the movant with the largest financial interest in this case. Mr. LalChandani has also made a *prima facie* showing of typicality and adequacy, as required under the PSLRA; therefore, Mr.

---

[13] Whether or not this Court agrees with the arguments that have been raised concerning "in-and-out" traders and partial disclosures, NECA, as the only movant that sold *all* of its Veeco shares before the end of the class period, is subject to a unique defense that would virtually *guarantee* the class incur the cost of litigating this issue at the class certification stage, because defendants will certainly raise the argument that NECA suffered *no* losses as a result of the alleged fraud in this case. *See e.g., Arduini/Messina P'ship v. National Med. Fin. Servs. Corp.,* 74 F. Supp. 2d 352, 360-61 (S.D.N.Y. 1999) (dismissing securities fraud claim because plaintiffs had sold all their stock before disclosure of purported fraud). In fact, NECA's very argument concerning partial disclosures in defense of a movant that was completely in-and-out was rejected recently. *See Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) ("The PSLRA, though, provides that we ask simply whether [the in-and-out movant] is likely to be 'subject to' the unique defense regarding loss causation; we do not have to determine that the defense is likely to succeed. And it does appear that [the in-and-out movant] would have to use considerable resources to establish that even though it was an in-and-out trader, its losses nevertheless were caused by the alleged fraudulent statements. Our concern is that the time and attention [the movant] would be required to devote to the loss causation issue (not to rebut a defense, but to prove its case) would distract it from the claims of the rest of the class.").

9

LalChandani is the *presumptive* lead plaintiff in this case.  Because no movant has submitted proof that Mr. LalChandani will not fairly and adequately represent the class, the PSLRA mandates his appointment as lead plaintiff.

But even if this Court accepts the Trust's "FIFO" loss for purposes of determining the "largest financial interest" in this case, the Trust cannot serve as a class representative for those who purchased *before* the shortest alleged class period, because, as explained above, it has a net gain in Veeco shares during the longest class period.  As such, under the PSLRA and Rule 23, the Trust is (a) inadequate and atypical; and (b) subject to a unique defense.

### III.    CONCLUSION

For the foregoing reasons, Ratan LalChandani respectfully requests that this Court (i) appoint him as lead plaintiff in the consolidated action; and (ii) approve his selection of Goodkind Labaton and Schatz & Nobel to serve as co-lead counsel for the class; and (iv) deny all other motions.

Date:  May 12, 2005

Respectfully submitted,

**GOODKIND LABATON RUDOFF
& SUCHAROW LLP**

s/Christopher J. Keller
Christopher J. Keller (CK-2347)
Shelley Thompson (MT-4109)
100 Park Avenue
New York, New York  10017
Tel:  (212) 907-0700

**SCHATZ & NOBEL, P.C.**
Andrew M. Schatz
Nancy A. Kulesa
One Corporate Center
20 Church Street, Suite 1700
Hartford, Connecticut 06103
Tel.: 860-493-6292