# EXHIBIT H

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re SILICON STORAGE TECHNOLOGY, INC., SECURITIES LITIGATION

No. C 05-0295 PJH

**ORDER APPOINTING LEAD PLAINTIFFS AND LEAD PLAINTIFFS' COUNSEL**

THIS ORDER APPLIES TO: ALL ACTIONS

This is a consolidated securities fraud proposed class action. Plaintiffs allege that they bought shares of stock in Silicon Storage Technology, Inc. ("Silicon Storage"), in reliance on false or misleading statements made by the defendants, and that they suffered damages when the price of the stock fell after Silicon Storage's true financial condition became apparent.

The Private Securities Litigation Reform Act (PSLRA) provides that the district court shall select one or more lead plaintiffs to prosecute the action on behalf of the class. 15 U.S.C. § 78u-4(a)(3)(B)(i). The lead plaintiff or plaintiffs, in turn, select lead counsel. 15 U.S.C. § 78u-4(a)(3)(b)(v). On April 27, 2005, the court heard argument in connection with motions by four groups of plaintiffs in this action, each group seeking to be appointed lead plaintiff and to have their choice of counsel confirmed as lead plaintiff's counsel.

**DISCUSSION**

A.   Legal Standard

The PSLRA provides that within 20 days after the date on which a securities class

action complaint is filed,

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Any class member, regardless of whether he has filed a complaint, may move for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(I). Within 90 days of the published notice, "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter . . . referred to as the "most adequate plaintiff"). 15 U.S.C. § 78u-4(a)(3)(B)(i).

In selecting a lead plaintiff, the court must adopt a presumption that the most adequate plaintiff in any private action is the person or group of persons that –

> (aa) has either filed the complaint or made a motion [for designation as lead plaintiff];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted

> only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff –
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Ninth Circuit has characterized these statutes as "provid[ing] a simple three-step process for identifying the lead plaintiff" in a securities fraud case. In re Cavanaugh, 306 F.3d

726, 729 (9th Cir. 2002). The first step consists of publicizing the pendency of the action, the claims made, and the purported class period. Id. In the second step, the district court considers "the losses allegedly suffered by the various plaintiffs" before selecting a "presumptively most adequate plaintiff." Id. at 729-30. The court must view "the one who 'has the largest financial interest in the relief sought by the class' and [who] 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure' " as the "presumptive lead plaintiff." Id. At the third step, the court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." Id. at 730.

In Cavanaugh, the court cautioned that

> a straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case . . . . So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.

Id. at 732.

B.  The Competing Plaintiffs and Their Arguments

The first group consists of Robert Erickson and Shin Sheng Lin ("Erickson/Lin"). Erickson/Lin contend that they are the most adequate plaintiffs because they have the largest financial interest in the relief sought in this case. They claim that they sustained combined losses of $760,041 in connection with their purchases of Silicon Storage stock.

The second group is the McNaught Group, consisting of Henry A. Ciccarone, Jr.; J. David McNaught; Shahar Yonay; and Parshan Singh Johal. They claim to have incurred combined losses of $399,314.[1]

Third is the Sundstrom Group, consisting of Robert Sundstrom, Geoffrey Thacker, and

---

[1] In their moving papers, the McNaught Group proposed themselves as a five-investor group of plaintiffs, with combined losses of $447,741. At least one of the competing groups asserted that one member of the group, Steven Kroff, a California attorney, was previously suspended from the practice of law for three years because of failure to perform legal services competently and because of several acts of moral turpitude. In their reply brief, the McNaught Group state that Kroff has withdrawn his request to be considered as a lead plaintiff.

3

Robert Bunting. They claim to have incurred combined losses of $349,439.

Fourth, the Louisiana Funds Group, consisting of the Louisiana School Employees' Retirement System (LSERS) and the Louisiana District Attorneys' Retirement System (LDARS), claim to have incurred combined losses of approximately $348,142.

