## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------ x
In re VEECO INSTRUMENTS, INC.        :        Case No.: 7:05-md-01695 (CM)
SECURITIES LITIGATION                :
------------------------------------------------------ x
------------------------------------------------------ x
THIS DOCUMENT RELATES TO             :
ALL ACTIONS                          :
------------------------------------------------------ x
```

## DECLARATION OF JEFFREY L. OSTERWISE IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION TO VACATE AND REVERSE THE DISCOVERY ORDER OF MAGISTRATE JUDGE GEORGE A. YANTHIS SIGNED JANUARY 24, 2007 PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72

Jeffrey L. Osterwise, hereby declares as follows:

I, Jeffrey L. Osterwise, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am an associate of the law firm of Berger & Montague, P.C., lead counsel for Lead Plaintiff in this litigation.

2.      I submit this Declaration in further support of Lead Plaintiff's Motion to Vacate and Reverse the Discovery Order of Magistrate Judge George A. Yanthis Signed January 24, 2007 Pursuant to Federal Rule of Civil Procedure 72.

3.      Attached hereto as Exhibits are true and correct copies of the following:

| Exhibit No. | Description |
|---|---|
| A | Relevant portions of the Transcript of the Deposition of John Kiernan, dated February 27, 2007. |
| B | Relevant portions of the Rough Draft Transcript of the Deposition of John F. Rein, dated February 28, 2007. |

Dated: March 1, 2007

Jeffrey L. Osterwise

# EXHIBIT A

# ORIGINAL

1

1

2   UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

3   CASE NO.: 05-MD-1695 (CM)

4   ---------------------------x

5   In Re:

6   VEECO INSTRUMENTS, INC.,

7   SECURITIES LITIGATION

8   ---------------------------x

9

10

11       VIDEOTAPED DEPOSITION of JOHN KIERNAN,

12   a witness called by counsel for Plaintiffs, taken

13   pursuant to the Federal Rules of Civil Procedure

14   before Eileen Mulvenna, CSR/RMR and Notary Public

15   within and for the State of New York, taken at

16   the office of Milberg Weiss & Bershad, One Penn

17   Plaza, New York, New York on February 27th, 2007,

18   commencing at 10:17 a.m.

19

20

21

22

23

24

25

166

1                          John Kiernan

2          Q.      Where was your office at the time,        15:17:02

3     this late 2004, early 2005 time period?  Not in        15:17:04

4     Somerset, was it?                                       15:17:10

5          A.      No, my office is based in the Veeco        15:17:12

6     corporate office in Woodbury.                           15:17:16

7          Q.      And were there occasions on which          15:17:20

8     Jefferson Wells people came to Woodbury?                15:17:27

9          A.      Yes, they did.                             15:17:31

10         Q.      And what did the Jefferson Wells           15:17:32

11    people do when they came to Woodbury?                   15:17:34

12         A.      Principally two items, I recall.           15:17:42

13    The first item was when they reviewed the work          15:17:46

14    prepared by management with respect to the              15:17:50

15    revenue adjustments.  All of those accounting           15:17:52

16    records are kept at the Woodbury facility.  When        15:17:54

17    they reviewed the work, they reviewed that at           15:17:59

18    Woodbury.                                               15:18:02

19              And second, any presentations or             15:18:04

20    reports that they would have given to the audit         15:18:09

21    committee, they may have done in person or by           15:18:13

22    phone in Woodbury.  I'm not sure.                       15:18:17

23         Q.      Did the audit committee meet at            15:18:19

24    Woodbury?                                               15:18:21

25         A.      The audit committee did meet in            15:18:23

167

John Kiernan

| | | |
|---|---|---|
| 1 | John Kiernan | |
| 2 | Woodbury.  I don't know, with respect to | 15:18:25 |
| 3 | specifically meetings during this time period, if | 15:18:29 |
