# Exhibit B

Case 1:05-cv-02189-CM    Document 105-3    Filed 03/06/2007    Page 1 of 3

# GIBSON, DUNN & CRUTCHER LLP

LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue  New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com

rwallin@gibsondunn.com

February 2, 2007

Direct Dial
(212) 351-5395

Fax No.
(212) 351-6223

Client No.
T 94625-00001

VIA EMAIL

Phyllis M. Parker, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6305

    Re:    *In re Veeco Instruments Inc. Sec. Litig., 05 MD 1695 (CM)(GAY)*

Dear Phyllis:

    I write in response to your letter dated January 30, 2007. I am willing to provide you with a general description of the steps that we took to collect, identify and produce responsive documents.

    We collected hard copy and electronic documents from dozens of custodians. Electronic documents, including emails, were collected by Veeco IT personnel and an outside firm employed by Defendants to assist in electronic discovery. We filtered these documents through a broad list of search terms prior to our review of the documents for privilege and responsiveness. Defendants ultimately reviewed approximately one million pages of documents as a result of this process.

    Veeco does have backup tapes, which it has taken appropriate steps to preserve. We did not restore backup tapes in response to Lead Plaintiff's document request. *See Cognex Corp. v. Electro Scientific Indus.*, 2002 WL 32309413, at *5 (D. Mass. July 2, 2002) (noting the absence of a "general duty" to search back-up tapes). As I'm sure you realize, restoration of back-up tapes is extremely burdensome, costly and time-consuming. Moreover, the burden would be particularly acute here, given the high likelihood that many of the documents retrieved from the backup dates would be duplicative of the documents retrieved from other sources. For this reason, in cases where back-up tapes are produced, cost-sharing is routinely ordered. *See, e.g. Rowe Entertainment, Inc v. The William Morris Agency.*, 205 F.R.D. 421 (S.D.N.Y. 2002). If

## GIBSON, DUNN & CRUTCHER LLP

Phyllis M. Parker, Esq.
February 2, 2007
Page 2

you wanted to pursue this path, and propose some sort of cost-sharing agreement, you should have done so at the beginning of discovery.

  You are correct that two of the emails produced by Mr. Birnbaum apparently were not captured by the process described above. This fact is hardly remarkable given the volume of the documents reviewed and produced by Defendants in this case. Moreover, it does not indicate that the process described above for collecting and reviewing documents was unreasonable or that Defendants' document production is deficient.

  Lastly, I can confirm that we collected documents from all of the persons identified in your letter with the exception of Frances Scally. Ms. Scally was not identified as a likely source of responsive documents for several reasons. She was not a TurboDisc employee and had no responsibility for TurboDisc's accounting. In addition, she was not involved in the identification and quantification of any TurboDisc accounting errors. Ms. Scally received certain of the emails produced by Defendants in this case was because she was responsible for coordinating various Sarbanes-Oxley related activities on a company-wide basis. She did not conduct any of the controls testing at TurboDisc, however, and Mr. Kiernan, Mr. Reifert, Mr. Huff and probably others are all more knowledgeable that Ms. Scally with respect to TurboDisc's controls.

          Sincerely,

          Ross Wallin

cc: Robert I. Harwood, Esq.
   John A. Herfort, Esq.
   Robert F. Serio, Esq.