The members of each of these four groups argue that they are the most adequate and that the other groups are not adequate or are not typical.

### Erickson/Lin's Arguments

Erickson/Lin argue that they have the largest total financial interest – $760,041 – and that their individual respective losses of $369,749 and $390,292 are larger than the individual losses suffered by any of the other movants. Based on the amount of their losses, they assert that they are the most adequate plaintiffs.

### The McNaught Group's Arguments

The members of the McNaught Group contend that despite reporting the largest financial interest in the litigation, Erickson/Lin are not entitled to the presumption of most adequate plaintiff because they failed to properly document their financial interest as required by the PSLRA.[2] The McNaught Group also assert that both members of Erickson/Liun are "in and out" ("in/out") traders who sold their entire investment in Silicon Storage stock before the end of the proposed class period.[3] The McNaught Group argue that Erickson/Lin cannot meet the "typicality" requirement of Federal Rule of Civil Procedure 23 and cannot adequately represent the class because they are subject to the unique defenses that they were not

---

[2] The PSLRA requires a plaintiff to set forth all transactions in the subject security. Erickson and Lin apparently stated the number of shares of stock they purchased, but cited a price that was slightly more or slightly less than the price at which the stock was trading on the date of the sale. Thus, according to the McNaught Group, Erickson/Lin did not "properly document" their financial interest and cannot be the most adequate plaintiff.

[3] An in/out trader is one who both purchases and sells stock during the same period of alleged price inflation. Unlike the typical "retention" trader who holds his or her securities throughout the class period, an in/out plaintiff recoups at least some of the loss incurred by the purchase because he both buys and sells during the period of price inflation. Thus, in awarding damages, a court will subtract from his calculated injury upon purchase, the amount of his recoupment at the time of sale. See Welling v. Alexy, 155 F.R.D. 654, 661 (N.D. Cal.1994).

4

harmed by defendants' fraudulent conduct, and that they cannot establish loss causation.

The McNaught Group contend that the motions of the Sundstrom Group and the Louisiana Funds should be denied because they each report substantially smaller losses than the McNaught Group. They also assert that Warren D. Ponder and E. Pete Adams, the signatories of certifications submitted by the two Louisiana Funds, have not properly demonstrated that they are authorized to file a lead plaintiff motion on behalf of the Funds. They argue in addition that the Louisiana Funds' motion should be denied because one of the Funds – LSERS – has been appointed as lead plaintiff in at least 19 federal securities actions in the past three years, and is therefore barred from serving as a lead plaintiff in a PSLRA suit under 15 U.S.C. § 78u-4(a)(3)(B)(vi).

### The Sundstrom Group's Arguments

The Sundstrom Group argue that they are the most adequate plaintiffs because the two groups with losses that are larger – Erickson/Lin and the McNaught Group – are not adequate or typical. They assert that both Erickson and Lin were in/out traders, and are therefore subject to the unique defense that they cannot establish a causal connection between the alleged deceptive acts and the injury they allegedly suffered as a result. In addition, they assert that Robert Erickson is disqualified from being a lead plaintiff because he is a "net seller" who profited as much as $138,837 from his investments in Silicon Storage.

They also argue that McNaught Group member Ciccarone and Louisiana Funds member LDARS must each be disqualified from lead plaintiff consideration because they are in/out traders, and will therefore have difficulty proving loss causation. Thus, they assert, if the claimed losses of the various in/out traders are deducted from the total losses of their respective groups, the losses of the each of the other three groups are less than the losses of the Sundstrom Group.

### The Louisiana Funds' Arguments

The Louisiana Funds argue that Erickson/Lin cannot be adequate lead plaintiffs because they are net sellers of Silicon Storage stock. According to the Louisiana Funds, Erickson/Lin purchased a total of 286,174 shares of Silicon Storage during the proposed

class period, and sold 342,174 shares during the class period.