| 4 | they were telephonic meetings or there were | 15:18:34 |
| 5 | meetings in Woodbury.  I don't recall. | 15:18:36 |
| 6 | Q.    I see. | 15:18:47 |
| 7 | What was the cost of what has been | 15:18:58 |
| 8 | described in Veeco documents as the investigation | 15:19:02 |
| 9 | that included -- that -- in which Jefferson Wells | 15:19:07 |
| 10 | did, in part which you've described and I assume | 15:19:10 |
| 11 | some other things -- | 15:19:14 |
| 12 | MR. HERFORT:  How much money was | 15:19:15 |
| 13 | Jefferson Wells paid? | 15:19:16 |
| 14 | MS. BRODERICK:  Oh, it wasn't only | 15:19:18 |
| 15 | Jefferson Wells that got paid. | 15:19:19 |
| 16 | Q.    Isn't that right? | 15:19:20 |
| 17 | MR. HERFORT:  What is the -- how is | 15:19:24 |
| 18 | this likely to lead to discoverable | 15:19:25 |
| 19 | evidence? | 15:19:27 |
| 20 | Q.    You can answer the question. | 15:19:28 |
| 21 | MR. HERFORT:  Wait a minute.  Wait. | 15:19:29 |
| 22 | You've got to put some parameters on | 15:19:31 |
| 23 | your question.  What costs are you talking | 15:19:33 |
| 24 | about? | 15:19:34 |
| 25 | Q.    There was an investigation; right? | 15:19:38 |

168

John Kiernan

2    And Jefferson Wells got paid and at least one          15:19:39

3    other entity got paid.                                 15:19:43

4              MR. HERFORT:  Who is that?                    15:19:45

5              MS. BRODERICK:  You know perfectly            15:19:46

6         well.                                             15:19:47

7         Q.    What was the cost of the                    15:19:49

8    investigation?                                         15:19:50

9              MS. BRODERICK:  Let's not waste              15:19:51

10        time.                                             15:19:52

11             MR. HERFORT:  I'm going to instruct          15:19:52

12        him not to answer.                                15:19:52

13             MS. BRODERICK:  You are?                      15:19:54

14             MR. HERFORT:  Yes.                            15:19:55

15             MS. BRODERICK:  You know you're not          15:19:55

16        supposed to do that.                              15:19:56

17             MR. HERFORT:  I think that gets into         15:19:57

18        the work product area.                            15:19:57

19             MS. BRODERICK:  The cost of an               15:19:58

20        investigation --                                 15:20:00

21             MR. HERFORT:  The checks that they          15:20:00

22        wrote to Jefferson Wells and Kaye Scholer        15:20:01

23        for work product --                              15:20:04

24             MS. BRODERICK:  For one thing, for          15:20:05

25        God's --                                          15:20:06

169

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | MR. HERFORT:  Carole, keep your | 15:20:07 |
| 3 | mouth shut and let me listen to him.  Okay? | 15:20:08 |
| 4 | You've got to cool it.  I want to -- let's | 15:20:11 |
| 5 | do this professionally.  All right? | 15:20:13 |
| 6 | MS. BRODERICK:  You should start. | 15:20:15 |
| 7 | MR. HERFORT:  You start too. | 15:20:16 |
| 8 | Let me talk to -- Mr. Wallin wants | 15:20:17 |
| 9 | to talk to me.  Let me talk to him.  Don't | 15:20:18 |
| 10 | start yelling. | 15:20:21 |
| 11 | (Discussion off the record.) | 15:20:21 |
| 12 | (Counsel leave the room.) | 15:20:24 |
| 13 | THE VIDEOGRAPHER:  3:21 p.m.  We're | 15:20:40 |
| 14 | going off the record. | 15:20:41 |
| 15 | (Recess from the record.) | 15:20:43 |
| 16 | THE VIDEOGRAPHER:  Time is 3:30 p.m. | 15:30:19 |
| 17 | We're back on the record. | 15:30:21 |
| 18 | MR. HERFORT:  Miss Broderick has | 15:30:23 |
| 19 | some questions involving numbers, and let's | 15:30:24 |
| 20 | proceed and have them -- | 15:30:26 |
| 21 | MS. BRODERICK:  Would you read the | 15:30:28 |
| 22 | question back and maybe this time he'll | 15:30:28 |
| 23 | answer it. | 15:30:31 |
| 24 | MR. HERFORT:  -- have them asked. | 15:30:32 |
| 25 | (Record read.) | 15:30:42 |

170

John Kiernan

1

2       A.    My recollection was in the range of        15:30:42