The Louisiana Funds also argue that while the McNaught Group may have a larger aggregate loss, they do not have a single individual with losses comparable to the losses of the two Louisiana Funds. The Funds contend that it would defeat the purpose of the PSLRA to allow five aggregating individuals to defeat two institutional investors from being lead plaintiffs, especially when one of the institutional plaintiffs has the largest single loss of any proposed lead plaintiff. They also contend that when members of an unrelated group such as the McNaught Group, assembled by counsel, serve as lead plaintiffs, the result is attorneys selecting clients, rather than clients selecting attorneys.

### Erickson/Lin's Reply

In their reply brief, Erickson/Lin contend that they should not be disqualified because they made "minor" and "immaterial" clerical errors in their loss calculations. With regard to the argument that Erickson is not an appropriate lead plaintiff because he sold a substantial number of shares prior to the end of the proposed class period, Erickson/Lin respond that the "net seller" argument is irrelevant because courts nowadays use the FIFO ("first-in/first-out") accounting approach rather than offsetting gains realized from such trades against class period losses.

They also assert that under controlling Ninth Circuit law, class members who purchase at inflated prices, but sell prior to the end of the class period, can still be proper class representatives, and argue that district courts in this Circuit regularly certify classes containing in/out members. Finally, they contend that Erickson/Lin would best represent the class because they are knowledgeable and sophisticated investors, Erickson having multiple graduate degrees, and having worked in the securities industry for more than a decade, and Lin having extensive professional experience in the high-tech industry and having served on the boards of directors of several technology companies.

With regard to the other three groups, Erickson/Lin contend that the McNaught Group should not be appointed lead plaintiff because they are seeking to appoint two law firms as lead plaintiffs' counsel, which Erickson/Lin assert creates a huge potential for duplicative

services.

Erickson/Lin argue in addition that the Louisiana Funds are presumptively barred from serving as lead plaintiff in this action because LSERS has been a lead plaintiff in more than five securities fraud actions in the past three years. Erickson/Lin also contend that while institutional investors may be favored as lead plaintiffs, the courts nonetheless should not give preference to institutional investors when there are other individual investors with larger financial losses.

Finally, Erickson/Lin argue that the Sundstrom Group's losses are much smaller than those suffered by Erickson/Lin.

### The McNaught Group's Reply

The McNaught Group argue that they are the presumptive most adequate plaintiffs because they have the largest documented financial interest and have demonstrated that they are otherwise adequate and typical. They claim that Erickson/Lin have failed to accurately certify their transactions in Silicon Storage securities or to explain how they calculated Erickson's and Lin's pre-class period purchases and post-class period sales so that the court can determine their financial interest in this litigation. The McNaught Group also argue that Erickson/Lin are atypical because both members are subject to the unique defense that they are net sellers – asserting that during the proposed class period, Erickson sold 50,000 more shares of Silicon Storage stock than he purchased, and Lin sold 6,000 more shares than he/she purchased, and that Erickson made a profit of $138,837 on his class period transactions.

The McNaught Group contend that not all their members are subject to the unique defenses that apply to Erickson/Lin, and that they are therefore more adequate to represent the interests of the class than Erickson/Lin. They also assert that they are the "most diverse" group of investors, and are therefore best suited to ensure that the interests of all class members will be protected. While one member of the group – Henry Ciccaroni – sold all his shares before the end of the proposed class period, the other members retained a total of 64,500 shares. Thus, they argue, they can adequately represent both the interests of class

members who retained shares through the end of the class period and the interests of those who did not.[4]

The McNaught Group contend further that the Sundstrom Group and the Louisiana Funds each report a financial interest smaller than the interest of the McNaught Group, and that the motions of those plaintiffs should be denied.