3    about $800,000.                                      15:30:46

4       Q.    And is that cost approximately what        15:31:00

5    Veeco expected when the investigation was           15:31:01

6    started?                                             15:31:05

7       A.    I don't recall what our initial            15:31:09

8    estimate was.                                        15:31:11

9       Q.    Well, let's come at it another way.        15:31:14

10            Did the cost of the investigation          15:31:16

11   come as a shock to you?  And by "you," I mean       15:31:18

12   Veeco and not you personally, Mr. Kiernan.          15:31:20

13      A.    No, I don't believe so.                    15:31:25

14      Q.    And what was Veeco getting for the         15:31:29

15   $800,000?                                            15:31:30

16            MR. HERFORT:  Let's just -- haven't        15:31:34

17       you really covered at some length the          15:31:39

18       actual work that was done?                      15:31:41

19            MS. BRODERICK:  Let me decide.             15:31:43

20            MR. HERFORT:  You do have some             15:31:45

21       rights, that's true.                            15:31:46

22            MS. BRODERICK:  Yes, I do.  You            15:31:47

23       know, what amendment was it that gave us       15:31:48

24       the vote?                                        15:31:50

25            MR. HERFORT:  It's not what we're          15:31:51

171

1                      John Kiernan

2      talking about.                          15:31:52

3            MS. BRODERICK:  I know you'd rather    15:31:54

4      appeal it, but it's not for you to do.   15:31:55

5            MR. HERFORT:  I really wouldn't.  It   15:31:57

6      makes for an interesting political system   15:31:58

7      to have characters like you voting.      15:32:01

8            MS. BRODERICK:  Careful or you'll    15:32:03

9      get Hillary Clinton.                     15:32:04

10           Now, let him answer the question.   15:32:07

11           MS. HIRSH:  I'm sorry.             15:32:09

12           MR. HERFORT:  Maybe I like --       15:32:11

13           MS. HIRSH:  Right after reading the   15:32:13

14     headline about the Dow falling of 500    15:32:14

15     points.                                  15:32:19

16           MS. BRODERICK:  Oh, really?  500?   15:32:19

17           MS. HIRSH:  Something to do with    15:32:20

18     China.                                   15:32:21

19           MS. BRODERICK:  Let's let him answer   15:32:23

20     the question.  You know you're not allowed   15:32:24

21     to instruct him not to answer except on the   15:32:26

22     grounds of privilege.                    15:32:28

23           MR. HERFORT:  You might be getting   15:32:29

24     near.                                    15:32:30

25           MS. BRODERICK:  Well, near is not   15:32:30

172

1          John Kiernan

2     good enough.                                    15:32:31

3          MR. HERFORT:  You were interested,         15:32:32

4     having gone over the basic work that            15:32:32

5     they've done for the last hour and a half.      15:32:35

6     You want him to repeat it again?                15:32:36

7          MS. BRODERICK:  No.  I asked him a         15:32:39

8     question.  If you're going to instruct him      15:32:40

9     not to answer, at your peril, then do so;       15:32:41

10    if you're not, then --                          15:32:44

11         MR. HERFORT:  If you can answer the        15:32:44

12    question without getting into the               15:32:45

13    impressions and conclusions of the people       15:32:46

14    who did the work for you, answer it.            15:32:47

15    A.      My understanding is that of the         15:32:51

16    $800,000, that was principally paid to three    15:32:54

17    firms.  That it was paid to Ernst & Young for   15:33:02

18    additional audit work that they performed.  It  15:33:07

19    was paid to Kaye Scholer to lead the            15:33:12