### The Sundstrom Group's Reply

The Sundstrom Group reiterate that although two groups – Erickson/Lin and the McNaught Group – claim larger financial losses than the Sundstrom Group, both of the members of Erickson/Lin and one member of the McNaught Group (Ciccarone, the McNaught Group member with the largest number of shares and the largest losses) are in/out traders who are subject to unique defenses and therefore do not meet the requirements of Rule 23. They also assert that one of the members of the Louisiana Funds – LDERS – is an in/out trader, subject to the same defenses.

Thus, the Sundstrom Group argue, the claimed losses should be recalculated as $349,439 for the Sundstrom Group (no ineligible members); $258,107 for the McNaught Group (subtracting Ciccarone's losses);[5] $104,829 for the Louisiana Funds (subtracting LDERS' losses);[6] and $0 for the Erickson Group (subtracting both Erickson's and Lin's losses). The Sundstrom Group contend that they should be appointed lead plaintiffs because they have the largest financial losses under this recalculation.

### The Louisiana Funds' Reply

In response to the McNaught Group's claim that Warren Ponder and E. Pete Adams are not authorized to file a lead plaintiff motion, the Louisiana Funds provide declarations

---

[4] In the alternative, the McNaught Group indicated at the hearing on these motions that Ciccarone might withdraw from the group, leaving a group of three investors with a total of $209,680 in losses (without Kroff's losses) and no in/out members.

[5] This is $209,680 without Kroff's losses.

[6] The Sundstrom Group also asserts that the other member of the Louisiana Funds – LSERS – is statutorily barred from serving as lead plaintiff because it has been a lead plaintiff more than the number of times permitted by the statute.

8

showing that Ponder has been authorized by the LSERS Board of Trustees to enter into litigation on behalf of that fund, and that Adams has been authorized by the LDARS Board of Trustees to enter into litigation on that Fund's behalf. In support, they also submit a notice of filing of amended certification.

The Louisiana Funds also dispute the McNaught Group's claim that LSERS is a "professional plaintiff" that has been appointed a lead plaintiff in 19 securities actions in the past three years, asserting that the actual number is five times. Moreover, the Funds assert that this fact does not disqualify LSERS from serving as a lead plaintiff in this case, noting that while the statute provides that a person may be a lead plaintiff "in no more than 5 securities class actions . . . during any 3-year period," the rule is qualified by the provision "[e]xcept as the court may otherwise permit, consistent with the purposes of this section." See 15 U.S.C. § 78u-4(a)(3)(B)(vi). The Louisiana Funds argue that the legislative history shows Congress' intent that the court allow an institutional investor to exceed this five-in-three rule because institutional investors do not qualify as the type of "professional plaintiff" to which the rule was intended to apply.

With regard to the argument that LDARS, as an in/out trader, should not be appointed lead plaintiff because it is subject to unique defenses, the Louisiana Funds simply respond that this is not be considered a fatal defect in the Ninth Circuit in appointing lead plaintiffs. In support they cite a decision from the Central District of California, In re Gemstar-TV Guide Int'l , Inc. Sec. Litig., 209 F.R.D. 447, 453-54 (C.D. Cal. 2002), where the court rejected the argument that in/out traders cannot be lead plaintiffs and noting that "many courts have rejected this argument." The Louisiana Funds assert that the fact that LDERS is paired with LSERS will assure that the interests of both in/out plaintiffs and retention plaintiffs are adequately represented in this suit.

Finally, the Louisiana Funds argue that each of the other groups competing to be named lead plaintiff is no more than a "mere assemblage of unrelated persons who share nothing in common" other than having suffered losses in connection with purchases of Silicon Graphics stock, and having entered into retainer agreements with the same attorney. The

Louisiana Funds contend that none of the three competing groups can be considered "a person or group of persons capable of serving as lead plaintiff" because they are not part of a cohesive group and have no pre-litigation relationship. The Funds describe the claims of those three groups as simply an "aggregation of disparate losses cobbled together from unrelated individuals who happened to have answered a press release by their proposed counsel."