20    investigation.  And it was paid to Jefferson    15:33:15

21    Wells for the work they performed.              15:33:18

22    Q.      And is it -- what was your              15:33:21

23    understanding about -- I understand who you paid 15:33:26

24    it to -- about what you got for your $800,000?  15:33:30

25    It's a lot of money.                            15:33:35

173

John Kiernan

| | | |
|---|---|---|
| 1 | John Kiernan | |
| 2 | MR. HERFORT:   Read the question back | 15:33:37 |
| 3 | again, please. | 15:33:38 |
| 4 | (Record read.) | 15:33:39 |
| 5 | MR. HERFORT:   I'll object as to | 15:33:55 |
| 6 | form. | 15:33:55 |
| 7 | I think this has been gone over and | 15:33:56 |
| 8 | over and over again for the last two hours. | 15:34:00 |
| 9 | MS. BRODERICK:   Cry. | 15:34:03 |
| 10 | A.    My recollection is that each one of | 15:34:07 |
| 11 | those three firms billed to Veeco on an hourly | 15:34:08 |
| 12 | basis for the work that they performed. | 15:34:13 |
| 13 | Q.    Let me put it a different way. | 15:34:16 |
| 14 | What purpose -- what benefit did you | 15:34:20 |
| 15 | derive for the $800,000 that you paid to these | 15:34:25 |
| 16 | people? | 15:34:30 |
| 17 | A.    The audit committee engaged Kaye | 15:34:36 |
| 18 | Scholer to perform an investigation under their | 15:34:40 |
| 19 | direction, and they're reporting directly into | 15:34:42 |
| 20 | the audit committee.  I'm not privileged to what | 15:34:47 |
| 21 | they performed in that regard. | 15:34:50 |
| 22 | Work performed by Ernst & Young | 15:34:56 |
| 23 | included additional audit procedures to review | 15:34:59 |
| 24 | the adjustments and the account analysis that was | 15:35:06 |
| 25 | performed that was outside of the original scope | 15:35:08 |

174

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | of their intended audit work, and that Ernst & | 15:35:10 |
| 3 | Young did these additional procedures in order to | 15:35:14 |
| 4 | be able to render an opinion on the financial | 15:35:17 |
| 5 | statements, which they ended up rendering their | 15:35:20 |
| 6 | opinion on the financial statements. | 15:35:24 |
| 7 | Jefferson Wells reviewed the work | 15:35:28 |
| 8 | that was performed by management and also did | 15:35:32 |
| 9 | forensic work. | 15:35:35 |
| 10 | Q.    And what benefit did the company | 15:35:37 |
| 11 | derive from that? | 15:35:39 |
| 12 | A.    I think that was -- the work that | 15:35:52 |
| 13 | was performed by Jefferson Wells enabled Ernst & | 15:35:54 |
| 14 | Young to be able to render their opinion on | 15:36:02 |
| 15 | Veeco's financial statements, and that was a | 15:36:09 |
| 16 | requirement. | 15:36:13 |
| 17 | Q.    Did the work done by Jefferson Wells | 15:36:16 |
| 18 | also enable Ernst & Young to render their opinion | 15:36:19 |
| 19 | on Veeco's internal controls? | 15:36:24 |
| 20 | A.    I believe they considered the work | 15:36:36 |
| 21 | performed, but I don't know what -- the exact | 15:36:37 |
| 22 | reliance that they may have attributed to the | 15:36:41 |
| 23 | work performed by Jefferson Wells. | 15:36:45 |
| 24 | Q.    Okay.  Did there come a time in the | 15:36:47 |
| 25 | third quarter of 2004 that you, Mr. Kiernan, | 15:37:44 |

# EXHIBIT B

ROUGH ASCII VEECO-REIN 2-28-07

1

```
1       UNPROOFREAD/UNCERTIFIED ROUGH DRAFT ONLY

2   Reporter's Name:  EILEEN MULVENNA, CSR/RMR
    ---------------------------------------------------
3   REALTIME/INTERACTIVE ROUGH DRAFT TRANSCRIPT
      AND/OR UNCERTIFIED REALTIME ASCII DISCLAIMER
4   ---------------------------------------------------
            IMPORTANT NOTICE:
5          - AGREEMENT OF PARTIES -
       PROCEEDING BEYOND THIS PAGE CONSTITUTES
6   ACCEPTANCE OF AND AGREEMENT WITH THE FOLLOWING
               TERMS AND CONDITIONS
7   ---------------------------------------------------
    We, the party working with realtime and rough
8   draft transcripts and/or ASCII disks, understand
    that if we choose to use the realtime rough draft
9   screen, the rough printout, or the unedited ASCII
    disk, that we are doing so with the understanding
10  that all rough drafts are uncertified copies
    and...