C.   Analysis

In the present case, there is no dispute that plaintiffs in the first-filed action complied with the publication requirement and the lead plaintiff motions were all filed no later than 60 days following the published notice in the first-filed action. There is also no dispute that one of the plaintiff groups – Erickson/Lin – claim a substantially greater total loss than do the other three groups. Thus, the first question is whether Erickson/Lin have demonstrated the "largest financial interest in the relief sought by the class."

The PSLRA provides that the financial interest in the outcome of the litigation is reasonably representative of the ability of a party or parties to function as lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This comports with the overall focus of the PSLRA to place securities litigation in the hands of investors, not lawyers. See Armour v. Network Assocs., Inc., 171 F.Supp. 2d 1044, 1048 (N.D. Cal. 2001) (legislative history of PSLRA reveals that above provisions were motivated by Congressional concerns about prevalence of "lawyer-driven" securities class actions) (citing H.R. Conf. Rep. No. 104-369, 104th Cong. 1st Sess. (1995), at *31, reprinted in 1995 U.S.C.C.A.N. 730). As such, institutional lead plaintiffs are preferred, though not required. Id.

The PSLRA provides no guidance concerning the method of ascertaining which plaintiff has the "largest financial interest." See 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb). Nor has the Ninth Circuit set forth any mandatory formula to be used when calculating financial interest. See Cavanaugh, 306 F.3d at 730 n. 4 ("[T]he court may select accounting methods that are both rational and consistently applied").

Some district judges, including at least three from this District, have equated "largest

financial interest" with the amount of potential recovery. See Weisz v. Calpine Corp., 2002 WL 32818827 at *5 (N.D. Cal., Aug. 19, 2002) (Armstrong, J.); In re Critical Path, Inc. Sec. Litig., 156 F.Supp. 2d 1102, 1107-08 (N.D. Cal. 2001) (Orrick, J.); In re Network Assocs., Inc., Sec. Litig., 76 F.Supp. 2d 1017, 1030 (N.D. Cal.1999) (Alsup, J.). Under this approach, the Court considers the "number of net shares purchased during the class period" coupled with the "losses suffered by selling shares during the class period." Critical Path, 156 F.Supp. at 1108.[7] This approach assumes that the amount by which the price of the stock was inflated because of the alleged misrepresentations stayed constant throughout the class period. Id. at 1107-08 (citing In re Network Assocs., 76 F.Supp. 2d at 1027).

Erickson/Lin assert that they purchased approximately 286,174 shares of stock in Silicon Storage, and they claim to have sustained losses of approximately $760,041. These numbers are higher than the purchases and losses claimed by the competing groups. Accordingly, the court finds that Erickson/Lin are presumptively the most adequate plaintiffs.[8]

Once the court has determined the plaintiff with the greatest financial stake in the lawsuit, it "must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" Cavanaugh, 306 F.3d at 730 (emphasis in original). The presumption that a plaintiff is the most adequate plaintiff can be rebutted only by a showing either that the plaintiff will not adequately and fairly protect the class, or by a showing that the plaintiff is subject to unique defenses and is therefore incapable of adequately representing the class. See id. at 729-30.

---

[7] Other courts have employed an approach that considers four factors: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended during the class period, and (4) the approximate loss suffered during the class period. See, e.g., In re Olsten Corp. Sec. Litig., 3 F.Supp. 2d. 286, 296 (E.D.N.Y.1998), cited in In re Critical Path., 156 F.Supp. 2d at 1107.

[8] The court bases this determination on Erickson/Lin's claimed loss, and takes no position regarding whether Erickson/Lin is a "net seller" or whether the appropriate accounting method is First-in/First-out, or Last-in/Last-out, or some other method. From the perspective of the argument advanced by the Louisiana Funds, of course, this finding does not reflect "the amount of potential recovery."

11

Erickson/Lin argue that they satisfy Rule 23's typicality and adequacy requirements. The competing plaintiff groups argue, however, that Erickson/Lin cannot adequately represent the class because both members of the group are in/out sellers and thus subject to unique defenses.