11
    WE AGREE THEY WILL BE BILLED TO AND PAID FOR BY
12  US

13  We further agree not to comment in the record on,
    share, give, copy, scan, fax or in any way
14  distribute this realtime rough draft or ASCII in
    any form (written or computerized) to any party.
15  However, our own experts, co-counsel, and staff
    may have limited internal use of same with the
16  understanding that we agree to destroy our
    realtime rough drafts and/or any computerized
17  form, if any, and replace it with the final
    transcript/ASCII disk upon its completion.
18
    REPORTER'S NOTE:
19
    Since this deposition has been recorded by me in
20  realtime and is in rough draft form, please be
    aware that there may be discrepancies regarding
21  page and line number when comparing the realtime
    screen, the rough draft/uncertified transcript,
22  rough draft/uncertified ASCII disk, and the final
    transcript/ASCII disk.
23

24

25
```

2

```
1     UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2   Also please be aware that the realtime screen and
    the uncertified rough draft transcript/ASCII disk
3   may contain untranslated steno, reporter's notes
    as parentheticals, misspelled proper names,
4   incorrect or missing Q/A symbols or punctuation,
    and/or nonsensical English word combinations.
```
Page 1

ROUGH ASCII VEECO-REIN 2-28-07

5    All such entries will be correct on the final,
     certified transcript/ASCII disk.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                          3

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2              THE VIDEOGRAPHER:  Good morning.        09:27:10

3    We're on the record.  Today's date is            10:13:09

4    February 28, 2007.  The time is 10:15 a.m.       10:13:11

5                                                     10:13:15

6              This is the videotape deposition of    10:13:16

7    John F. Rein in the case of In Re: Veeco         10:13:19

8    Instruments, Inc., Securities Litigation.        10:13:25

9    Case No. 05-MD-1695.  This case is part of       10:13:27

10   the United States District Court for the         10:13:33
                         Page 2

25        the record.   The time is 5:01 p.m.                    16:58:18
                                                        230

1        UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2        BY MS. BRODERICK:                                       16:58:22
3            Q.      How much did Veeco spend on the             16:58:26
4        investigation that you described in the affidavit       16:58:30
5        that you swore to that was filed in this action         16:58:43
6        in the federal District Court?                          16:58:48
7                MR. SERIO:   I'm sorry could I have             16:58:56
8            that read back, please.                             16:58:57
9                (Record read.)                                  16:59:07
10               MR. SERIO:   Objection to form.   You           16:59:08
11           mean outside counsel fees?                          16:59:09
12               MS. BRODERICK:   The whole thing.               16:59:11
13           A.      I think there was a disclosure in           16:59:16
14       the 10-K that enumerated a number like eight or         16:59:17
15       900,000 but I don't specifically recall.                16:59:23
16           Q.      And wasn't the product that                 16:59:36
17       investigation needed for you to obtain Ernst &          16:59:43
18       Young's opinions on Veeco's financial statements        16:59:51
19       and its internal controls?                              16:59:57
20               MR. SERIO:   Objection to the form.             17:00:00
21           A.      I'm sorry, what investigation are           17:00:02
22       you referring to?                                       17:00:04
23           Q.      The financial statement -- the              17:00:06
24       investigation you just testified about, the cost        17:00:08
25       of which you said was disclosed in Veeco's public       17:00:10
                                                        231