Some courts have found in/out sellers to be inadequate class representatives. For example, in In re Microstrategy, Inc., Sec. Litig., 110 F.Supp. 2d 427 (E.D. Va. 2000), the court noted that one party was not viable as a lead plaintiff because his status as an in/out trader made him potentially subject to a unique defense based on the timing of his sales. Id. at 437 n. 23. However, there does not appear to be a per se rule against having an in/out trader as a class representative, at least among courts within the Ninth Circuit. See Welling, 155 F.R.D. at 661-62.

In Welling, Judge Orrick noted that while a court may have some misgivings about having an in/out trader as a class representative, this did not mean such a person could not serve as a class representative, adding that the Ninth Circuit has upheld certification of classes containing both in/out and retention traders. See id. (citing Blackie v. Barrack, 524 F.2d 891 (9th Cir.1975); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1437 (9th Cir.1987) ("because market forces are independent of corrective disclosures, an in-and-out trader . . . may suffer recoverable damages under the out-of-pocket rule even in the absence of corrective disclosures")). He also noted, however, that a potentially more serious problem with in/out traders is that proving reliance is made more difficult. See id. at 661 ("If . . . the class was fooled into purchasing Cirrus stock until the disclosure of accurate, but adverse information at the end of the class period . . . then it appears [plaintiff] was not duped because he sold much of his Cirrus stock before the late April disclosure.").

Based on this analysis, the court finds that Erickson/Lin, the presumptive lead plaintiff based on the amount of the group's claimed losses, would not be the most adequate plaintiff on balance because both members of this group are in/out traders, and as such, are potentially subject to unique defenses.

Of the three remaining groups, the McNaught Group claim the largest amount in losses

12

– $399,314. The Sundstrom Group claim the second largest amount, with $349,439. The Louisiana Funds are last (though close to the Sundstrom Group), with $348,000. All members of the various groups now claim that they have a close and cohesive working relationship, that they are willing and able to represent the interests of the class. However, the Louisiana Funds argue that neither the McNaught Group nor the Sundstrom Group should be appointed lead plaintiff because both groups consist of unrelated individuals assembled into groups by counsel.

Based on its review of the papers submitted by the parties and on the arguments presented at the hearing, the court agrees with the Louisiana Funds that both the McNaught Group and the Sundstrom Group consist of unrelated individuals or entities with no preexisting relationship, who have been "grouped" together by their respective attorneys, arguably with an eye toward assembling the "group" with the largest total financial losses.

The PSLRA itself states that the plaintiff can be a person or group of persons. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Ninth Circuit has not determined what constitutes a "group" under the PSLRA. Some courts have simply allowed any group of investors to aggregate their claims for purposes of being appointed lead plaintiffs. See, e.g., In re American Bank Note Holographics, Inc. Sec. Litig., 93 F.Supp. 2d 424, 436 (S.D.N.Y. 2000); Yousefi v. Lockheed Martin Corp., 70 F.Supp. 2d 1061, 1066-67 (C.D. Cal. 1999); In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 46 (S.D.N.Y. 1998). However, the aggregating of unrelated plaintiffs into a plaintiff "group" potentially results in a securities class action that is "lawyer-driven," rather than plaintiff-driven. One of the goals of the PSLRA was to minimize these "lawyer-driven suits." See, e.g., In re Donkenny, Inc., Sec. Litig., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (citing H.R. Conf. Rep. No. 104-369, at *31-35 (1995), reprinted in 1995 U.S.C.C.A.N 679, 730-34).