1        UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2        document.                                               17:00:15
3            A.      The audit committee selected Kaye           17:00:16
4        Scholer and Jefferson Wells to assist in               17:00:21

ROUGH ASCII VEECO-REIN 2-28-07

```
 5   litigation, anticipation of litigation              17:00:28
 6   preparation to evaluate and to give counsel and     17:00:32
 7   guidance to the company.  In addition to            17:00:36
 8   performing some analysis and forensic work in        17:00:39
 9   regard -- in regard to ensuring that the accounts   17:00:46
10   were properly stated and the financial statements   17:00:52
11   were properly stated.                               17:00:57
12             MS. BRODERICK:  Could you read the        17:00:59
13        question back.                                 17:00:59
14             (Record read.).                           17:01:00
15             MR. SERIO:  Objection to form.            17:01:18
16             MS. BRODERICK:  It's product of the       17:01:20
17        investigation.                                 17:01:21
18             THE REPORTER:  (Nods head in the          17:01:24
19        affirmative.)                                  17:01:24
20             MR. SERIO:  Could you hear that?  I       17:01:26
21        couldn't hear it when you were reading it      17:01:27
22        back.                                          17:01:29
23             (Discussion off the record.)             17:01:47
24             (Record read.)                            17:01:48
25             MR. SERIO:  Objection to form.            17:01:57
                                              232
```

```
 1   UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
 2        Q.    You can answer the question?             17:02:13
 3        A.    I think I thought I did answer the       17:02:15
 4   question, but a portion of that investigative       17:02:17
 5   activity was used to assist us in -- us being       17:02:23
 6   Veeco financial management in creating and          17:02:29
 7   correcting -- creating the required entries and     17:02:33
 8   adjustments and developing financial statements     17:02:39
 9   on a correct basis and so a portion of that         17:02:46
```

Page 191

ROUGH ASCII VEECO-REIN 2-28-07

10  activity was in that -- in assistance in that          17:02:52

11  regard.  And that was required before Ernst &          17:02:56

12  Young could audit our and given an opinion on our       17:02:59

13  December 31, 2004, financial statements.                17:03:03

14          Q.      So it was necessary for Ernst &         17:03:06

15  Young's opinion; right?                                 17:03:08

16                  MR. SERIO:  Objection to the form.      17:03:10

17          A.      A portion of the activities were        17:03:11

18  necessary.                                              17:03:13

19          Q.      That's the audit opinion; is that       17:03:14

20  correct?                                                17:03:16

21                  MR. SERIO:  Objection to the form.      17:03:16

22          Q.      Meaning the opinion on Ernst &          17:03:18

23  Young -- on Veeco's financial statements; right?        17:03:20

24          A.      We --                                   17:03:27

25                  (Telephone interruption.)               17:03:29
                                                   233

1   UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2                   MS. BRODERICK:  Good grieve.  I         17:03:32

3           thought it was his stomach.                     17:03:34

4           A.      I'd like to just clarify what the       17:03:41

5   question --                                             17:03:43

6           Q.      Okay.  You described financially --     17:03:44

7   financial statement activity that was being             17:03:49

8   performed by Jefferson Wells; isn't that correct?       17:03:51

9           A.      Well, I described financial activity    17:03:54