Some courts have stated that plaintiffs without a prior existing relationship cannot form a group or aggregate their financial stakes because that would thwart Congress' intention to prevent lawyer-driven litigation. See e.g., Aronson v. McKesson HBOC, Inc., 79 F.Supp. 2d 1146, 1153 (N.D. Cal. 1999); see also In re Razorfish, Inc., Sec. Litig., 143 F.Supp. 2d 304,

308-09 (S.D.N.Y. 2001) (rejecting lead plaintiff group because it had "no independent existence and its composite members have no prior relationship," and because there was "nothing to suggest that they will collectively ride herd on counsel anywhere as well as could a single sophisticated entity"); In re Telxon Corp. Sec. Litig., 67 F.Supp. 2d 803, 815-16 (N.D. Ohio 1999) (noting that large group will have less incentive to exercise control over litigation, particularly if group members "bear no relation and have no connection with one another beyond the fact that they suffered financial loss as a result of a drop in the price of their shares of stock").

Other courts have concluded that the collection of plaintiffs may be comprised of previously unrelated persons, so long as that group is small and presumably cohesive. See e.g., Weltz v. Lee, 199 F.R.D. 129, 132-33 (S.D.N.Y. 2001); In re Baan Co. Sec. Litig., 186 F.R.D. 214, 216-17 (D.D.C. 1999). Other courts have favored a third option in which no single factor is dispositive, but which requires the group to justify and explain its composition and structure in terms of adequacy to represent the class. See, e.g., In re Microstrategy Inc., 110 F.Supp. 2d at 435; In re Network Assocs., 76 F.Supp. 2d at 1026 (if proposed group fails to explain and justify its composition and structure to the court's satisfaction, its motion should be denied or modified as the court sees fit); see also Miller v. Ventro Corp., 2001 WL 34497752 at *7-8 (N.D. Cal., Nov. 28, 2001).

Although the Ninth Circuit has approved none of these options, this court favors the middle approach adopted by the courts in Microstrategy, Network Associates, and Miller. "This approach . . . allows a district court maximum flexibility to select a lead plaintiff who will best represent the interests of the class and exercise control of the litigation." Microstrategy Inc., 110 F.Supp. 2d at 435 (citations omitted). It allows the court to appoint the person or persons most capable of adequately representing the interests of class members, and also achieves the goal of preventing lawyers from directing the litigation by forcing the group to justify its existence and explain its structure, particularly its control over the litigation. Miller, 2001 WL 34497752 at *8; see also In re Versata, Inc., Sec. Litig., 2002 WL 34012374 at *5-6 (N.D. Cal., Aug. 20, 2001) (favoring flexible "case-by-case" approach adopted by

Microstrategy).

In <u>Microstrategy</u>, the court concluded that a group of investors did not qualify as a lead plaintiff, finding "nothing in the record to provide any assurance that the group was cohesive, comprised of like-minded members, or otherwise likely to function as a unified group." <u>Microstrategy</u>, 110 F.Supp. 2d at 437. Furthermore, the group had retained three law firms to serve as co-lead counsel. From that fact, the court deduced that the group was merely "a diverse collection of plaintiffs assembled by these three firms for the purpose of winning the lead plaintiff role, allowing them to share the lead counsel role." <u>Id.</u> (citation omitted). The only evidence the court could find suggesting that the group would function as a group was counsel's representation that they were "cohesive," which the court found insufficient in the absence of any record evidence supporting that representation. <u>Id.</u> (citations omitted).

Other courts have reached similar results. In <u>In re Gemstar</u>, the court refused to appoint a group of unrelated investors – three institutional investors and four individual investors – as lead plaintiff. 209 F.R.D. at 451-52. In <u>In re Razorfish</u>, the court rejected a group of unrelated investors as "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff." 143 F.Supp. 2d at 304. In <u>Bowman v. Legato Sys., Inc.</u>, 195 F.R.D. 655 (N.D. Cal. 2000), the court rejected a motion by six unrelated institutional and individual investors to be appointed lead plaintiffs' counsel. <u>Id.</u> at 657. In <u>Aronson</u>, the court stated that the lead plaintiff must be an individual person or entity, or, at most, a close-knit "group of persons." 79 F.Supp. 2d at 1154.