10  was being performed by Veeco financial management       17:03:56

11  and there was some assistance based on some of          17:04:01

12  the work that Jefferson Wells did.                      17:04:03

13          Q.      Yes.  And then you testified, did       17:04:06

14  you not that had that activity was necessary for        17:04:08

15  Ernst & Young to issue its opinion; is that             17:04:13
                        Page 192

ROUGH ASCII VEECO-REIN 2-28-07

| 16 | correct? | 17:04:15 |
| 17 |                MR. SERIO:  Objection to the form. | 17:04:16 |
| 18 |                (Telephone interruption.) | 17:04:17 |
| 19 |                MS. BRODERICK:  Turn it off. | 17:04:20 |
| 20 |                MR. SERIO:  Sorry. | 17:04:24 |
| 21 |                MS. BRODERICK:  How many do you | 17:04:25 |
| 22 |        have? | 17:04:26 |
| 23 |                (Telephone interruption.) | 17:04:30 |
| 24 |                (Discussion off the record.) | 17:04:40 |
| 25 |        Q.    Okay? | 17:04:48 |

234

| 1 | UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY | |
| 2 |        A.    It was necessary for Veeco | 17:04:48 |
| 3 | management to get their financial accounts and | 17:04:50 |
| 4 | financial statements correct before Ernst & Young | 17:04:54 |
| 5 | would certify to our statements or we could ask | 17:04:56 |
| 6 | them to review and audit the underlying financial | 17:05:01 |
| 7 | statements.  And part of the Jefferson Wells' | 17:05:05 |
| 8 | activity was utilized to assist us in verifying | 17:05:09 |
| 9 | that the accounts were correct. | 17:05:15 |
| 10 |        Q.    So part of the Jefferson Wells' | 17:05:16 |
| 11 | activity was an activity which was engaged in for | 17:05:18 |
| 12 | the purpose of correcting records which was | 17:05:28 |
| 13 | necessary to do to get Ernst & Young to certify | 17:05:31 |
| 14 | Veeco's financial statements; is that correct? | 17:05:37 |
| 15 |                MR. SERIO:  Objection to the form. | 17:05:40 |
| 16 |        A.    It was -- we utilized Jefferson | 17:05:43 |
| 17 | Wells' activity to verify that what management | 17:05:47 |
| 18 | had come up with, which is what Ernst & Young was | 17:05:51 |
| 19 | looking at, was accurate. | 17:05:55 |
| 20 |        Q.    Okay.  So part of what Jefferson | 17:05:58 |

Page 193

ROUGH ASCII VEECO-REIN 2-28-07

| 21 | Wells was doing was used to get Ernst & Young to | 17:06:00 |
| 22 | issue an opinion on Veeco's financial statements; | 17:06:07 |
| 23 | isn't that right? | 17:06:10 |
| 24 | MR. SERIO:  Objection to the form. | 17:06:11 |
| 25 | Asked and answered. | 17:06:12 |

235

| 1 | UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY | |
| 2 | A.    I think I did answer it. | 17:06:13 |
| 3 | Q.    It's yes or no; is that correct? | 17:06:15 |
| 4 | MR. SERIO:  Objection to the form. | 17:06:17 |
| 5 | A.    I don't think it is.  I don't think | 17:06:18 |
| 6 | it is yes or no.  I think I gave my explanation. | 17:06:19 |
| 7 | Q.    What was the Jefferson Wells' work | 17:06:24 |
| 8 | on Veeco's fixing up TurboDisc's records used | 17:06:28 |
| 9 | for? | 17:06:35 |
| 10 | MR. SERIO:  Objection to the form. | 17:06:37 |
| 11 | A.    I described that Veeco management -- | 17:06:38 |
| 12 | financial management did the analysis and the | 17:06:42 |
| 13 | correction of the errors that were uncovered. | 17:06:49 |
| 14 | And that a portion of what Jefferson Wells' work | 17:06:52 |
| 15 | was utilized to verify that the amounts and | 17:06:58 |
| 16 | correction of errors that Veeco management, | 17:07:04 |
| 17 | financial management had established were in fact | 17:07:07 |
| 18 | verified by some of the work that Jefferson Wells | 17:07:12 |
| 19 | did. | 17:07:14 |
| 20 | Q.    And is it also correct that Veeco | 17:07:16 |
| 21 | gave Ernst & Young Jefferson Wells' work to show | 17:07:19 |
| 22 | Ernst & Young that Jefferson Wells agreed with | 17:07:27 |
| 23 | Veeco management? | 17:07:31 |
| 24 | MR. SERIO:  Objection to the form. | 17:07:32 |
| 25 | A. | 17:07:37 |

236

Page 194

ROUGH ASCII VEECO-REIN 2-28-07

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2              THE WITNESS:  Repeat that, please.          17:07:37