In <u>Network Associates, Inc.</u>, Judge Alsup discussed criteria that would enable a court to assess whether the proposed group is capable of performing the lead plaintiff function. 76 F.Supp. 2d at 1026. The proposed group should provide descriptions of its members, including any pre-existing relationships among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation. <u>Id.</u> (citing Amicus Curiae Brief for the SEC ("SEC Amicus Brief") at 11,

15

filed in Parnes v. Digital Lightwave, Inc., No. 99-11293-FF (11th Cir. Aug. 25, 1999));[9] see also In re Lucent Techs., Inc. Sec. Litig., 194 F.R.D. 137, 151 (D.N.J. 2000) (outlining requirements similar to those the SEC suggests).

Nevertheless, none of the proposed groups in Network Associates was able to provide the court with any explanation or justification for the group arrangement. 76 F.Supp. 2d at 1026-27. Accordingly, finding that "artificial aggregation" should never be allowed for any purpose, including to serve as lead plaintiff or to sponsor a subgroup as lead plaintiff, Judge Alsup proceeded to examine the individual plaintiffs with the goal of identifying the single candidate with the largest financial interest in the litigation, and then vetting that candidate against the requirements of the PSLRA. Id.

In the present case, the court concludes that neither the McNaught Group nor the Sundstrom Group can be considered the most adequate plaintiffs, as the members of each appear to be unrelated to each other in any way other than the fact that they suffered financial losses by virtue of their purchase of Silicon Storage stock. Any subsequent relationship that the members of these groups may have developed, after being introduced to each other by their lawyers, is insufficient in the court's view to qualify them as "most adequate" lead plaintiff.

Looking briefly at the individual plaintiffs, the court notes that LSERS claims the next largest losses after Erickson and Lin. It is true that LSERS has been a lead plaintiff in five securities class actions during the past three years. However, the PSLRA allows the district court discretion to determine whether LSERS may nonetheless serve as lead plaintiff, where such an appointment would be "consistent with the purposes" of the statute. 15 U.S.C. § 78u-4(a)(3)(B)(vi). Moreover, the legislative history suggests that one of the factors the court should consider is whether such a plaintiff is an institutional investor. See H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. (1995), at *34-35, reprinted in 1995 U.S.C.C.A.N. 730); see also In re Critical Path, 156 F.Supp. 2d at 1112 (PSLRA grants discretion to avoid unintended consequences of disqualifying institutional investors from serving more than five times in three

---

[9] SEC Amicus Brief is available at http://www.sec.gov/litigation/briefs/diglight.htm.

years).

Accordingly, taking all the above considerations into account, the court finds that the Louisiana Funds should be appointed to serve as lead plaintiff. LSERS has the single largest individual loss after Erickson and Lin, and the Funds are more cohesive and have more in common than the other two groups. While counsel for the Louisiana Funds did concede at the hearing on the present motions that LSERS and LDARS are not operationally related and have no previous joint involvement in legal actions, he also indicated that both entities are state employees' retirement funds that work together from time to time on pension fund-related issues in Louisiana. Moreover, as fiduciaries, both Funds are experienced in representing the long-term interests of many small investors and in protecting the assets of their participants and beneficiaries.

## CONCLUSION

In accordance with the foregoing, the court hereby appoints the Louisiana Funds to serve as lead plaintiffs in this consolidated action. The court also approves the Louisiana Funds' choice of counsel – the law firm of Berman DeValerio Pease Tabacco Burt & Pucillo and the law firm of Pomeranz Haudek Block Grossman & Gross LLP – to serve as lead plaintiffs' counsel, with the caveat that the court anticipates that the fact that two law firms are serving as lead plaintiff's counsel will not result in a duplication of services for which both firms will attempt to seek compensation in the event of a settlement of the claims of the class.

**IT IS SO ORDERED.**

Dated: May 3, 2005

/s/
PHYLLIS J. HAMILTON
United States District Judge

17