3         I just like to make sure I understand every      17:07:38

4         word in that question.                           17:07:41

5              (Record read.).  Select                     17:07:56

6         A.       Selected schedules that management      17:08:06

7    used in verifying its correction of the errors in     17:08:07

8    the accounts may have been given to Ernst & Young      17:08:15

9    and some of those work papers may have come from       17:08:18

10   Jefferson Wells.                                       17:08:21

11        Q.      Wait a minute.  Did Veeco give Ernst      17:08:24

12   & Young any documents that showed that Jefferson       17:08:31

13   Wells agreed with Veeco management about Veeco          17:08:34

14   management's correction of TurboDisc accounts?          17:08:40

15              MR. SERIO:  Objection to form.              17:08:46

16        A.      I know that there was a report that       17:08:47

17   was prepared for the audit committee and for Kaye      17:08:48

18   Scholer and I believe that that report was shared      17:08:52

19   with Ernst & Young.  I don't know what purpose         17:08:56

20   that Ernst & Young found with that report.   I         17:08:59

21   also know that were certain analysis there were        17:09:03

22   done by Jefferson Wells personnel that were            17:09:06

23   utilized by Veeco management and may have been         17:09:10

24   reviewed by Ernst & Young in establishing that         17:09:12

25   the accounts were proper and the financial             17:09:14

                                              237

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2    statements were proper.                                17:09:16

3         Q.      And those analyses said we,              17:09:18

4    Jefferson Wells, agree with Veeco's management;       17:09:21

5    is that correct?                                       17:09:23

                    Page 195

ROUGH ASCII VEECO-REIN 2-28-07

```
 6              MR. SERIO:  Objection to the form.        17:09:24
 7      I don't -- I think I would instruct him not       17:09:26
 8      to answer as to the substance of what the         17:09:29
 9      Jefferson Wells report said.  So you don't        17:09:32
10      immediate to answer.                              17:09:35
11          Q.     And you refuse to answer?              17:09:38
12          A.     On advice of counsel, I --             17:09:40
13          Q.     Okay.  Are you prepared to tell me     17:09:42
14      whether Jefferson Wells' work played any part in  17:09:45
15      obtaining Ernst & Young's audit opinion on        17:09:53
16      Veeco's financial statements?                     17:09:58
17          A.     I think --                             17:09:59
18                 MR. SERIO:  Objection to the form.     17:10:00
19          A.     I think I previously described that.   17:10:01
20          Q.     No, this is a yes or no.  So far as    17:10:04
21      you're aware, did Jefferson Wells' work play any  17:10:06
22      part in obtaining Ernst & Young's audit opinion   17:10:09
23      on Veeco's financial statements?                  17:10:14
24                 MR. SERIO:  Objection to the form.     17:10:15
25          A.     Jefferson Wells performed certain      17:10:17
                                              238

 1      UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
 2      analysis and assisted Veeco management in         17:10:20
 3      preparing the corrected errors and financial      17:10:23
 4      statements and that information was presented to  17:10:26
 5      Ernst & Young prior to them issuing their         17:10:31
 6      opinion.                                          17:10:32
 7          Q.     Okay.  Now, Ernst & Young issued       17:10:34
 8      another opinion in connection with Veeco's 2004   17:10:39
 9      10-K, didn't they?                                17:10:45
10                 MR. SERIO:  Objection to the form.     17:10:47
11          A.     Could you tell me what you're          17:10:48
                        Page 196
```